1

2

3

4

5  UNITED STATES DISTRICT COURT

6  NORTHERN DISTRICT OF CALIFORNIA

7

8  MARGUERITE HIKEN and THE
   MILITARY LAW TASK FORCE,

9                                                                      No. C 06-02812 MHP
                      Plaintiffs,

10        v.                                        **MEMORANDUM & ORDER**
                                                    **Re: Cross-Motions for Summary**

11  DEPARTMENT OF DEFENSE and UNITED       **Judgment**
    STATES CENTRAL COMMAND,

12

13                     Defendants.
    _____/

14

15          On April 25, 2006 plaintiffs Marguerite Hiken and the Military Law Task Force filed a

16  complaint pursuant to the Freedom of Information Act, 5 U.S.C. section 552 ("FOIA") against

17  defendants the Department of Defense ("DOD") and the United States Central Command

18  ("CENTCOM"), seeking injunctive relief mandating disclosure of certain documents. Now before

19  the court are the parties' cross-motions for summary judgment. Having considered the parties'

20  arguments fully and for the reasons set forth below, the court enters the following memorandum and

21  order.

22

23  BACKGROUND[1]

24          Plaintiff Military Law Task Force ("MLTF") is a subcommittee of the National Lawyers

25  Guild which addresses military law issues. Plaintiff Maugerite Hiken is the co-chairperson of

26  MLTF. Plaintiffs seek to publish an article on the war in Iraq using documents in the possession of

27  defendant DOD, an executive agency, and defendant CENTCOM, a component of DOD. The

28  proposed article would address allegations of human rights abuses during the siege of Fallujah as

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

well as the attack on a vehicle used to rescue an Italian journalist, Giuliana Sgrena. The article

would appear in "On Watch," an electronic newsletter published by MLTF.

On March 17, 2005 plaintiffs submitted a FOIA request to DOD seeking records concerning:

(1) The Rules of Engagement (ROE) in effect for military personnel who, on March 4, 2005, fired upon, or ordered the firing upon, a car carrying Italian journalist Giuliana Sgrena while she was en route to the Baghdad airport;

(2) Any other documents bearing on any purported justification for the actions taken by the military, or any personnel, in firing on Ms. Sgrena's car on March 4, 2005;

(3) Any and all ROE in effect for military personnel engaged in Fallujah, Iraq, from March through December 2004; and,

(4) Any and all documents (guidelines, directives, trainings, rules, orders, etc.) which relate to, touch upon, or concern the judgments of U.S. military personnel in Iraq in distinguishing between civilians and combatants, including without limitation, such decision-making in Fallujah and along the road to the Baghdad airport in Iraq.

March 17, 2005 Letter, Defs.' Exh. 1.  The ROE are instructions on the limitations on the use of

military force, including the appropriate use of deadly force.  Defendants state that there are two

types of ROE: standing ROE and operational ROE.  Neither type has a specific expiration date,

beyond which they are not relevant; however, they expire depending on their usefulness.[2]

Plaintiffs contend that the proposed article will evaluate whether the ROE violated domestic

and international law based on allegations that the United States military used chemical weapons on

civilians during the siege of Fallujah.  According to plaintiffs, the article will further explore the

ways in which the military distinguishes between civilians and combatants on the roads in Iraq.

On May 2, 2005 DOD confirmed its receipt of plaintiffs' FOIA request and the

accompanying requests for a limitation of processing fees and fee waiver pursuant to 5 U.S.C.

sections 552(a)(4)(A)(ii)(II) and 552(a)(4)(A)(iii).  The DOD also informed plaintiffs that their

request would be forwarded to CENTCOM, the proper respondent for the request.  CENTCOM

acknowledged receipt of plaintiffs' request on May 12, 2005.  On August 15, 2005 CENTCOM

denied the first of plaintiffs' requests which addressed the ROE in effect when Sgrena's rescue

vehicle was attacked.  Plaintiffs appealed the denial to DOD on September 26, 2006.  In response,

DOD acknowledged receipt of the appeal and notified plaintiffs that it would not be able to complete

the appeal within the time limit required by the FOIA.  Plaintiffs then filed the instant complaint

1   alleging violations of the FOIA.

2

3   I.       Identification of Responsive Documents

4           Defendants contend that they have conducted searches of relevant files and computer

5   systems in response to plaintiffs' request for information concerning the ROE in effect in Iraq.

6   CENTCOM's initial search uncovered two responsive documents which describe the ROE for

7   military personnel in Iraq: Annex E (Rules of Engagement) to Frago 313 Transition of Authority,

8   Multi-National Corps Iraq ("Document One") and Appendix 20 to Annex C to MNC-I Standard

9   Operating Procedures ("Document Two").  See Ghormley Nov. 3, 2006 Dec. ¶ 3[3]; Id., Exh. A at 13

10  ("Vaughn index").  A CENTCOM review of the documents determined that they had been classified

11  as Secret under section 1.4(a) of Executive Order 12958 because they contained information

12  concerning military plans, weapons, systems or operations.  Id. ¶¶ 4–5.  After plaintiffs appealed the

13  denial of their initial request, they asked that defendants perform another search for responsive

14  documents.  In performing this subsequent search, the DOD's Office of Freedom of Information

15  discovered two additional responsive documents concerning the ROE and the escalation of force for

16  U.S. forces participating in the Multi-National force in Iraq: Annex E (Rules of Engagement) to

17  Phase III of Operation Order 05-07, 4th Infantry Division (Mech) ("Document Three") and

18  Appendix 7 to Annex C to MNC - I Operations Order 06-01 ("Document Four").  Id. ¶ 6; Vaughn

19  Index, at 13–14.  While the documents contained both classified and unclassified information, the

20  documents have been classified as Secret.  Id. ¶ 4.  The DOD reviewed all four of the responsive

21  documents and determined that the third and fourth documents, like the first two, were classified.

22  See Letter from R. Newton to C. Flynn, Defs.' Exh. 6.  The DOD review also determined that

23  unclassified and classified portions of the four documents contained information relating to the

24  personnel rules and practices.  The release of this information, the DOD concluded, would risk

25  circumvention of these rules.  Ghormley Nov. 3, 2006 Dec. ¶¶ 6–7.  Defendants, therefore, did not

26  disclose these four documents, claiming that they met both Exemptions 1 and 2 of the FOIA.  See 5

27  U.S.C. § 552(b)(1)&(b)(2).

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

CENTCOM subsequently identified a fifth responsive document, an investigative report of the incident involving Sgrena ("the 15-6 report" or "Document Five").  CENTCOM officials had originally determined that the 15-6 report was not responsive to plaintiffs' request, but the review after plaintiffs' appeal identified this report.  Id. ¶ 12.  CENTCOM reviewed the 15-6 report and associated annexes A–M.  CENTCOM concluded that portions of the 964-page document were classified as Secret and therefore redacted these portions, contained in the 15-6 report and Annexes E, F, L, and M, pursuant to Exemption 1.  Id. ¶ 11; Vaughn index, at 14.  Pursuant to Exemption 2, CENTCOM redacted other portions—found in the 15-6 report and each of the produced Annexes—on the basis that they either would disclose internal agency practices or that the information was of a trivial nature with no public interest.  Id.  Defendants also redacted information determined to be protected by statute, including names of military personnel and diplomatic correspondence[4] from the report and all annexes but E and K pursuant to Exemption 3.  Id.  Based on Exemption 5, defendants redacted information relating to legal reviews of the investigation and the agency's deliberative processes from both the report and Annex G.  Id.  Finally, defendants redacted under Exemption 6 information such as names of military personnel and other identifying information from the report and Annexes A, B, C, D, G, H, I, J, L & M.  Id. ¶ 13.

The redacted report and annexes were produced to plaintiffs on November 2, 2006.  Id. ¶ 12.  Annex K was not produced in any form.  Defendants contend that they have conducted "diligent and reasonable" searches for Annex K but cannot locate it.  Ghormley Nov. 3, 2006 Dec. ¶ 12, n.1.  On November 7, 2006 CENTCOM produced additional portions of the annex, a total of twenty-four pages, which it had not earlier disclosed.  See  Pls.' Exh. C & D.  CENTCOM also informed plaintiffs that it had identified eight more pages "that fall under the purview of the Department of State" and that it was forwarding those pages to the State Department "for a direct response" to plaintiffs.  Pls.' Exh. C.  In its surreply, defendants note that the State Department review has been completed and that those eight pages are classified.

II.     Public release of redacted 15-6 report

4

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    Plaintiffs assert that an unredacted, unofficial copy of the 15-6 report without annexes is

2    available online.  Defendants explain that a redacted copy of the 15-6 report was placed on the

3    website of the Multinational Force-Iraq (MNF-I).  Ghormley Jan. 5, 2007 Dec. ¶ 3.  This redacted

4    version allegedly contained different redactions than the version produced to plaintiffs.  According

5    to defendants, posting the redacted copy was unauthorized.  Id. ¶ 3.  Shortly after the report was

6    posted, an "unknown third party" was able to electronically remove the redactions and expose the

7    unredacted text of the report.  Id. ¶ 4.  The unredacted report was then posted on various websites.

8    Id.  Plaintiffs also assert that some ROE for U.S. forces in Iraq are publicly available, including

9    copies sold on the internet.  See Pls.' Exh. E (screenshot of eBay webpage purporting to sell ROE

10   cards).[5]

11

12   LEGAL STANDARD

13   Summary judgment is proper when the pleadings, discovery, and affidavits show that there is

14   "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

15   matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the

16   proceedings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material

17   fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

18   nonmoving party.  Id.  The party moving for summary judgment bears the burden of identifying

19   those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

20   issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On an issue for which the

21   opposing party will have the burden of proof at trial, the moving party need only point out "that

22   there is an absence of evidence to support the nonmoving party's case."  Id.

23   Once the moving party meets its initial burden, the nonmoving party must go beyond the

24   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

25   genuine issue for trial."  Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving

26   party's allegations.  Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th

27   Cir. 1994).  The court may not make credibility determinations, Anderson, 477 U.S. at 249, and

28

5

1   inferences drawn from the facts must be viewed in the light most favorable to the party opposing the

2   motion.  Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

3

4   DISCUSSION

5          The court reviews de novo the agency's action in response to a FOIA request, and the agency

6   bears the burden of justifying non-disclosure.  See 5 U.S.C. § 552(a)(4)(B).  To prevail on summary

7   judgment in a FOIA action, the government must establish that its search for responsive documents

8   was reasonable and that it has described with reasonable specificity the nature of the responsive

9   documents and its justification for any non-disclosure.  See Halpern v. FBI, 181 F.3d 279, 291 (2d

10  Cir. 1999).  "When an agency seeks to protect material which, even on the agency's version of the

11  facts, falls outside the proffered exemption, summary judgment in favor of the FOIA plaintiff is

12  appropriate."  Petroleum Info. Corp. v. U.S. Dept. of Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992).

13  Plaintiffs have raised several challenges to both the reasonableness of defendants' search as well as

14  the sufficiency of evidence submitted to support non-disclosure.  Accordingly, the court will address

15  these arguments in turn.

16

17  I.       Reasonableness of the Search

18         FOIA requires that the agency conduct a reasonable search for responsive documents using

19  methods which can reasonably be expected to produce the information requested.  See 5 U.S.C. §

20  552(a)(3)(C).  Typically, the responding agency submits affidavits describing the scope of the

21  search and the methods employed.  Here, defendants presented the declaration of Major General

22  Timothy Ghormley, the DOD officer responsible for responding to plaintiffs' request.  In his

23  declaration, Ghormley describes the manual and electronic searches performed of documents and

24  files located at MNF-I as well as the DOD intranet system on at least two separate occasions.

25  See Ghormley Nov. 3, 2006 Dec. ¶¶ 3 & 6.  The searches produced five responsive documents.

26         Plaintiffs argue that the searches for responsive documents were inadequate and that the

27  Ghormley declaration was not sufficiently detailed to establish that the search was adequate.  First,

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1    they contend that the failure to identify any documents concerning the siege of Fallujah, a part of

2    their initial request, indicates that the search was inadequate.  Because the disputed documents are

3    not presently before the court, the court has no basis for evaluating whether any documents relating

4    to the seige of Fallujah were identified in the <u>Vaughn</u> index.  The proper inquiry emphasizes the

5    reasonableness of the search performed not the results of the search.  <u>See, e.g.</u>, <u>Hornbostel v. U.S.</u>

6    <u>Dept. of Interior</u>, 305 F. Supp. 2d 21, 27 (D.D.C. 2003) ("[T]he focus of the adequacy inquiry is not

7    on the results.").  While the results of the search are not the focus, they are not entirely irrelevant.

8    Where the scope of the request is broad and the government fails to produce any responsive

9    documents, it may raise a question as to the reasonableness of the search.  <u>See id.</u> at 27 (discussing

10   the relationship between the scope of the request and its reasonableness).

11          Second, plaintiffs attack the adequacy of the Ghormley declaration in describing the extent

12   of the searches.  They argue that the declaration was not reasonably detailed as to the description of

13   the files searched and search procedures. The affidavit's description of the search cannot be "so

14   general as to raise a serious doubt whether the [agency] conducted a reasonably thorough search of

15   its records." <u>Steinberg v. U.S. Dep't of Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994).  Certainly, the

16   declaration does not describe the types of files searched or detail the DOD's systems of records to

17   the same extent as those discussed in the cases cited by the parties.  <u>See, e.g.</u>, <u>Nation Mag. v. U.S.</u>

18   <u>Customs Service</u>, 71 F.3d 885, 891 (D.C. Cir. 1995) (reviewing the types of file systems at the

19   Customs Service to determine whether search performed on some of those systems was adequate).

20   In addition, plaintiffs highlight the fact that the declaration does not state the search terms used in

21   the electronic searches performed, nor does the declaration assert that the government searched all

22   files likely to contain relevant information.  The disclosure of search terms and a declarant's

23   assurances that the search covered all relevant files may be helpful in evaluating the adequacy of the

24   search. <u>Friends of Blackwater v. U.S. Dept. of Interior</u>, 391 F. Supp. 2d 115, 120 (D.D.C. 2005).

25   The lack of specific search terms and the general nature of the description contained in the affidavit

26   in combination with evidence that the results of the search failed to produce responsive documents

27   persuade the court of the need for in camera review to determine the adequacy of the search.  FOIA

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   grants a district court the discretion to take documents in camera. 5 U.S.C. § 552(a)(4)(B).  In

2   camera review is particularly appropriate where the affidavit or <u>Vaughn</u> index is insufficiently

3   detailed. <u>See, e.g.</u>, <u>Wiener v. FBI</u>, 943 F.2d 972, 979 (9th Cir. 1991).

4

5   II.        Adequacy of Vaughn Index

6          Plaintiffs also contest the adequacy of the <u>Vaughn</u> index on several grounds.  First, they

7   argue that descriptions of the documents are not sufficiently detailed.  They contend that the <u>Vaughn</u>

8   index's references to the ROE do not describe the purpose of the ROE, the tasks associated with the

9   ROE or the levels of troops to which they apply.  Plaintiffs object to the index's failure to describe

10  whether relevant troops were operating under standing ROE or the multinational ROE.

11  Furthermore, the index does not give the date of the ROE for two documents.[6]  None of these

12  alleged failures convince the court that the index is defective.  Plaintiffs ask for information beyond

13  what is reasonably detailed and would likely require disclosure of information protected by the

14  various exemptions discussed below.  <u>See</u> <u>Vaughn v. Rosen</u>, 484 F.2d 820, 827 (D.C. Cir. 1973).

15  While the failure to provide dates for the documents listed in the index might raise questions,

16  defendants explained at the hearing on this matter that the dates were unavailable until recently.  <u>See</u>

17  <u>also</u> Defs.' Surreply at 8.

18          Plaintiffs also raise a general challenge to the explanations provided in the index for non-

19  disclosure, arguing that the proffered explanations are merely boilerplate.  The Ninth Circuit has

20  warned agencies to "bear in mind that the purpose of the index is not merely to inform the requester

21  of the agency's conclusion that a particular document is exempt from disclosure under one or more

22  of the statutory exemptions, but to afford the requester an opportunity to intelligently advocate

23  release of the withheld documents and to afford the court an opportunity to intelligently judge the

24  contest."  <u>Wiener</u>, 943 F.2d at 979.  Plaintiffs argue that the reasons for non-disclosure do not

25  discuss consequences of disclosing the first four documents in any specific way.  The court agrees

26  that the index, as currently presented, does not afford either the court itself or plaintiffs the

27  opportunity to challenge the withholding of certain documents.  The government has failed to state

28

8

the specific harms which may result from the release of the document.  Cf. id. at 981 n.15

(replicating the affidavit's statement of harms that would result from disclosure of information,

which the court concluded was not specific enough); see also King v. U.S. Dep't of Justice, 830 F.2d

210, 223–24, 225 (D.C. Cir. 1987) ("[E]very account the declaration offers of consequences of

disclosing material withheld assumes the form of a list whose serial alternatives reflect, not

predictive uncertainty about such consequences, as much as the broad contours of the categorization

scheme employed.").  Therefore, the court orders that the government revise the index to tie the

disclosure of information to specific harms.

III.   In Camera Review

The Ninth Circuit has admonished that "in camera review may supplement a Vaughn index,

but may not replace it."  Wiener, 943 F.2d at 979.  Here, in an abundance of caution, the court has

concluded that the government should both supplement the Ghormley declarations on several issues

and that it must also submit the documents in dispute for in camera review.  While Wiener does not

provide specific guidance on when in camera review is appropriate, the Sixth Circuit has outlined a

four-factor test for this consideration.  Jones v. FBI, 41 F.3d 238 (6th Cir. 1994).  This analysis asks

the court to consider: 1) judicial economy; 2) actual agency bad faith; 3) strong public interest; 4)

parties request in camera review.

Here, the Jones factors support the court's conclusion to review the documents in camera.

Plaintiffs have requested in camera review.  Certainly, judicial economy favors the court's review of

the documents particularly where it has asked for supplemental declarations simultaneously.  The

public interest in full disclosure of activities in Iraq is undoubtedly very strong. While the record

does not support a finding of bad faith at this time, defendants' underlying activities with respect to

Iraq and the accuracy of government disclosures about activities in Iraq is sufficient to raise

questions in the mind of the public as to the defendants' good faith or lack thereof.  Accordingly, the

court will not, in the words of the Sixth Circuit, "abdicat[e] the court's responsibility to treat the

case in the standard way."  Id. at 243.  Indeed, "[e]ven where there is no evidence that the agency

9

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  acted in bad faith with regard to the FOIA action itself there may be evidence of bad faith or

2  illegality with regard to the underlying activities which generated the documents at issue." Id.

3

4

5  III.   Challenge to the Ghormley Declarations

6       Plaintiffs raise a host of challenges to the Ghormley Declarations, arguing that they reveal

7  bad faith on the part of the government.  The court must afford affidavits substantial weight as long

8  as the reasons provided for nondisclosure are not controverted by evidence in the record or evidence

9  of bad faith.  Minier v. CIA, 88 F.3d 796, 800 (9th Cir. 1996).  Before rejecting the affidavit or

10  subjecting it to heightened scrutiny, the court must have "tangible evidence of bad faith" beyond

11  mere allegations.  Carter v. U.S. Dep't of Commerce, 830 F.2d 388, 393 (D.C. Cir.1987) (noting that

12  in camera review is necessary where there are indications of bad faith).

13       Plaintiffs point to nine indications of bad faith on the part of the government and the affiant:

14  (1) The government performed different redactions on the version of the 15-6 report produced than

15  those in the redacted version posted on the website; (2) The government's assertions that the 15-6

16  report were leaked are not supported by the Ghormley declaration, which described them as

17  mistaken; (3) Defendants rely on descriptions of sensitive information which is beyond the scope of

18  the request to justify withholding the 15-6 report; (4) Defendants claim that the 15-6 report must be

19  protected because of the risk of harm to U.S. forces from its release but failed to protect it from

20  release; (5) The terms for routes and divisions are used on DOD websites, but defendants claim that

21  these terms are classified; (6) Defendants failed to disclose responsive documents, including the

22  ROE cards given to every solider; (7) Plaintiffs allege a general policy of  government

23  overclassification; (8) Plaintiffs contest the veracity of defendants' claim that the ROE are not

24  changing; (9) Defendants allegedly failed to list diplomatic correspondence in the Vaughn index.

25  Plaintiffs also claim the defendants acted in bad faith in underlying events by destroying  evidence

26  of the incident immediately afterward. As the court addresses subsequently, many of these assertions

27  have been rebutted by defendants and others are mischaracterizations of the facts.  Therefore, the

28

10

1   court sees no such tangible evidence of bad faith.

2

3   V.   Waiver of Statutory Exemptions

4   As a threshold matter, plaintiffs argue that defendants have waived the protection of the

5   claimed statutory exemptions relating to certain portions of the 15-6 report.[7]  Under this theory,

6   because defendants posted a version of the 15-6 report on the MNF-I website, they have waived

7   their claims to exemption for information made public in that version but not disclosed to plaintiffs.

8   Where a document has been released to the public, a "FOIA plaintiff brings into question the

9   defendants' determination that disclosure might harm the national security."  Washington Post v.

10  U.S. Dep't of Def., 766 F. Supp. 1, 12 (D.D.C. 1991).  Plaintiffs have submitted what is purported to

11  be a copy of the redacted report posted on the MNF-I website.  See Pls.' Opp'n, Exh. A.  However,

12  this document has not been properly authenticated.  Moreover, the parties dispute several material

13  facts regarding the disclosure of the redacted version of the report: whether the report was posted by

14  an official; when it was posted; when it was removed.  It seems highly unlikely that the "mistaken"

15  posting of a redacted version of the report meets the requirements to overcome the claimed

16  exemptions.  See Ghormley Jan. 5, 2007 Dec. ¶ 4 (describing release of document on MNF-I website

17  as "mistaken"); Edmonds v. U.S. Dep't of Justice, 405 F. Supp. 2d 23, 30 (D.D.C. 2005) (setting

18  forth a test based on whether the information was "officially acknowledged" through an "official and

19  documented" release.).  However, the court does not have before it sufficient evidence to determine

20  whether the release of the report was an official release.  Thus, the court orders defendants to

21  supplement the Ghormley declaration to provide further details regarding: the release of the

22  document; why it was removed from the website; and a comparison of the types of information

23  disclosed in that version of the report with the redacted version provided to plaintiffs.

24

25  VI.   FOIA Exemptions

26  As described previously, defendants claim that the withheld documents and redacted

27  information fall within certain of the FOIA Exemptions.  With respect to the four withheld

28

UNITED STATES DISTRICT COURT
For the Northern District of California

11

UNITED STATES DISTRICT COURT
For the Northern District of California

1   documents, defendants contend that the information is protected by both Exemptions 1 and 2.

2   Defendants justify the various redactions of the 15-6 report and its accompanying annexes on the

3   basis of Exemptions 1, 2, 3, 5, and 6.  The court will consider arguments presented under each of the

4   relevant exemptions.

5          A.      Exemption 1

6          Defendants withheld four documents and portions of the 15-6 report because they are

7   classified pursuant to Executive Order 12958.  Exemption 1 protects documents that are "(A)

8   specifically authorized under criteria established by an Executive order to be kept secret in the

9   interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such

10  Executive order." 5 U.S.C. § 552(b)(1).

11         Defendants contend that the withheld information meets the procedural and substantive

12  requirements for classified information set out in E.O. 12958.[8]  See Ghormley Nov. 3, 2006 Dec. ¶¶

13  4, 6, 11, 13.  This information concerns the ROE as well as the Standard Operating Procedures for

14  Traffic Control Points and Blocking Positions, operational techniques for detecting and addressing

15  Improvised Explosive Devices ("IEDs"), and other information regarding military operations in Iraq.

16  Id.  According to defendants, this information was classified as Secret under E.O. 12958 because it

17  relates to military plans, weapons systems, or operations, or concerns vulnerabilities or capabilities

18  of systems, installations, infrastructures, projects, plans, or protection services relating to national

19  security. Id.  Plaintiffs do not challenge the procedural requirements for classification.  Instead, they

20  present a host of arguments based on the substantive requirements, namely that the information does

21  not relate to national security, that the descriptions of the ROE are insufficient, that responsive

22  documents have not been produced, and that the ROE have been disclosed to the public.

23         First, plaintiffs contend that defendants are withholding documents to conceal embarrassing

24  facts rather than to protect information related to national security.  While the events involved in the

25  Sgrena incident may have been embarrassing, plaintiffs provide no evidence that the classification of

26  these documents was pretextual nor have they rebutted the Ghormley declaration.  See Ghormley

27  Nov. 3, 2006 Dec. ¶¶ 8-11,13 (disclosure would permit adversaries to anticipate military activities

28

1   and modify their own tactics accordingly).  Indeed, the court must give substantial weight to agency

2   determinations of national security needs in invoking Exemption 1.  Hunt v. CIA, 981 F.2d 1116,

3   1119 (9th Cir. 1992).

4         Plaintiffs also demand more detailed descriptions of the ROE beyond the military definitions

5   provided in the Ghormley declaration.  This argument is less persuasive in evaluating the invocation

6   of Exemption 1.  Providing more detailed descriptions may subvert the purpose of the exemption.

7   See Curran v. Dep't of Justice, 813 F.2d 473, 476 (1st Cir. 1987) (concluding that providing a more

8   detailed description of a catchall phrase might undermine the purpose of the relevant exemption).

9   The court finds that the descriptions of the ROE are adequately detailed.

10         Plaintiffs also raise the argument that responsive documents have likely not been produced.

11   To support this point, they note that two of the responsive documents identified are dated after the

12   Sgrena incident, which occurred in March 2005.  See Vaughn index, at 14 (documents dated April

13   2006).  Defendants respond that some of the documents precede the Sgrena incident.  Additionally,

14   according to defendants, because the ROE do not change dramatically overtime, documents dated

15   after the incident may still be relevant.  The court notes that the identification of non-responsive

16   documents does not necessarily imply the concealment of other, responsive documents.

17   Furthermore, the court has ordered the production of certain documents for an in camera review of

18   the adequacy of the search.

19         Finally, plaintiffs argue that because the ROE have been disclosed to the public, national

20   security concerns cannot justify withholding them.  Where information has been released to the

21   public, a "FOIA plaintiff brings into question the defendants' determination that disclosure might

22   harm the national security."  Washington Post, 766 F.Supp. at 12.  Defendants contest whether the

23   ROE at issue here have been disclosed.  Moreover, they offer a sound reason why plaintiffs'

24   argument should not prevail even where information has been disclosed: avoiding official

25   confirmation or disclosure of classified information is a valid basis for invoking Exemption 1.

26   See Edmonds v. FBI, 272 F. Supp. 2d 35, 48 (D.D.C. 2003); Fitzgibbon v. CIA, 911 F.2d 755, 766

27   (D.C. Cir. 1990) ("[W]e have unequivocally recognized that the fact that information resides in the

28

public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations."). Plaintiffs have not produced any evidence suggesting that the particular ROE involved here have been disclosed, nor have they convinced the court that any such disclosure would render Exemption 1 inapplicable.

The court concludes that defendants have met their burden for justifying non-disclosure under Exemption 1.

### B.   Exemption 2

Information "related solely to the internal personnel rules and practices of an agency" are protected from disclosure by Exemption 2. 5 U.S.C. § 552(b)(2). This exemption protects from disclosure both information that may risk circumvention of agency regulations or the law and information that is routine or trivial. See Department of Air Force v. Rose, 425 U.S. 352, 369-70 (1976). The two types of information protected by Exemption 2 are commonly referred to as "high 2" and "low 2." Here, defendants contend that the information contained in the four documents not disclosed as well as the redactions from the 15-6 report are high 2. They have also redacted as low 2 the initials of military personnel and certain administration information that appear on unit logs contained in the 15-6 report and its annexes.

As an initial matter, plaintiffs claim that defendants improperly designated information as both high 2 and low 2. They contend that these categories are mutually exclusive: information cannot be both trivial and likely to risk circumvention of the laws. This argument may be persuasive as a matter of logic, but it does not defeat defendants' claims here. At most, it addresses the potential over-classification of documents the court discussed in the allegations of bad faith.

### 1.   High 2

Plaintiffs raise several additional challenges to the information classified as high 2. They contend that disclosure will not lead to circumvention; that defendants have failed to reasonably segregate portions of the first four documents; that some redactions were improper; and that Exemption 2 was untimely claimed.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    The parties do not dispute that the ROE qualify as "internal rules and practices of an

2   agency." 5 U.S.C. § 552(b)(2). Defendants offer the Ghormley declaration to establish that

3   disclosure of the  redacted and withheld information, particularly that concerning the ROE, would

4   risk circumvention. See Ghormley Nov. 3, 2006 Dec. ¶¶ 7–10, 13; see also Gordon v. FBI, 388 F.

5   Supp. 2d 1028, 1035–37 (N.D. Cal. 2005) (determining that Exemption 2 was properly invoked

6   where terrorists could use information to educate themselves and evade terrorist watch lists). To

7   rebut this assertion, plaintiffs argue that the ROE contained in the non-disclosed documents are not

8   likely to lead to circumvention for several reasons. They contend that the enemy is likely aware of

9   the ROE through experience with forces in Iraq, although they provide no support for this

10  contention. Certainly, were plaintiffs able to prove this assertion, it falls far short of official

11  disclosure required to waive the exemption. They also present a highly unusual argument based on

12  the ROE's status as part of the laws of war and, as a result, international law. They point to various

13  definitions of the ROE which make them part of international law and argue that disclosure of

14  international law cannot be interpreted as leading to the circumvention of the law. This argument is

15  circular and based on questionable assumptions. Plaintiffs have failed to provide specific evidence

16  to rebut defendants' contention that disclosure of the ROE would likely lead to circumvention of the

17  laws.

18    Plaintiffs argue that defendants have not reasonably segregated information that is not

19  protected by Exemption 2 from the protected information as required by 5 U.S.C. section 552(b).

20  Defendants submit that segregating the non-exempt information in the first four documents would

21  leave only "lists of references or heading titles . . . that, if released, would be of no informational

22  value." Ghormley Nov. 3, 2006 Dec. ¶ 7. However, this rationale has not prevented the government

23  from turning over pages and pages of the 15-6 report with only heading titles unredacted. See, e.g.,

24  Annex I, Pls.' Exh. Q at APBU 731–735. Thus, defendants should produce the segregable

25  information of the first four documents even where it may only reveal heading titles.

26    Plaintiffs also challenge the withholding of certain names assigned to particular routes or

27  units under Exemption 2. They contend that much of this information has been disclosed publicly so

28

15

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   it cannot be withheld here.  For instance, plaintiffs point to public uses of names of units, including

2   on websites operated by the units themselves, and names of routes.  See,e.g., Pls.' Opp'n at 25

3   (discussing the disclosure of "Route Irish" and instances of public uses of names of units).

4   Defendants respond that mere disclosure of certain names to the public should not preclude the

5   invocation of Exemption 2.  Rather, association of the names of those units with a specific mission

6   might endanger them. Defendants' reasoning appears to be a more appropriate basis for Exemption

7   1.  See, e.g., Edmonds, 272 F. Supp. 2d at 48 (avoiding official confirmation of classified

8   information is a valid reason for non-disclosure pursuant to Exemption 1).  Exemption 2 concerns

9   the likely circumvention of the certain information if disclosed—not the likelihood of harm.

10  Defendants have not explained why disclosure of names of routes or units, which are already in the

11  public domain, would allow for circumvention of this information.  Accordingly, the court finds that

12  this information was improperly withheld under Exemption 2.

13      Finally, plaintiffs argue that defendants did not timely raise the argument that the ROE were

14  protected by Exemption 2.  As a result, they contend all non-classified information contained in the

15  first four documents should be produced.  Defendants first raised Exemption 2 as a rationale for

16  withholding the first four documents during the administrative appeal of the denial of the request.

17  Moreover, the denial of the appeal occurred almost one year after the statutorily mandated date.  See

18  5 U.S.C. § 552 (a)(6)(A)(ii).  As such, plaintiffs argue that defendants should be barred from

19  invoking Exemption 2.  However, the plaintiffs cite no case law that would justify such a stringent

20  measure.  See Friends of the Coast Fork v. U.S. Dep't of Interior, 110 F.3d 53, 55 (9th Cir. 1997)

21  (addressing the agency's attempt to raise on judicial review issues that were not raised in the

22  administrative process).  As part of the appeal, defendants conducted a second search, which

23  identified the third and fourth documents, and also reviewed all four documents.  New arguments

24  were appropriately raised where additional searches occurred.  Plaintiffs' logic would require the

25  court to ignore these documents because they were produced as part of the delayed appeal.  Contrary

26  to plaintiffs' assertions, equity does not demand, and the court will not require, defendants to

27  abandon their Exemption 2 argument, which was raised on administrative appeal.

28

1          2.      Low 2

2          Defendants withheld two types of low 2 information: initials of military personnel contained

3   in the unit logs as well as certain administrative information.  While plaintiffs do not dispute that the

4   initials are trivial information properly withheld,[9] they do challenge the withholding of certain

5   administrative information.  They argue that the description of this information in the <u>Vaughn</u> index

6   and the Ghormley declaration is inadequate for determining whether the information meets the

7   requirements of Exemption 2.  The court agrees.  Defendants argue that providing a more detailed

8   description would risk undermining the purpose of the exemption.  <u>See</u> <u>Curran</u>, 813 F.2d at 476

9   (concluding that providing a more detailed description of a catchall phrase might undermine

10  Exemption 7(A)).  However, the purpose of the claimed exemption is rooted in the trivial nature of

11  the information.  Providing a more detailed description of trivial information cannot undermine this

12  purpose.  Therefore, the court orders that the defendants provide a more detailed description of the

13  administrative information withheld.

14         The court finds that defendants have established that information was properly withheld

15  under Exemption 2 with the exception of route names and the administrative information.

16  Additionally, the court orders that defendants submit a more detailed description of the

17  administrative information withheld.

18

19  C.      Exemption 3

20         Exemption 3 authorizes the withholding of information "specifically exempted from

21  disclosure [by a statute which] refers to particular types of matters to be withheld." 5 U.S.C. §

22  552(b)(3).  Defendants redacted certain portions of the report and all but two of the produced

23  annexes based on the assertion that the information was protected from disclosure by statute.  First,

24  they contend that the names of military personnel and other identifying information were withheld

25  pursuant to 10 U.S.C. section 130b.  Second, defendants claim that they withheld information

26  relating to foreign governments pursuant to 10 U.S.C. section 130c.

27          1.      10 U.S.C. section 130b

28

17

10 U.S.C. section 130b authorizes the Secretary of Defense to withhold from disclosure the "name, rank, duty address, and official title and information regarding pay" of military personnel "assigned to an overseas unit, a sensitive unit, or a routinely deployable unit." Id.       Plaintiffs contest the withholding of personally identifying information on the basis that defendants have not shown that the Secretary of Defense authorized the withholding of these names.  Defendants respond that section 130b imposes no requirement that the Secretary of Defense must individually identify the names of personnel himself or herself when 10 U.S.C. section 130b is invoked.  Here, Major General Ghormley had authority to act in withholding personally identifying information pursuant to 10 U.S.C. section 130b.  See Windel v. United States, No. A02-306 CV JWS, 2005 WL 846206, at *2 (D. Alaska Apr. 11, 2005) (concluding that withholding of information under Exemption 3 is proper when section 130b invoked as supported by declaration of military officer).  Plaintiffs further argue that the delegation of the Secretary of Defense's authority under section 130b is improper because the text limits the authority to the Secretary himself or herself.  To support this point, they distinguish similar provisions relating to the delegation of the Attorney General's authority.  See 28 U.S.C. § 510.  This distinction is without merit.  Section 113 empowers the Secretary of Defense to exercise his or her powers through any such persons within the Defense Department whom he deems appropriate unless "specifically prohibited by law." Id.  The delegation of authority to General Ghormley is therefore valid under 10 U.S.C. section 113 and plaintiffs have not pointed to a relevant prohibition of law.[10]  The court, therefore, concludes that the nondisclosure of the names and personally identifying information of military personnel pursuant to 10 U.S.C. section 130b is valid under Exemption 3.

### 2.    Documents Relating to Foreign Governments

In their surreply, defendants note that while they initially had a good faith belief that certain information in the report and its annexes met the requirements for non-disclosure under 10 U.S.C. section 130c (governing non-disclosure of certain documents relating to foreign governments), they are no longer relying on this exemption.  See Defs.' Surreply at 15 & n.16.  After the commencement of this litigation, defendants referred the documents to the Department of State

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

("DOS") for a review of the information.  Plaintiffs note that they do not oppose the referral to the

State Department but emphasize that defendants still have a duty to respond to the request even

where the request was referred to the DOS.  Defendants assert that the DOS has only recently

completed its review.  The review determined that the documents are classified and should be

withheld pursuant to Exemption 1.  As a result, defendants state their intention to file an additional

summary judgment motion with respect to this information.  The court, therefore, will not address

the argument related to foreign governments at this time.

In sum, the court finds that defendants have established that personally identifying

information was properly withheld under Exemption 3.

D.    Exemption 5

"[I]nter-agency or intra-agency memorandums or letters which would not be available by law

to a party . . . in litigation with the agency" are exempt from disclosure pursuant to FOIA Exemption

5.  5 U.S.C. § 552(b)(5).  Defendants have withheld information or redacted documents that would

be protected by the attorney-client privilege and work-product immunity as well as the deliberative

process privilege.  See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975) (noting that

Exemption 5 incorporates the privileges available to an agency in civil litigation).

1.    Attorney-Client Privilege and Work-Product Immunity

Defendants contend that they have redacted agency counsel legal reviews of the 15-6 report

under the attorney-client privilege.  Ghormley Nov. 3, 2006 Dec. ¶ 13.  These reviews were prepared

by counsel in evaluating the report's compliance with various legal requirements.  Id.  Plaintiffs

concede that agency counsel's legal reviews may be protected under Exemption 5.  Pls.' Opp'n at

36.  However, they contend that two sections redacted as related to legal reviews contain factual

information that is not protected by the attorney-client privilege.  They further contend that

information was withheld in an arbitrary fashion.  Defendants respond that the factual information is

protected by the deliberative process privilege, which the court will address below.  Accordingly,

there appears to be no dispute among the parties as to the invocation of the attorney-client privilege

or work-product immunity.

2.   Deliberative Process Privilege

The deliberative process privilege protects the quality of an agency's decisions by assuring candor in the internal debates.  NLRB, 421 U.S. at 150–51.  To invoke the privilege, defendants must show that the information was pre-decisional and related to a deliberative process.  Vaughn v. Rosen, 523 F.3d 1136, 1144 (D.C. Cir. 1975).  Plaintiffs concede that any recommendations can be properly withheld as protected by the deliberative process privilege.  Pls.' Opp'n at 36.  However, they object to defendants' claiming this privilege with respect to certain factual material. They distinguish factual, investigatory matters from deliberative processes and contend that the former are not protected by the privilege.  See EPA v. Mink, 410 U.S. 73, 89 (1973) ("[M]emoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government.").  Although they do not support this argument with citations to the evidence, defendants argue that the redacted information is not purely factual; it contains statistics and information pertaining to frequency of roadside attacks used to evaluate whether use of force was justified.  Defendants argue that even purely factual information may be protected by deliberative process privilege when it is selectively included to assist in decision-making.  Mapother v. Dep't of Justice, 3 F.3d 1533 (D.C. Cir. 1993).  Without reviewing the information, it is difficult to determine whether the privilege is appropriately applied to certain facts.  In Mapother, the court had the benefit of in camera review of the information in making this determination.  Mapother, 3 F.3d at 1539; see also Mink, 410 U.S. at 89 (noting that Congress drafted Exemption 5 aware of the frequent requirement of in camera review for applying privilege).  The court would similarly benefit from an in camera review of the disputed information to determine whether the deliberative process privilege applies.  During that examination, the court will also be able to better evaluate plaintiffs' claims that the defendants have not adequately described the deliberative process.

In conclusion, the court finds that defendants have not established that the withheld information meets the requirements of Exemption 5.  It orders defendants to provide the court with

UNITED STATES DISTRICT COURT
For the Northern District of California

the relevant documents for an in camera review to determine whether the deliberative process privilege was appropriately invoked.

E.    Exemption 6

Exemption 6 protects the disclosure of personal information which would constitute a clearly unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(6).  Defendants have redacted certain personal information describing individuals involved in the Sgrena incident in the 15-6 report and its annexes.  Defendants based these redactions on the potential for harassment or harm associated with disclosing this identifying information.  Plaintiffs contend that the names of certain soldiers interviewed in connection with the investigation of the Sgrena incident were inappropriately withheld under Exemption 6, including the names of ten military personnel as well as the name of an Italian agent involved in the incident.[11]  The Ninth Circuit has set out a four-factor test for determining whether certain information meets the requirements of the Exemption 6 : "(1) the plaintiff[s'] interest in disclosure, (2) the public interest in disclosure, (3) the degree of invasion of personal privacy, and (4) the availability of alternative means for obtaining the requested information."  See Church of Scientology v. Dep't of the Army, 611 F.2d 738, 746 (9th Cir. 1979).  The parties offer different characterizations of the interests involved in the first three factors of the test, but they do not dispute that there is no available alternative means of gathering the information.  Defendants contend that while the plaintiffs may have a strong interest in information about the investigation generally, the disclosure of the individual names of those interviewed as part of the investigation is of relatively little importance for the proposed article that plaintiffs intend to write.  They further argue that the public interest in the particular names is low when the court considers the purpose of FOIA: "contribut[ing] significantly to the public understanding of the operations or activities of the government."  Department of Def. v. Fed'l Lab. Rel. Auth., 510 U.S. 487, 496–96 (1994) (citations and quotations omitted).  Individual names, they contend, are not relevant to the

21

1    public's understanding of government activities.  The court disagrees with these contentions: the

2    names of the personnel involved in the incident and the subsequent investigation are central to the

3    public understanding of this incident and the conduct of the government.  This is especially true if

4    the personnel involved had policy-making or implementation positions.  However, defendants

5    present a strong argument that the privacy interests at stake are significant where the disclosure of

6    these names would risk harm or retaliation.  Plaintiffs do not present any tenable arguments to rebut

7    this assertion, quibbling only with the authority cited by defendants.  As the court owes deference to

8    the national security determinations made by the government, and as plaintiffs have not alleged any

9    corruption or illegality, it concludes that the privacy interests outweigh the interests in disclosure.

10   Accordingly, the court finds that the redactions of names of military personnel from the 15-6 report

11   and its annexes fall under Exemption 6.


13   CONCLUSION

15           Plaintiffs motion for summary judgment is DENIED. Defendants motion for summary

16   judgment is DENIED.  The court orders the defendants to produce certain documents described in

17   this order for in camera review and to provide a supplemental declaration in accordance with this

18   order.  The production and the declaration shall be submitted within thirty (30) days of the date of

19   this order.


21   IT IS SO ORDERED.


23   Dated: September 28, 2007

25   _____

26

27   MARILYN HALL PATEL
     United States District Court Judge
28   Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
For the Northern District of California

ENDNOTES

1. All facts cited herein are taken from the complaint ("Complaint") unless otherwise noted.

2. The preceding description of the types of ROE and their expiration is based on defendants' statements at the hearing on the instant motion.

3. Citations to the Ghormley Declaration refer to the initial declaration submitted as defendants' Exhibit 2 to defendants' motion for summary judgment.

4. Defendants have retracted the argument that the information based on diplomatic correspondence is protected by statute. They note that this information will be the subject of a future motion for summary judgment.

5. At the hearing on this motion, the parties explained that ROE cards are summaries of the ROE distributed to U.S. troops. Defendants stated that the ROE are much more detailed and specific than the summaries provided to service members on the ROE cards.

6. Defendants note in their surreply that the date of Document 1 was recently uncovered: February 10, 2005. Defs.' Surreply at 7–8.

7. Plaintiffs no longer argue that the availability of an unofficial, unredacted copy of the 15-6 report results in the wavier of statutory exemptions. Pls.' Opp'n at 15. Rather, they contend that the redacted version of the report posted on the MFN-I website waives the privilege as to information not redacted in that version but redacted in the version produced to plaintiffs.

8. The requirements for classification under E.O. 12958 are as follows:

> (1) an original classification authority is classifying the information;
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

E.O. 12958, § 1.1 (a).

9. Plaintiffs contend that the names of personnel involved in the accident and investigation are not trivial and are, therefore, not appropriately exempt as low 2. Defendants note that this information was redacted pursuant to Exemption 6. Therefore, the court will consider the redaction of this information pursuant to Exemption 6.

UNITED STATES DISTRICT COURT
For the Northern District of California

10. Plaintiffs suggest that 10 U.S.C. section 125(a) is such a specific prohibition.  However, that provision supports defendants' position because it authorizes the Secretary to delegate his authority:

> (a) Subject to section 2 of the National Security Act of 1947 [50 U.S.C. § 401], the Secretary of Defense shall take appropriate action (including the transfer, reassignment, consolidation, or abolition of any function, power, or duty) to provide more effective, efficient, and economical administration and operation, and to eliminate duplication, in the Department of Defense. However, except as provided by subsections (b) and (c), a function, power, or duty vested in the Department of Defense, or an officer, official, or agency thereof, by law may not be substantially transferred, reassigned, consolidated, or abolished.

10 U.S.C. § 125(a). A further reading of plaintiffs' argument indicates that they rely on the reference in section 125a to the National Security Act, 50 U.S.C. section 401.  That provision merely describes civilian control of the Defense Department and does not contain a prohibition on the delegation of specific authority, like that endowed by section 130b, to military officers.  See 50 U.S.C. § 401.

11. Plaintiffs also argue that defendants improperly redacted the names of certain locations and military units under Exemption 6.  Defendants admit that this classification was inadvertent and the names of locations and miliary units should have been identified as Exemption 2. Defs.' Opp'n at 29. Defendants further admit that the disclosure of one name of military personnel disclosed in the redacted report was inadvertent. Defs.' Opp'n at 28, n.19.