COLLEEN FLYNN, SBN 235281
CHRIS FORD, SBN 239376
3435 Wilshire Blvd., Suite 2900
Los Angeles, CA 90010
Telephone: (213) 487-8000
Facsimile: (213) 487-8001
E-mail: colleen_ucsc@hotmail.com

W. GORDON KAUPP, SBN 226141
115 ½ Bartlett Street
San Francisco, CA 94110
Telephone: (415) 285-8091
Facsimile: (415) 285-8092
E-mail: gordonk@hotmail.com

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARGUERITE HIKEN and THE MILITARY LAW TASK FORCE,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF DEFENSE and UNITED STATES CENTRAL COMMAND,<br><br>Defendants. | **Case No. CV-06-2812 (MHP)**<br><br>**PLAINTIFFS' SUPPLEMENTAL CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSTION TO DEFENDANTS' SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: December 10, 2007<br>Hearing Time: 2:00 p.m. |

### INTRODUCTION

Plaintiffs initiated this action under the Freedom of Information Act ("FOIA") in response to the U.S. military's assaults on the city of Fallujah, Iraq from March through December 2004 and on the occupants of the car transporting unembedded journalist Giuliana Sgrena to the Baghdad Airport on March 4, 2005. On March 17, 2005, plaintiffs filed a FOIA request for the Rules of

– 1 –
Plaintiffs' Supplemental Motion for Summary Judgment, CV-06-2812 (MHP)

Engagement ("ROE") and other documents for the soldiers involved in the above incidents from defendant Department of Defense.

The first round of summary judgment motions in this case involved five ROE-related documents and an Army Regulation 15-6 Investigation Report[1] ("AR 15-6 Report"). The AR 15-6 Report at issue here pertains to the U.S. military's March 4, 2005 attack on the car carrying Italian journalist Giuliana Sgrena, resulting in the fatal shooting of Italian agent Nicola Calipari, non-fatal shooting of Giuliana Sgrena and injury to Andrea Carpani, Ms. Sgrena's driver and another official of the government of Italy. Ghormley Declaration, Para. 13e; Supplemental Ghormley Declaration, Para. 9.

This Supplemental Cross-Motion for Summary Judgment and Opposition to Defendants' Supplemental Motion for Summary Judgment concerns eight pages of documents constituting three letters and two documents translating and reporting on the letters. These five documents are part of the AR 15-6 Report. Ghormley Declaration, para. 13e, Supplemental Ghormley Declaration, para. 9.

The Department of Defense forwarded these five documents to the Department of State for a determination of releasability. Ghormley Declaration, para. 13c. The Department of State has refused to release the documents, even in redacted format. Letter from Margaret P. Grafeld, Jan. 31, 2007, Exhibit A to Declaration of Margaret P. Grafeld ("Grafeld Decl."). While it is not known when the documents at issue in this supplemental motion were identified by defendants, it was not until November 7, 2006 that the Department of Defense, U.S. Central Command referred the five documents to the Department of State. *Id*.

The documents designated by defendants as U4 and U5 pertain to the personal effects of the Italians killed and injured in the March 4, 2005 U.S. military attack on the car carrying Giugliana

---

[1] Defendants originally identified five documents, including the AR 15-6 Report, in their *Vaughn* Index submitted with their initial Motion for Summary Judgment on November 3, 2006. However, after this court issued its Memorandum and Order Re: Cross Motions from Summary Judgment on October 2, 2007, defendants provided plaintiffs and the Court a revised *Vaughn* Index identifying eleven additional documents.

Sgrena. Grafeld Decl., paras. 21, 22; *Vaughn* Index to Defendants' Supplemental Motion for Summary Judgment ("*Vaughn* Index") 2. These documents appear outside the scope of plaintiffs' FOIA request and potentially impinge unnecessarily on the privacy of the occupants of the car. Accordingly, plaintiffs do not seek the release of documents U4 and U5.

Moreover, in light of the delays plaintiffs have endured in this case, Plaintiffs' Motion for Summary Judgment ("MSJ") 12-13; Plaintiffs' Motion to Strike Defendants' Supplemental Motion for Summary Judgment 2-3, plaintiffs request the Court order documents U1-U3 released or, to further judicial economy, at least provided *in camera* for inspection along with the other documents the Court has ordered defendants to make available for *in camera* review.

## **WITHHELD DOCUMENTS**

According to defendants' *Vaughn* Index and Grafeld Declaration, the following documents have been withheld in full:

- **U1**. A two-page, March 12, 2005 letter, in Italian, from a senior Italian government official to the U.S. ambassador in Rome which conveys the Italian government's views regarding the "terms of reference" (i.e., the potential framework or modalities) for an investigation into the March 4, 2005 death of an Italian official near Baghdad, Iraq. This document was originally unclassified. Grafeld Decl., para. 18; *Vaughn* Index 1.
- **U2**. A one-page, March 12, 2005 letter, in English, from the U.S. Ambassador in Rome to a senior official in the Italian government relaying the official U.S. response to the Italian government with respect to the terms of reference for the investigation described in Document 1. This document was originally unclassified. Grafeld Decl., para. 19; *Vaughn* Index 1.
- **U3**. A three-page, March 14, 2005 telegram, assumedly in English, from the U.S. embassy in Rome to the Department of State and embassy in Baghdad reporting on the exchange of letters between the Italian government and the embassy in Rome, (Documents U1 and U2), and providing an informal translation of the Italian letter. This document was originally unclassified. Grafeld Decl., para. 20.

- **U4**. A one-page, April 1, 2005 letter, in Italian, from a senior Italian military official to the political level of his government which describes the personal effects of the Italians involved in the March 4, 2005 U.S. military attack. This document was originally unclassified. Grafeld Decl., para. 21; *Vaughn* Index, 2.
- **U5**. A one-page, April 1, 2005 translation into English of Document 4. This document was originally unclassified. Grafeld Decl., para. 22; *Vaughn* Index, 2.

Although none of Defendants' *Vaughn* indices identify the location of these five documents within the 964 pages of AR 15-6 materials, it appears they were located in Annex B to the AR 15-6 Report. Annex B lists the following documents on page BS 00005:

- **1B**. Letter from Italian delegation,
- **2B**. Letter from United States Ambassador to Italy, Mel Sembler, and
- **3B**. Email to BG Vangjel of the English translation of the Terms of Reference.

The following page, which is not Bates stamped, states that pages 00006-00011 were removed for referral to the State Department.

While it is possible that some of the documents listed in Annex B correspond with those listed in the *Vaughn* Index, it is far from clear that they are the same documents. Furthermore, the *Vaughn* index lists five documents while the Annex only lists three. The government has provided no information to clarify this matter.

# ARGUMENT

**I. THE COURT SHOULD NOT ABDICATE ITS RESPONSIBILITY TO SCRUTINIZE DEFENDANTS' CLASSIFICATION DECISIONS.**

Defendants devote a substantial portion of their supplemental motion to their assertion that the Court should accord substantial weight to agency affidavits and not "second-guess" agency opinions in a FOIA case involving documents that are said to implicate national security.[2]

---

[2] In their earlier pleadings, Defendants mis-cite *EPA v. Mink*, 410 U.S. 73 (1973). Not only do they represent it as a 1993 case, e.g. Reply 10, Surreply 11-12, but they also support the proposition that courts should not second-guess Executive classification decisions by citing to a
(Continued...)

– 4 –
Plaintiffs' Supplemental Motion for Summary Judgment, CV-06-2812 (MHP)

Defendants' Supplemental Motion for Summary Judgment 7-9; *see also* Defendants' MSJ 8; Defendants' Reply in Support of Their Motion for Summary Judgment and Opposition to Plaintiffs' Cross-Motion for Summary Judgment ("Reply") 9-10; Defendants' Surreply in Support of Their Motion for Summary Judgment ("Surreply") 10-12. Nevertheless, court scrutiny remains very much a part of FOIA procedure, because

> [w]hile an agency's declarations setting forth the reasons that information falls within this exemption are entitled to substantial weight, they must nevertheless afford the requester an ample opportunity to contest, and the court to review, the soundness of the withholding. . . . *Goldberg v. Dep't of State*, 818 F.2d 71, 76-77 (D.C.Cir.1987) (noting that *Exemption 1 does not relieve the courts of their "independent responsibility" to review the agency's decision*).

*American Civil Liberties Union v. FBI*, 429 F.Supp.2d 179, 187 (D.D.C. 2006) (emphasis added).

As Plaintiffs pointed out in their earlier pleadings, the Court's independent responsibility to review agency classification decision-making has never been so important as in the present era of rampant overclassification of government documents and a deliberate policy by the Executive to keep documents secret. *See* Plaintiffs' Motion for Summary Judgment 18-19. Moreover, deference "is not equivalent to acquiescence," *American Civil Liberties Union v. FBI*, 429 F.Supp.2d at 187 (parenthesis, internal quotation marks omitted). Accordingly, the Court should scrutinize defendants' assertions that the documents at issue here should be kept secret, and in so doing should order their disclosure or at least their production for *in camera* review.

## II. DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN TO WITHHOLD DOCUMENTS PURSUANT TO EXEMPTION 1.

Under certain circumstances, the government can withhold classified information under Exemption 1 of the FOIA. 5 U.S.C. § 552(b)(1). Information that concerns foreign relations, foreign activities of the United States or foreign government information may be classified. Exec.

---

(...Continued)

portion of *Mink* that was superseded by a subsequent revision to the statute. E.g. *Halpern v. FBI*, 818 F.3d 279, 291 (1999).

Order No. 12958, Classified National Security Information[3] ("E.O. 12958") § 1.4(b) & (d). "Foreign government information," according to the relevant provisions of E.O. 12958, means:

> (1) information provided to the United States Government by a foreign government or governments, an international organization of governments, or any element thereof, with the expectation that the information, the source of the information, or both, are to be held in confidence; [¶] (2) information produced by the United States Government pursuant to or as a result of a joint arrangement with a foreign government or governments, or an international organization of governments, or any element thereof, requiring that the information, the arrangement, or both, are to be held in confidence[.]

E.O. 12958 § 6.1(r). However, such information cannot be classified unless its unauthorized disclosure "reasonably could be expected to result in damage to the national security . . . ." E.O. 12958 § 1.1(a)(4). "Damage to the national security," in turn, means "harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information." E.O. 12958 § 6.1(j).

On summary judgment, "the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents" whether the agency seeks to withhold an entire document or merely redact information from a document. 5 U.S.C. § 552(a)(4)(B); *U.S. Dept. of State v. Ray*, 502 U.S. 164, 173 (1991); *Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F.Supp. 1291, 1295 (N.D. Cal. 1992).

Defendants here cannot meet this burden because release of documents U1-U3 would not result in damage to the national security – i.e. harm foreign relations of the United States. E.O. 12958 § 6.1(j). Although defendants cite the need to keep diplomatic correspondence confidential to protect their relationship with the Italian government, they have introduced scant evidence that such release would actually harm this relationship.

In fact, the incident itself caused considerable public outrage and damage to diplomatic relations between the United States and Italy.[4] As defendants themselves admit, the killing of a

---

[3] E.O. 12958 was amended by Executive Order 13292. *See* 68 Fed.Reg. 15315; *American Civil Liberties Union v. Dep't of Defense*, 389 F.Supp.2d 547, 558 (S.D.N.Y. 2005).

high-level Italian intelligence officer who successfully negotiated the release of kidnapped Italians in Iraq "remain[s] a sensitive topic in Italy and in relations between Italy and the United States." Grafeld Decl., para. 18. While the shooting remains a sensitive *topic*, defendants have not provided evidence that the withheld *information* is sensitive within the meaning of Exec. Order 12958 § 6.1(j). Moreover, the value and utility of this information are high, because it could enhance the public's understanding of an incident that has generated intense debate. *Id.*

Regarding documents U1-U3, defendants provide not a single reason the Italian government might object to the disclosure of the information in these letters, such as the Italian's views regarding "terms of reference" of the investigation or the United States's official response to the Italians regarding the "terms of reference." Moreover, defendants have documented no attempt to seek the Italians' consent to release of these documents.

Basing nondisclosure on the protection of diplomatic relations appears to be an attempt by defendants to use the Italian government as a scapegoat to justify their continued attempts at secrecy and overclassification[5] to avoid further embarrassment over the incident.[6] However, classifying documents to prevent embarrassment is expressly prohibited by Executive Order 12958, which defendants seek to use to justify non-disclosure. E.O. 12958 § 1.7 (a) (Materials are "in no case" to be classified to "conceal violations of law," "prevent embarrassment to a person, organization or agency," or "prevent or delay the release of information that does not require protection in the interest of national security.")

Furthermore, it is highly likely that the Italians would not oppose the release of information

---

(...Continued)

[4] *U.S. Bars Italians from Examining Victim's Car,* Army Times.com, March 23, 2005, www.armytimes.com/print.php?f=1-292925-740304.php; Grafeld Decl., para. 18.

[5] At the March 26, 2007 hearing on cross-motions for summary judgment, the Court stated, "I don't understand why there is this great effort at secrecy and non-disclosure. By secrecy, I mean classification for information that is commonly known, because it suggests, then that there is overclassification." Judge Patel, Transcript of Proceedings, March 26, 2007, 51:7-10.

[6] "[Italian Intelligence Officer Nicola] Calipari's killing outraged Italians and prompted [former] Premier Silvio Berlusconi to demand that Washington provide an explanation."*U.S. Bars Italians from Examining Victim's Car,* Army Times.com, March 23, 2005, www.armytimes.com/print.php?f=1-292925-740304.php.

included in documents U1-U3, which would shed light on how the U.S. and Italian governments approached the investigation into the shooting, for the following reasons: First, the U.S. and Italy were unable to produce a joint report concerning the Sgrena shooting.[7] Instead, each country released its own report, coming to differing conclusions on several key issues, including the speed of the car, the propriety of the soldiers' actions, and whether or not the U.S. knew that Sgrena would be traveling on the road to the Baghdad Airport on the night of the shooting.[8] Second, the U.S. military blocked Italian investigators' attempts to examine Sgrena's bullet-ridden car immediately following the shooting.[9] That these two governments produced such divergent reports highlights the need for the release of information that could help further public understanding of the shooting – such as documents U1-U3.

## CONCLUSION

For the foregoing reasons, the Court should order documents U1-U3 disclosed, or at minimum produced for *in camera* review.

DATED: November 12, 2007                    Respectfully submitted,


                                            BY:   /s/ Colleen Flynn
                                                  COLLEEN FLYNN
                                                  CHRIS FORD
                                                  W. GORDON KAUPP
                                                  Attorneys for Plaintiffs

---

[7] *Dueling Views of the Sgrena Shooting,* Christian Science Monitor, May 5, 2005, www.csmonitor.com/2005/0505/p07s01-woiq.html.
[8] *Id*.
[9] *Id*.; Letter, March 19, 2005, Annex M to AR 15-6 Report, BS 000900.