1  COLLEEN FLYNN, SBN 234281
   CHRIS FORD, SBN 239376
2  3435 Wilshire Blvd., Suite 2900
   Los Angeles, CA 90010
3  Telephone: (213) 487-8000
4  Facsimile: (213) 487-8001
   E-mail: colleen_ucsc@hotmail.com
5
   W. GORDON KAUPP, SBN 226141
6  115 ½ Bartlett Street
7  San Francisco, CA 94110
   Telephone: (415) 285-8091
8  Facsimile: (415) 285-8092
   E-mail: gordonk@hotmail.com
9
10 ATTORNEYS FOR PLAINTIFFS

11              UNITED STATES DISTRICT COURT FOR THE

12                 NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14

15 MARGUERITE HIKEN and              Case No. CV-06-2812 (MHP)
   THE MILITARY LAW TASK FORCE,
16                                   PLAINTIFFS' NOTICE OF MOTION AND
                                     MOTION FOR AN INTERIM FEE
17     Plaintiffs,                   AWARD PER 5 U.S.C. § 552(a)(4)(E);
                                     MEMORANDUM OF POINTS AND
18     v.                            AUTHORITIES IN SUPPORT THEREOF

19
20 DEPARTMENT OF DEFENSE
   and UNITED STATES                 Hearing Date: March 29, 2010
21 CENTRAL COMMAND,                  Time:        2 p.m.
                                     Courtroom:   15, 18th floor
22
                                     Judge:       Hon. Marilyn H. Patel
23     Defendants.

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

I. INTRODUCTION .................................................................................................. 2

II. ARGUMENT ......................................................................................................... 3

   A. PLAINTIFFS PREVAILED UNDER *BUCKHANNON* AND THUS ARE ELIGIBLE FOR AN ATTORNEY FEE AWARD BECAUSE THEY OBTAINED "SOME RELIEF" FROM THIS COURT ............................ 4

   B. PLAINTIFFS ARE ENTITLED TO ATTORNEY FEES ......................... 5

      1. Disclosure "Furthers a Project Benefiting the General Public" .......... 6

      2. The Nature of Plaintiff's Interest is Scholarly, Journalistic and in the Public Interest ................................................................................ 6

      3. There is No "Reasonable Basis" for Defendants' Withholding ........... 7

         a. Defendants' Dilatory Conduct Demonstrated "Recalcitrance" and "Obduracy," Justifying an Order for Attorney Fees on This Basis Alone .................................................................................................. 9

         b. Defendants' Actions Lacked a "Colorable Basis" ........................ 10

   C. THE COURT SHOULD ORDER DEFENDANTS TO PAY PLAINTIFFS THE LODESTAR AMOUNT ........................................... 11

   D. AN ORDER OF INTERIM ATTORNEY FEES IN THIS MATTER IS JUSTIFIED ............................................................................................... 12

      1. The Court Should Grant Plaintiffs' Interim Fee Motion Based on the Hardship Continued Litigation Imposes on Plaintiffs and Their Counsel ............................................................................................. 14

      2. Even If Hardship Alone Is Insufficient, the Government's Inordinate Delays and Resort to Dilatory Tactics, and the Lengthiness of the Instant Proceedings Necessitate an Order for Interim Fees ............... 15

III. CONCLUSION ..................................................................................................... 15

1 **TABLE OF AUTHORITIES**

2 **CASES**

3 *Hiken v. Dep't. of Defense*, 521 F.Supp.2d 1047 (N.D. Cal. 2007)............... 3, 5, 9, 10, 11

4 *Powell v. U.S. Dept. of Justice*, 569 F.Supp 1192 (N.D. Cal. 1983) .......... 3, 12, 13, 14, 15

5 *Church of Scientology of California v. U.S. Postal Service* ("*Church of Scientology*"), 700

6 F.2d 486 (9th Cir. 1983).................................................................................3, 5, 6, 7

7 *Long v. I.R.S*, 932 F.2d 1309 (9th Cir. 1991) ............................................. 3, 11

8 *Davy v. C.I.A.*, 550 F.3d 1155 (D.C. Cir. 2008) ......................................3, 5, 7, 8

9 *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human*

10 *Resources,* 532 U.S. 598 (2001) ............................................................... 4, 5

11 *Davis v. Dept't of Justice*, 460 F.3d 92 (D.C. Cir. 2006)................................... 4

12 *Li v. Keisler*, 505 F.3d 913 (9th Cir. 2007) ..................................................... 4

13 *Wildlands CPR v. U.S. Forest Service*, 558 F.Supp.2d 1096 (D. Mont. 2008)................. 4

14 *Zarcon, Inc. v. N.L.R.B.*, 2008 WL 4960224 (W.D. Mo. 2008)........................................ 4

15 *Preservation Coalition of Erie County v. Federal Transit Admin.*, 356 F.3d 444

16 (2nd Cir. 2004) ............................................................................................ 5

17 *American Small Business League v. U.S. Small Business Admin.*, 2009 WL 1011632

18 (N.D. Cal. 2009) ................................................................ 6, 7, 8, 10, 11, 12

19 *O'Neill, Lyasght & Sun v. D.E.A.*, 951 F.Supp. 1413 (C.D. Cal. 1996) ...................... 6, 7

20 *Los Angeles Gay & Lesbian Community Services Center v. IRS*, 559 F.Supp.2d 1055

21 (C.D. Cal. 2008)............................................................................................ 6, 11

22 *Fenster v. Brown*, 617 F.2d 740 (D.C. Cir. 1979) ............................................ 7, 8

23 *Wheeler v. IRS*, 37 F.Supp.2d 407 (W.D. Pa. 1998)..............................................8, 10, 11

24 *Peter S. Herrick's Customs and Intern. Trade Newsletter v. U.S. Customs and Border*

25 *Protection*, 2006 WL 3060012, 34 Media L. Rep. 2460 (D.D.C. 2006) .......................... 8

26 *Read v. F.A.A.*, 252 F.Supp.2d 1108 (W.D. Wash. 2003)............................................ 8, 9

27 *Miller v. Holzmann*, 575 F.Supp.2d 2 (D.D.C. 2008) .................................................... 11

28 *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319

1  (D.C. Cir. 1982) ............................................................................................ 12

2  *Rosenfeld v. U.S.*, 859 F.2d 717 (9th Cir. 1988) ...................................... 12, 13

3  *Biberman v. F.B.I.*, 496 F.Supp. 263 (S.D.N.Y. 1980) ................................ 13

4  *Allen v. F.B.I.*, 716 F.Supp. 667 (D.D.C. 1989) ........................................ 13

5  *Hanrahan v. Hampton*, 446 U.S. 754 (1980) .............................................. 13

6  *National Ass'n of Criminal Def Lawyers v. DOJ*, 182 F.3d 981 (D.C. Cir. 1999)........... 13

7

8  **STATUTES**

9  5 U.S.C. § 552(a)(4)(E)(i) .............................................................................. 3

10  5 U.S.C. § 552(a)(4)(E) .............................................................................. 3, 4

11  5 U.S.C. § 552(a)(4)(E)(ii) ............................................................................ 4

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Motion for Interim Fee Award Per 5 U.S.C.§552(a)(4)(E)

**NOTICE OF MOTION**

TO THE HONORABLE COURT, THE PARTIES, AND THEIR ATTORNEYS OF

RECORD:

PLEASE TAKE NOTICE that on March 29, 2010 at 2 p.m. in Courtroom 15 of the

Honorable Marilyn H. Patel, United States District Judge, at the United States

Courthouse, for the Northern District of California, 450 Golden Gate Avenue, 18th Floor,

San Francisco, California 94102, Plaintiffs MARGUARITE HIKEN and the MILITARY

LAW TASK FORCE will and hereby do move this Court to issue an Order awarding

attorney fees under 5 U.S.C. § 552(a)(4)(E) in the amount of $211,082.30.

This motion is based upon the attached memorandum of points and authorities, the

attached declarations and exhibits, the pleadings and papers filed in this case, and such

written and oral arguments as may hereinafter be made by the parties.


DATED: February 16, 2010          BY: _____/s/_____
                                       Chris Ford
                                       Counsel for Plaintiffs

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION**

Plaintiffs request that this Court order defendants to pay plaintiffs' attorney fees for the first phase of litigation in this case, which culminated with the Court's October 2, 2007 Order ("2007 Order"). *Hiken v. Dep't. of Defense*, 521 F.Supp.2d 1047 (N.D. Cal. 2007) ("*Hiken*"). The Court ordered defendants to release to plaintiffs all segregable portions of documents relating to the Rules of Engagement ("ROE"), which were previously withheld in their entirety, and route and unit names from the AR 15-6 report. Within a month of the Court's Order, defendants provided plaintiffs with 117 pages of documents related to the ROE and a revised version of the AR 15-6 report with significantly fewer redactions than in the prior version released to plaintiffs.

Plaintiffs made their FOIA request via letter dated March 17, 2005. Although the FOIA requires a response in no more than twenty business days, nearly six months passed before defendants communicated their decision to deny plaintiffs' request. A short time later, plaintiffs submitted an administrative appeal, dated September 26, 2005, to defendant Department of Defense ("DoD"), as instructed by defendant U.S. Central Command ("CENTCOM"). Exhibit 4 to Defendants' Motion for Summary Judgment ("Ds' MSJ"), Dkt. No. 18. Defendants failed to respond to the appeal within twenty days as the statute requires, but assured plaintiffs that their appeal was on the "front burner" and would be "simple" to resolve. Exhibit A to Plaintiffs' Motion for Summary Judgment ("Ps' MSJ"), Dkt. No. 21. However, after 19 months of waiting for a response, plaintiffs concluded that the government would not release the requested information without court intervention. Plaintiffs thus filed the complaint in this matter on April 25, 2006. Complaint, Dkt. No. 1. Nearly six months later, defendants communicated to plaintiffs their denial of the appeal – affirming plaintiffs' conclusion that court intervention was necessary to obtain the requested information. Exhibit 6 to Ds' MSJ, Dkt. No. 18.

The parties filed cross motions for summary judgment, and the Court held a hearing on these motions on March 26, 2007, after which it issued the 2007 Order. As is detailed *infra*, plaintiffs' lawsuit and the 2007 Order were clearly necessary to obtain the requested materials from defendants, and defendants' dilatory conduct underscored the lack of a reasonable basis for

1  withholding the requested information. Furthermore, plaintiffs sought the disclosures for a

2  scholarly, journalistic enterprise the purpose of which is to provide a public benefit – specifically a

3  better understanding of whether the U.S. Military acted lawfully in certain events during the war in

4  Iraq. Moreover, the number of hours and hourly rates of plaintiffs' attorneys are reasonable, and

5  given plaintiffs' lack of wherewithal and the economic hardship that would attend continued

6  litigation in this matter, an award of interim fees is appropriate.

7

8  ## II.  **ARGUMENT**

9       To receive an award of attorney fees, a FOIA requester must show that s/he has

10  "substantially prevailed" in the litigation. 5 U.S.C. § 552(a)(4)(E)(i).[1] Where, as here, a plaintiff

11  requests an award of interim fees, "[t]he issue to be decided . . . is whether plaintiff has

12  substantially prevailed in the first phase of this litigation by securing release of the documents

13  responsive to his request." *Powell v. U.S. Dept. of Justice* ("*Powell*"), 569 F.Supp 1192, 1199

14  (N.D. Cal. 1983).

15       A plaintiff who successfully shows that s/he has substantially prevailed is eligible for

16  attorney fees – but the plaintiff also must show entitlement to fees, which is determined by

17  applying case law-derived criteria. *Church of Scientology of California v. U.S. Postal Service*

18  ("*Church of Scientology*"), 700 F.2d 486, 489-494 (9th Cir. 1983). Once the plaintiff has

19  demonstrated eligibility and entitlement to fees, the final step is for the court to determine whether

20  the fees are reasonable. *E.g. Long v. I.R.S*, 932 F.2d 1309, 1313-14 (9th Cir. 1991).

21       Not only have plaintiffs here made the requisite showings for a fee award, as demonstrated

22  *infra*, but such an award would further the underlying purpose of the FOIA's attorney fees

23  provisions. "The touchstone of a court's discretionary decision under section 552(a)(4)(E) must be

24  whether an award of attorney fees is necessary to implement the FOIA. A grudging application of

25  this provision, which would dissuade those who have been denied information from invoking their

26  right to judicial review, would be clearly contrary to congressional intent." *Davy v. C.I.A.*, 550 F.3d

27  _____

28       [1] All statutory references are to Title 5 of the United States Code.

1    1155, 1158 (D.C. Cir. 2008). Therefore, courts approach interim motions for fees in FOIA

2    litigation with a liberal leaning towards awarding fees when plaintiffs have prevailed.  Based on

3    plaintiffs' showing here, this Court should grant plaintiffs' Motion for an Interim Fee Award.

4

5              **A.  PLAINTIFFS PREVAILED UNDER *BUCKHANNON* AND THUS ARE**

6                   **ELIGIBLE FOR AN ATTORNEY FEE AWARD BECAUSE THEY**

7                   **OBTAINED "SOME RELIEF" FROM THIS COURT.**

8              Plaintiffs have prevailed and are eligible for an attorney fee award pursuant to *Buckhannon*

9    *Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598,

10   601, 610. (2001) ("*Buckhannon*"). In *Buckhannon*, the Supreme Court expressly rejected the

11   catalyst theory of fee recovery.[2] *Buckhannon*, 532 U.S. at 603. The *Buckhannon* Court held that a

12   party prevails for the purpose of obtaining a fee award only when it "has been awarded some relief

13   by [a] court." *Id*. at 603. The *Buckhannon* standard applies in FOIA cases. *E.g. Davis v. Dept't of*

14   *Justice*, 460 F.3d 92, 105 (D.C. Cir. 2006). Under *Buckhannon*, courts apply a two-part test to

15   determine whether a party has prevailed. Under this test, a plaintiff must "establish[] that [its]

16   federal court action[] resulted in a 'material alteration of the legal relationship of the parties' and

17   that the alteration was 'judicially sanctioned.'" *Li v. Keisler*, 505 F.3d 913, 917 (9th Cir. 2007)

18   (quoting *Buckhannon*, 532 U.S. at 604-05).

19             In the present case, the Court's 2007 Order materially altered the legal relationship between

20   the parties and constitutes the kind of judicial imprimatur envisioned by the *Buckhannon* Court. *See*

21   _____

22       [2] Congress restored the catalyst theory with the enactment of the Openness Promotes
     Effectives in our National Government Act ("OPEN Government Act"), signed into law in

23   December 2007. *Wildlands CPR v. U.S. Forest Service*, 558 F.Supp.2d 1096, 1097-98 (D. Mont.
     2008). By passage of the Act, the provisions in § 552 (a)(4)(E) "replaced" the *Buckhannon*

24   analysis. *Id*. at 1098. Under the new provisions, a party who has obtained relief through "(I) a
     judicial Order, an enforceable written agreement or consent decree; or (II)  a voluntary or unilateral

25   change in position by the agency" has substantially prevailed. § 552(a)(4)(E)(ii). At least one
     district court, however, has found that the OPEN Government Act is not retroactive. *Zarcon, Inc. v.*

26   *N.L.R.B.*, 2008 WL 4960224 (W.D. Mo. 2008). The attorney fees here at issue derive from
     litigation that preceded this Court's Order handed down on October 2, 2007, prior to the enactment

27   of the Act. Plaintiffs do not address the applicability of the Act under the present circumstances.

28

1   *Preservation Coalition of Erie County v. Federal Transit Admin.*, 356 F.3d 444, 451 (2nd Cir.

2   2004). Specifically, the Court ordered defendants, *inter alia*, to produce to plaintiffs all segregable

3   portions of the documents relating to the Rules of Engagement ("ROE") as well as information

4   concerning certain names assigned to particular routes or units in the AR 15-6 report. *Hiken*, 521

5   F.Supp.2d at 1060. Within a month, defendants released two compact disks with 117 pages of

6   previously withheld documents related to the ROE.[3] By requiring defendants to release to plaintiffs

7   materials responsive to plaintiffs' FOIA request, this Order created a judicially sanctioned change

8   in the relationship of the parties and "awarded some relief" to plaintiffs. *Buckhannon*, 532 U.S. at

9   603-606. Thus, plaintiffs have substantially prevailed under *Buckhannon*.

10

11               **B.  PLAINTIFFS ARE ENTITLED TO ATTORNEY FEES.**

12          Once a court has determined that a party has substantially prevailed and is thus eligible for

13  attorney fees, it may, in its discretion, determine whether the party is "entitled" to such fees by

14  taking into account such factors as "(1) the benefit to the public, if any, deriving from the case; (2)

15  the commercial benefit to the complainant; (3) the nature of the complainant's interest in the

16  records sought; . . . (4) whether the government's withholding of the records sought had a

17  reasonable basis in law"; and "whatever [other] factors it deems relevant in determining whether an

18  award of attorney's fees is appropriate." *Church of Scientology*, 700 F.2d at 492. (internal quotation

19  marks omitted).

20          The first three factors "assist a court in distinguishing between requesters who seek

21  documents for public informational purposes and those who seek documents for private advantage.

22  The former engage in the kind of endeavor for which a public subsidy makes some sense, and they

23  typically need the fee incentive to pursue litigation; the latter cannot deserve a subsidy as they

24  benefit only themselves and typically need no incentive to litigate." *Davy*, 550 F.3d at 1160. Thus,

25  when a court evaluates entitlement to fees in a FOIA action, "a distinction is to be drawn between

26

27       [3] Plaintiffs have not filed materials stored on these disks as exhibits because defendants
notified plaintiffs by letter dated October 31, 2007 that defendants also provided the materials to
the Court.

28

the plaintiff who seeks to advance his private commercial interests . . . and a newsman who seeks information to be used in a publication or the public interest group seeking information to further a project benefiting the general public." *Id*. at 1158. As demonstrated below, plaintiffs here have sought the requested materials not for commercial benefit but for the benefit of the public.

### 1. Disclosure of the Requested Documents "Furthers a Project Benefiting the General Public."

This Court recently noted that the first factor, pertaining to the public benefit derived from the case, "relates to the degree of dissemination and likely public impact from disclosure of the requested information. . . . Types of requests that might justify fee awards include a request for information to be used in a publication or a request by a public interest group for information that furthers a project benefitting the general public." *American Small Business League v. U.S. Small Business Admin. ("ASBL")*, 2009 WL 1011632 *3 (N.D. Cal. 2009) (citing *Church of Scientology*, 700 F.2d at 493 & 493 n.6). Further, "[t]he information need not be of public interest as long as there is a public benefit from the fact of its disclosure." *O'Neill, Lyasght & Sun v. D.E.A.*, 951 F.Supp. 1413, 1423 (C.D. Cal. 1996) (citing *Church of Scientology* 700 F.2d at 493).

Plaintiffs, Marguerite Hiken and the National Lawyers Guild's Military Law Task Force ("MLTF"), a nonprofit organization, requested the information at issue in this litigation for the purpose of preparing an article for publication in "On Watch," the newsletter of the MLTF. Exhibit 1 to Ds' MSJ, Dkt. No. 18. On Watch, published on and available free to all via the Internet, informs the public regarding the activities of the U.S. military. *Id*.

### 2. The Nature of Plaintiffs' Interest is Scholarly, Journalistic and in the Public Interest.

The second and third factors of the entitlement test "are often considered together." *Los Angeles Gay & Lesbian Community Services Center v. IRS* ("*LAGLCSC*"), 559 F.Supp.2d 1055, 1060 (C.D. Cal. 2008); *accord*, *Church of Scientology*, 700 F.2d at 494 (courts have found it "logical to read the two criteria together"). Specifically,

[t]he second factor, commercial benefit to plaintiff, and the third factor, the nature of plaintiff's interest in the information sought, relate to whether the plaintiff requested information for a private commercial benefit only or whether the public interest benefited from the release of the requested information. . . . For example, a court might allow recovery of attorneys' fees for an indigent plaintiff or a non-profit public interest group, but not for a large corporate plaintiff.

*ASBL*, 2009 WL 1011632, at *3 (citing *Church of Scientology*, 700 F.2d at 493 n.6, 494); *see also O'Neill*, 951 F.Supp. at 1424 (fee award justified where requestor's interest is neither private nor personal). Additionally, "a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, [unless] ... his interest was of a frivolous or purely commercial nature," *Davy*, 550 F.3d at 1160-61 (quoting *Fenster v. Brown*, 617 F.2d 740, 742 n. 4 (D.C. Cir. 1979) (alteration in the original) (internal quotation marks omitted).

Here, plaintiffs enjoy no private or commercial benefit from disclosure of the materials the Court ordered disclosed. Declaration of Marguerite Hiken, May 29, 2009 ("Hiken Dec."), para. 4. The purpose of the article the MLTF seeks to publish based on the requested materials is to inform the public about important issues pertaining to the government's foreign policy decisions. FOIA request letter, Exhibit 1 to Ds' MSJ, Dkt. No. 18; Complaint, Dkt. No. 1, paras. 6-7. The MLTF's newsletter, On Watch, is made available online at no charge. Hiken Dec., para. 4. Thus, plaintiffs' interest in the information is scholarly, journalistic and public-interest oriented. It is not frivolous or of a commercial nature, and the requesters' interests is neither private nor personal. Hiken Dec., paras. 3-4. Accordingly, plaintiffs have satisfied both the second and third factors of the entitlement test.

### 3.   There is No "Reasonable Basis" for Defendants' Withholding.

To satisfy the "reasonable basis in law" factor, the government must show that (1) "it had a reasonable basis in law for concluding that the information in issue was exempt" *and* (2) "it had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Fenster*, 616 F.2d at 744. The first factor "relates to whether the government agency's actions appeared to have a 'colorable basis in law' or instead appeared to be carried out 'to frustrate the

1  requester.'" *ASBL*, 2009 WL 1011632, at *4. "The question is not whether [the requestor] has

2  affirmatively shown that the agency was unreasonable, but rather whether the agency has shown

3  that it had any colorable or reasonable basis for not disclosing the material until after [requestor]

4  filed suit." *Davy*, 550 F.3d at 1163. Even if the government's argument "is found on a colorable

5  basis in law," that does not foreclose fee recovery by plaintiff; rather, this fact "is merely weighed

6  along with the other factors." *Wheeler v. IRS*, 37 F.Supp.2d 407, 414 (W.D. Pa. 1998).

7        Regarding the second factor for determining whether the government has a reasonable basis

8  for withholding, courts take such a dim view of obdurate behavior that upon a plaintiff's showing

9  of such behavior, a court need not consider the first three fee-entitlement factors – public benefit,

10  commercial nature, and nature of complainant's interest. Recalcitrance and obduracy, according to

11  the *Wheeler* Court, can make the fee-entitlement factor pertaining to reasonable basis "dispositive"

12  in favor of a plaintiff "without consideration of any of the other factors." *Wheeler*, 37 F.Supp.2d at

13  414. For instance, "if [an agency] had engaged in dilatory tactics simply to avoid a disclosure

14  obligation, then its conduct might well qualify as 'recalcitrant' or 'obdurate' and hence

15  unreasonable." *Peter S. Herrick's Customs and Intern. Trade Newsletter v. U.S. Customs and*

16  *Border Protection*, 2006 WL 3060012, at *10, 34 Media L. Rep. 2460 (D.D.C. 2006). In another

17  example, an agency's failure to respond to the plaintiff's request for twenty months following

18  plaintiff's final payment of copying costs "demonstrates recalcitrance and obduracy." *Read v.*

19  *F.A.A.*, 252 F.Supp.2d 1108, 1112 (W.D. Wash. 2003).

20        In *Wheeler*, the agency placed the plaintiff's FOIA request "on the back burner" until the

21  complaint was filed, then "located some files." *Wheeler*, 37 F.Supp.2d at 410, 414. After some

22  delay, an agency employee, on suggestion by counsel, searched through some previously

23  unexamined boxes of materials and found two responsive documents. *Id*. The agency attempted to

24  explain away the delay by citing a merger between two offices. *Id*. The court, however, did not

25  credit that explanation, finding that the agency's actions "indicate a lack of even a colorable basis

26  in law." *Id*.

27

28

1          **a.  Defendants' Dilatory Conduct Demonstrated "Recalcitrance"**

2                **and "Obduracy," Justifying an Order for Attorney Fees on This**

3                **Basis Alone.**

4          Defendants have demonstrated recalcitrance and obduracy throughout both the

5   administrative and litigation phases of the within matter. For example, during the administrative

6   phase, defendants waited nearly half a year to communicate their denial of plaintiffs' initial FOIA

7   request. *See* Ps' MSJ at 12:11-16. Then, despite defendants' claims that they had placed plaintiffs'

8   administrative appeal on the "front burner," defendants instead threw it on the back burner for *more*

9   *than a year* before finally denying it. *Id*. at 12:16-13:1. Thus, defendants' dilatory behavior

10  spanned approximately nineteen months – a very similar amount of time to the twenty months of

11  delays found in *Read* to "demonstrate[] recalcitrance and obduracy." *Read*, 252 F.Sup.2d at 1112.

12         Defendants' dilatory behavior continued throughout the litigation. For example, defendants

13  failed to segregate and release non-exempt ROE materials until this Court ordered them to do so.

14  Furthermore, defendants justified this failure by falsely claiming that "[t]he only non-exempt

15  information that could be segregated would consist of lists of references or heading titles such as

16  'General Guidance' or 'Definitions' that, if released, would be of no informational value."

17  Declaration of Major General Timothy F. Ghormley, USMC, Exhibit 2 to Ds' MSJ, Dkt. No. 18, at

18  para. 7. However, when defendants subsequently released 117 pages of ROE materials upon this

19  Court's Order, the materials revealed much more than just heading titles. *Id*.

20         Defendants further prolonged the litigation by conducting an inadequate search.

21  Defendants' original *Vaughn* Index identified only four ROE-related documents. *Vaughn* Index,

22  Exhibit A to Ds' MSJ ("Ds' *Vaughn* Index"). The Court criticized the government's search that

23  resulted in only these four documents, citing the "lack of specific search terms," the "general nature

24  of the description contained in the affidavit," and "evidence that the results of the search failed to

25  produce responsive documents." *Hiken*, 521 F.Supp.2d at 1054-55. Defendants claimed they were

26  unable to provide more information about the original search, so instead of providing a declaration

27  further explaining the original search, defendants executed a new search with plaintiffs' consent

28  and the Court's permission. Defendants' Renewed Motion for Summary Judgment ("Ds' Renewed

MSJ"), Dkt. No. 66, at 1:21-23. Defendants located twelve additional documents as a result of their new search. Defendants' Revised *Vaughn* Index, Exhibit A to Defendants' Renewed Motion for Summary Judgment ("Ds' Revised *Vaughn* Index"), Dkt. No. 66-2.

Moreover, defendants additionally prolonged the litigation by withholding essential facts the release of which would undermine their untrue assertion that the AR 15-6 report was "leaked" onto their Web site and thus not an official disclosure. Defendants' Reply in Support of Their Motion for Summary Judgment and Opposition to Plaintiffs' Cross-Motion for Summary Judgment, Dkt. No. 35, at 3-4; Ghormley Supp. Decl., Dkt. No. 36, paras. 3-5. This imposed an unwarranted delay in the litigation, evidenced by this Court's statement that it lacked sufficient evidence to determine whether defendants' release of the AR 15-6 report was official. *Hiken*, 521 F.Supp.2d at 1057. In light of such recalcitrance and obduracy on the part of defendants, this Court should find that plaintiffs are entitled to fees based on this factor alone. *Wheeler*, 37 F.Supp.2d at 414.

### b.  Defendants' Actions Lacked a "Colorable Basis."

Even if defendants' dilatory behavior is not seen as demonstrating the kind of recalcitrance or obduracy found in *Read*, defendants had no colorable basis in law for withholding the materials the Court ultimately ordered disclosed. *See ASBL*, 2009 WL 1011632, at *4. For example, in *Wheeler*, the defendants' locating "some files," then later, *on suggestion of their own counsel*, performing further searches and finding responsive documents, "indicate[d] a lack" of a colorable basis in law. *Wheeler*, F.Supp.2d at 414.

Here, defendants searched some file cabinets and electronic files, but failed to meet the basic search standards enunciated by the courts – despite having taken many months to respond to plaintiffs' request. *See* Plaintiffs' Reply in Support of Their Motion for Summary Judgment and Opposition to Defendants' Reply at 11:6-12:20; *Hiken*, 521 F.Supp.2d at 1054. Consequently, this Court, citing "[t]he lack of specific search terms and the general nature of the description contained in the affidavit in combination with evidence that the results of the search failed to produce responsive documents," found it necessary to conduct *in camera* review to determine the adequacy

10

1  of defendants' search for responsive information. *Hiken*, 521 F.Supp.2d at 1054-55.

2       Here, as in *Wheeler*, defendants' lengthy delays and failure to perform an adequate search

3  "appeared to be carried out 'to frustrate the requester.'" *ASBL*, 2009 WL 1011632, at *4. Moreover,

4  as this Court found, defendants lacked a colorable basis in law to not segregate and release

5  information contained in the four documents listed in their initial *Vaughn* index. *Hiken*, 521

6  F.Supp.2d at 1060. Under these circumstances, the Court should find that defendants lacked a

7  colorable basis for their withholding and that plaintiffs are therefore entitled to attorney fees in this

8  matter.

9

10  **C.  THE COURT SHOULD ORDER DEFENDANTS TO PAY PLAINTIFFS THE**

11  **LODESTAR AMOUNT.**

12       Once a plaintiff has demonstrated eligibility for and entitlement to attorney fees, courts

13  scrutinize the attorneys' billing statements for "reasonableness of (a) the number of hours expended

14  and (b) the hourly fee claimed. If these two figures are reasonable, then there is a strong

15  presumption that their product, the lodestar figure, represents a reasonable award." *LAGLCSC*, 559

16  F.Supp.2d at 1060 (quoting *Long v. IRS*, 932 F.2d at 1313-14) (internal quotation marks omitted);

17  *accord*, *ASBL*, 2009 WL 1011632, at *4 ("if the submitted number of hours and the hourly rate are

18  reasonable, then there is a 'strong presumption' that their product is a reasonable award").

19  Generally, "an attorney's usual billing rate is presumptively the reasonable rate, provided that this

20  rate is in line with those prevailing in the community for similar services by lawyers of reasonably

21  comparable skill, experience and reputation." *Miller v. Holzmann*, 575 F.Supp.2d 2, 11 (D.D.C.

22  2008) (internal quotation marks omitted).

23       In addition, a court may authorize "an upward or downward[4] adjustment from the lodestar

24  figure if certain factors relating to the nature and difficulty of the case overcome this strong

25  presumption and indicate that such an adjustment is necessary." *LAGLCSC*, 559 F.Supp.2d 1055,

26

27  _____

     [4] Worth noting is that one Ninth Circuit court appears to have limited a court's authority to

28  adjust downward from the lodestar figure. *See Long v. IRS*, 932 F.2d at 1316.

1060. This Court, for example, adjusted a lodestar figure upward by applying a multiplier of 1.5 where the attorney worked *pro bono* for his client, and the attorney's work was "at a higher level of competence than that of attorneys with similar experience." *Powell*, 569 F.Supp. at 1204.

The attorneys for plaintiffs herein support their lodestar billing rates by showing their rates in similar cases; what they command in the marketplace; actual billing practices during the course of the litigation; and recent fees awarded, based on actual evidence of prevailing rates, to attorneys of comparable reputation and experience performing similar work. *See generally National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325-28 (D.C. Cir. 1982); Declaration of Colleen Flynn ("Flynn Dec."); Declaration of Chris Ford ("Ford Dec"); Declaration of Gordon Kaupp ("Kaupp Dec."); Declaration of Carol Sobel ("Sobel Dec."); Declaration of Kenneth Kreuscher ("Kreuscher Dec."); Declaration of Thomas Burke ("Burke Dec.").

Plaintiffs' counsel, for example, maintained contemporaneous, complete and standard time records that accurately reflect the work performed by each attorney. 675 F.2d at 1327. Flynn Dec., para. 10; Ford Dec., para. 10; Kaupp Dec., para. 14; Kreuscher Dec., para. 14. Further, lead counsel Colleen Flynn demonstrates that her reasonable market billing rate is $350 per hour. Flynn Dec., para. 9. Co-counsel Chris Ford, W. Gordon Kaupp and Kenneth Kreuscher demonstrate that their reasonable market billing rates are $325 per hour, $400 per hour, and $300 per hour, respectively. Flynn Dec., para. 9; Ford Dec., para. 9; Kaupp Dec., para. 11.; Kreuscher Dec., para 13. Plaintiffs have prepared a table showing each of their attorneys' hours worked in the first phase of this litigation and in preparing the within motion, their reasonable billing rate, and their presumptively reasonable lodestar figures. *ASBL*, 2009 WL 1011632, at *4; Flynn Dec., para. 14. The total of fees owed plaintiffs is $211,082.30. *Id*. The Court should award plaintiffs the total amount of attorney fees sought herein.

## D.  AN ORDER OF INTERIM ATTORNEY FEES IN THIS MATTER IS JUSTIFIED.

FOIA requesters may be awarded interim fees "because Congress intended § 552(a)(4)(E) to operate like comparable provisions elsewhere in the U.S. Code, under which interim fees are

1   clearly available." *Rosenfeld v. U.S.*, 859 F.2d 717, 724 (9th Cir. 1988). The *Rosenfeld* Court

2   further explained,

> 3   [w]hen citizens must litigate against the government to obtain public information,
> 4   especially when, as here, release of the withheld records appears to be in the public
>     interest rather than for merely private commercial gain, *it is entirely appropriate*
> 5   *that interim fee awards be available to enable meritorious litigation to continue*. We
>     do not believe that Congress, after waiving sovereign immunity from attorney's fees
> 6   for citizens seeking the release of information, would countenance the government's
>     dragging its heels, thereby forcing impecunious litigants to abandon their quest.

7

8   *Rosenfeld*, 859 F.2d at 725 (emphasis added). "If the court lacks authority to grant such an interim

9   award, the [c]ongressional purpose in adopting § 552(a)(4)(E) would, *pro tanto*, be frustrated: the

10  litigation would wither and die; the records sought would remain undisclosed. The availability of a

11  final award in such circumstances would be fools gold only." *Biberman v. F.B.I.*, 496 F.Supp. 263,

12  265 (S.D.N.Y. 1980); *see also Allen v. F.B.I.*, 716 F.Supp. 667, 671 (D.D.C. 1989) (if interim fees

13  were not available, the government "could circumvent the requirements of the FOIA and avoid full

14  disclosure by a war of attrition. The availability of a final award of attorney fees would be like the

15  end of a rainbow, unattainable.").

16      Significant to the present case, an interim fee award is appropriate where a party "has

17  established his entitlement to some relief on the merits of his claims." *Hanrahan v. Hampton*, 446

18  U.S. 754, 756-57 (1980). "*For an interim award of attorney's fees it is enough that the fee is high*

19  *relative to the party's or its counsel's ability to continue financing the litigation*." *National Ass'n of*

20  *Criminal Def Lawyers v. DOJ* ("*NACDL*"), 182 F.3d 981, 986 (D.C. Cir. 1999) (emphasis added).

21  The *NACDL* Court affirmed a lower court finding that an interim award of attorney fees was

22  warranted where "the protracted litigation had imposed a financial hardship upon counsel for

23  NACDL" and the NACDL was able to show eligibility for and entitlement to fees. *Id.* at 982, 983,

24  987. Also worth noting is that where no documents would have been released but for a plaintiff's

25  success in its lawsuit – as is the case here – one court found "no obstacle" to the plaintiff's

26  recovery of an interim fee award. *See Allen*, 713 F.Supp. at 12-13.

27      In *Powell*, this Court distilled from legislative history four factors as a means to guide the

28  decision on whether to grant interim fees:

1.   Degree of hardship that delaying the fee award until conclusion of litigation imposes on plaintiff and his or her counsel;[5]

2.   Whether there was unreasonable delay on the part of the government. Fees are justified where there was "inordinate" delay and "the use of dilatory tactics";

3.   The length of time the case has been pending;

4.   The likely period of time required before the litigation concludes.

*Powell*, 569 F.Supp at 1200.

### 1.   The Court Should Grant Plaintiffs' Interim Fee Motion Based on the Hardship Continued Litigation Imposes on Plaintiffs and Their Counsel.

In the instant case, the degree of hardship on plaintiffs in continuing this long-running litigation is extreme, and plaintiffs cannot afford to finance continued litigation in this matter. Hiken Decl., para 6; Flynn Dec., para. 6; Ford Dec., para. 7; Kaupp Dec., para. 10; Kreuscher Dec., para. 10. Plaintiffs do not have the wherewithal to prosecute the kind of costly and drawn-out litigation entailed in asserting their rights under the FOIA. *See* Hiken Dec., paras. 5-6; Flynn Dec., para. 6; Ford Dec., para. 7; Kaupp Dec., para. 10; Kreuscher Dec., para. 10. In particular, plaintiff MLTF is a non-profit organization and lacks the budget necessary to pay its attorneys' hourly rates. *Id.*, paras. 3, 5.

In addition, the litigation herein imposes a pronounced economic burden on counsel for plaintiffs, all sole practitioners[6] who have been carrying the costs and their fees in this case for more than three years. ; Flynn Dec., para. 6; Ford Dec., para. 7; Kaupp Dec., para. 10; Kreuscher Dec., para. 10. These attorneys have had overhead to pay and, as the nation's economy has soured, have experienced increased difficulty in securing consistently paying work. *Id*. Plaintiffs' counsel have devoted significant amounts of time to this case without having been paid, resulting in a

---

[5] This Court noted that the Supreme Court has "relied heavily on this factor in upholding" an interim fee award. Where plaintiff cannot proceed with the litigation without the relief afforded by an award of interim attorney fees, "[t]his hardship alone may be enough to justify an interim award." *Powell*, 569 F.Supp. at 1200.

[6] Counsel Gordon Kaupp was a sole practitioner at all times during which he contributed to portion of the litigation here at issue, i.e. its first phase; subsequently, he joined a firm. *See* Kaupp Decl., paras. 5-7.

14

1   significant hardship. *Id*.

2   　　　　Furthermore, neither plaintiffs nor their attorneys have the wherewithal to continue the

3   litigation without relief in the form of an interim fee award. Hiken Decl., para. 6. ; Flynn Dec.,

4   para. 6; Ford Dec., para. 7; Kaupp Dec., para. 10; Kreuscher Dec., para. 10. Based on the extent of

5   this hardship alone, an interim fee award is justified, *Powell*, 569 F.Supp at 1200, and the Court

6   should order defendants to pay plaintiffs' interim attorney fees.

7

8   　　　　　　　　**2.　Although Hardship Alone Should Be Sufficient, the Government's**

9   　　　　　　　　　　**Inordinate Delays and Resort to Dilatory Tactics, and the Lengthiness of**

10  　　　　　　　　　　**the Instant Proceedings Necessitate an Order for Interim Fees.**

11  　　　　Although the hardship borne by plaintiffs and their attorneys should be sufficient on its own

12  to support an interim fee award, such an award is even more justified because of Defendants'

13  delays and dilatory tactics and because of the lengthiness of these proceedings. Defendants'

14  unjustified delays during both the administrative phase and during the litigation are detailed *supra*,

15  in part II.B.3.a. Moreover, plaintiffs filed their complaint in April 2006; thus, the instant

16  proceedings have spanned more than three and a half years. At the most recent hearing the Court

17  stated it would review certain documents *in camera*, indicate where exemptions "are not well

18  taken," then give defendants an opportunity to respond – all before issuing a final order. Transcript

19  of Proceedings, April 28, 2008, at 34:20-35:6. Therefore, Plaintiffs expect that this case may

20  proceed for a significant amount of time into the future. In sum, Plaintiffs have well satisfied the

21  requirements this Court set forth in *Powell* for a finding that interim fees are justified, and the

22  Court should award interim fees to plaintiff.

23

24  　　**IV.　　CONCLUSION**

25  　　　　Based on the foregoing, the Court should issue an order that defendants pay plaintiffs'

26  attorney fees as set forth herein.

27  //

28  //

1  //

2  //

3  DATED: February 16, 2010                    Respectfully submitted,

4

5

6                                        BY:

7                                               COLLEEN FLYNN
                                               CHRIS FORD
8                                               W. GORDON KAUPP
                                               Attorneys for Plaintiffs
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        16
                Plaintiffs' Motion for Interim Fee Award Per 5 U.S.C.§552(a)(4)(E)

1

CERTIFICATE OF SERVICE

2  I hereby certify that on February 16, 2010, a true and correct copy of the foregoing

3 PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN INTERIM FEE AWARD PER 5

4 U.S.C. § 552(a)(4)(E); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

5 THEREOF was served upon defendants' counsel of record via ECF at the address listed below:

6

7 Joseph C. Folio III
Trial Attorney
8 United States Department of Justice
Civil Division, Federal Programs Branch
9 20 Massachusetts Ave., N.W.
Washington, DC 20530
10

11 DATED: February 16, 2010

12

13            CHRIS FORD

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28