DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.      I am an attorney admitted to practice in the State of California.  I make is declaration in support of the concurrently filed motion for an award of reasonable attorneys' fees based on facts of which I have personal knowledge and if I were called to testify as a witness to these facts I could and would do so competently.

2.      I was admitted to the California Bar in December, 1978, following my graduation from law school in May of 1978.  From January 1, 1977 until April 24, 1997, I was employed by the ACLU Foundation of Southern California as its First Amendment attorney.  For the last seven years prior to my departure from the ACLU, I served as a Senior Staff Counsel.  I resigned from the ACLU to begin a private civil rights practice in late April, 1997.  Attached at Exhibit "A" is my current resumé.

3.      My practice involves complex civil rights litigation, focusing primarily in the areas of the rights of homeless persons/communities, First Amendment rights and police practices.  In the course of my practice, I have brought several FOIA cases, including one to compel disclosure of  surveillance records of the United States government created and maintained on a librarian/researcher from the University of California, Irvine.  I have also litigated  many California Public Records Act, including representing the Daily Bruin newspaper at UCLA in a lawsuit to compel the university to release all of the settlement agreements in sexual harassment and sexual assault lawsuits brought against employees of the University.  Based on my own litigation experience, I am very familiar with the skill necessary to litigate an FOIA case.

4.      I have received several awards for my legal work over the years.  Most recently, in 2008, I was named as the California Lawyer of the Year (CLAY) recipient for civil rights by California Lawyer Magazine and was also named in the Top 75 Women Litigators in California by the Daily Journal Corporation.  In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work.  I also was  named in 2007 as a Daily Journal Top 100 Most Influential Lawyers in California.  A further listing of recognition of my legal work is set forth in

1   my attached resumé at Exhibit 1.

2       5.      I have been asked to submit this declaration to attest to the reasonableness of the

3   fee rates requested by the counsel in this case.  I am personally familiar with each of the attorneys

4   who are seeking fees by this motion, although I am most familiar with Colleen Flynn, Chris Ford

5   and Ken Kreuscher.

6       6.      I am informed that Gordon Knaupp is seeking fees at $400 an hour, Colleen Flynn

7   is seeking compensation at the rate of $350 an hour, Chris Ford is seeking fees at the rate of $325

8   an hour, and Kenneth Kreuscher is seeking fees at the rate of $300.  Based on my knowledge of

9   each of these individuals, I understand that Mr. Knaupp is a 2002 graduate, Ms. Flynn is a 2004

10  graduate, Mr. Ford is a 2005 graduate and Mr. Kreuscher is a 2006 graduate.

11      7.      I recently had occasion to review declarations and court orders regarding market

12  rates for attorneys in the San Francisco legal market in the course of preparing a fee motion in

13  *A.N.S.W.E.R. Coalition - SF v. City and County of San Francisco*, 2009 Cal. App. Unpub. LEXIS

14  3946 (1st Dist. 2009).  Because I do not often practice in Northern California, to familiarize

15  myself with appropriate billing rates for me and other counsel in *A.N.S.W.E.R.*, I obtained copies

16  of a number of fee declarations and other supporting evidence submitted to the Northern

17  California courts by downloading the documents from PACER.  I reviewed fee declarations

18  prepared by Richard Pearl, Sanford Rosen, Sid Wolinsky and several others, as well as all

19  exhibits submitted to the court in support of the fee motion filed in *L.H., et al. v.*

20  *Schwarzenegger*, 645 F. Supp. 2d 888 (ED CA 2009).  In this case, Judge Karlton awarded fees

21  to several Bay Area firms based on 2008 San Francisco market rates, despite the fact that the case

22  was brought in the Eastern District, where market rates are considerably lower.  *Id.* at 893-894.

23  The Court's order granting fees summarized the range of 2008 reasonable market rates in the San

24  Francisco legal market at each level of experience.   I also had occasion this past summer to

25  prepare a supporting declaration for, among other attorneys, Michael Rubin at Altshuler Berzon,

26  one of the firms seeking fees in *Vasquez v. California*, 45 C.4th 243 (2008).

27      8.      In the summary of 2008 rates set forth by Judge Karlton, an attorney practicing as

28  long as Mr. Kreuscher (3 years) and Mr. Ford (4 years) was awarded fees at $340 an hour for

1   2008.  645 F.Supp.2d at 894.  Attorneys practicing as long as Mr. Knaupp (7 years) and Ms.

2   Flynn (5 years) were awarded fees at $370 and $340 an hour, respectively.  *Id.*  Judge Karlton's

3   opinion addressed 2008 rates.  The reasonableness of these rates for plaintiff's counsel here is

4   reinforced by the fact that their requested rates are consistent with the 2008 rates awarded in *L.H.*

5   *v. Schwarzenegger.*  Only Mr. Knaupp's rate of $400 an hour and Ms. Flynn's rate of $350 an

6   hour is higher than the rates awarded from comparable experience in 2008 by Judge Karlton, but

7   only minimally so. *Id.*

8          9.      As I stated previously, I am familiar with the skill, experience and reputation of

9   each of the attorneys seeking fees by this motion.  I am most familiar with the skills, experience

10  and reputation of Ms. Flynn and Mr. Ford.  I have known both of them since they were in law

11  school.  In fact, I first met Mr. Ford when he was a reporter for the legal newspaper in Southern

12  California, before he attended law school. We are all members of the Board of Directors of the

13  National Lawyers Guild, Los Angeles Chapter.  In addition, Ms. Flynn and Mr. Ford were two of

14  my co-counsel on a large class-action First Amendment case in Los Angeles involving an attack

15  by the Los Angeles Police Department on a peaceful immigrants' rights march and rally in

16  MacArthur Park on May 1, 2007.  As part of the settlement in that case, Judge Matz of the

17  Central District of California approved the reasonableness of the rates sought by class counsel,

18  including Ms. Flynn and Mr. Ford.  Ms. Flynn was awarded fees at $350 an hour and Mr. Ford at

19  $325 an hour, which are the same rates they seek here.  I understand that plaintiffs' counsel has

20  submitted the relevant schedule of rates filed in support of the request for fees in that action,

21  *Multi-Ethnic Immiigrant Worker Organizing Network ("MIWON") v. City of Los Angeles*, CV

22  07-7032 AHM.  Through my work with them on this case and on other issues, I have had

23  considerable opportunity to assess their respective skills, experience and reputation in the legal

24  commuity.  They are both extremely competent attorneys whose skills are well-developed for the

25  number of years they have been in practice.

26         10.     I have known Ken Kreuscher since approximately 2007.  Although I have far less

27  in-person contact with him since he lives in Portland, Oregon, at the present time, we both served

28  on the National Executive Committee of the National Lawyers Guild .  I am less familiar with

Mr. Knaupp, although I am aware of the work he has done on several cases through my review of pleadings in those cases, including the Judi Bari case.  I am of the opinion  that they, too, are at the skill level I would expect for attorneys practicing the same length of time and enjoy excellent reputations as attorneys.

11.     I have extensive experience with the methodology applied to set appropriate market rates for civil rights attorneys.  During the time that I was at the ACLU of Southern California, I prepared numerous fee motions under federal and state fee-shifting statutes for cases in which the ACLU represented the prevailing party.  I was responsible for preparing these motions in cases in which I was directly involved in the underlying litigation, as well as in cases brought by other staff attorneys and volunteer counsel for the ACLU.  As part of this responsibility, each year I would survey several law firms to obtain information on their current billing rates in order to establish rates for individuals of comparable experience to ACLU staff.  In addition to consulting with private law firms handling similarly complex federal litigation, and whose partners were extremely familiar with the experience levels of the various ACLU attorneys because they had co-counseled cases with the ACLU, I collected and reviewed fee application declarations and fee awards in numerous cases.  Since leaving the ACLU 12 years ago, I  have continued this practice in preparing fee motions for those cases in which I serve as cooperating counsel for the ACLU and other public interest law firms and for those cases in my private practice for which attorney fees may be recovered.

12.     In three recent cases, the evidence submitted through my declaration has been cited favorably in awarding fees.  These cases include *Nadarajah v. Holder*,  569 F.3d 906, 912-914 (9th Cir. 2009); *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074, *21 (CD CA 2008); and *Atkins v. Miller*, CV 01-01574 DDP (CD CA 2007) at n.4.  A copy of the fee order in *Atkins* is attached to my declaration at Exhibit 2.


I declare that the foregoing is true and correct.  Executed this 2nd  day of February, 2010 at Los Angeles, California.

*Carol A. Sobel*

CAROL A. SOBEL

# CAROL A. SOBEL
*429 Santa Monica Boulevard, Suite 550 • Santa Monica, CA 90401-3439 •*
*Tel. 310 393-3055 • Fax. 310 393-3605 • Email carolsobel@aol.com*

## Employment:

| | |
|---|---|
| LAW OFFICE OF CAROL A. SOBEL<br>Solo civil rights law firm. | APRIL, 1997 TO PRESENT |

SENIOR STAFF COUNSEL      1990 TO APRIL, 1997
*ACLU Foundation of Southern California*

Responsible for conducting civil rights and civil liberties litigation in state and federal courts in California; supervise litigation by ACLU volunteer counsel and other ACLU legal staff.

STAFF ATTORNEY      1985 TO 1990
*ACLU Foundation of Southern Califonria*

Civil liberties litigation, primarily in the areas of Establishment Clause and Free Exercise violations, as well as other First Amendment rights.

ASSOCIATE DIRECTOR      1979 TO 1985
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Under the direction of the Executive Director, responsible for administration of two non-profit organizations, including working with Boards of Directors on development of policy on civil liberties issues. Engaged in litigation and assisted Legal Director in coordination and supervision of pro bono attorneys.

DEVELOPMENT DIRECTOR      1977 TO 1979
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Responsible for conducting a variety of fundraising efforts to meet a million-dollar plus annual budget for a 501(c)(3) and a 501(c)(4).

ADMINISTRATIVE ASSISTANT      1971 TO 1976
*Stanley K. Sheinbaum*

Administrative assistant to an individual active as an economist, political activist and philanthropist. Responsible for all office support, organizing various fundraising events, involved in fundraising and speaker scheduling for the Pentagon Papers trial on behalf of Daniel Ellsberg.

## Admitted to Practice:

| | |
|---|---|
| California Supreme Court | November, 1978 |
| United States Supreme Court | September, 1991 |
| Ninth Circuit Court of Appeals | August, 1986 |
| U.S.D.C. Central District of California | February, 1986 |
| U.S.D.C. Eastern District of California | June, 1990 |

# Litigation Experience:

## Federal courts:   (Partial listing of published opinions and significant cases)

*Long Beach Area Peace Network v. City of Long Beach*
522 F.3d 1010 (9th Cir. 2008), as amended July 24, 2009

Upholding and reversing in part on appeal a decision of the district court granting Plaintiffs' request for a preliminary injunction to enjoin a municipal parade ordinance that included vague permit standards setting, *inter alia*, advance-notice requirements  police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance. (Lead counsel)

*Fitzgerald v. City of Los Angeles*
485 F.Supp.2d 1137 (CD CA 2008)

Extending injunction against police sweeps of homeless persons on Los Angeles' Skid Row on the grounds of searching for parole and probation violations.  See below for discussion of permanent injunction in 2003. (Co-Counsel)

*Edward Jones, et al., v. City of Los Angeles,*
444 F.3d 1118 (9th Cir. 2006)

Challenge to City of Los Angeles Municipal Code §41.18(d), prohibiting sitting, lying or sleeping on any street or sidewalk anywhere in the City at any time of day or night.  Plaintiffs, all of whom are homeless persons, brought an 8th Amendment as-applied challenge to their arrests and citations for violating the ordinance when their was no available adequate shelter. (Lead counsel in district court, lead co-counsel on appeal)

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*
316 F.3d 1059 (9thCir. 2003)

Challenge by City of Los Angeles to interim fee award granting plaintiffs' fees as "catalysts" under state civil rights fee shifting statutes.  Following oral argument, the Ninth Circuit certified issue of continued availability of "catalyst" fees under California law after adverse decision by the United States Supreme Court rejecting catalyst fee doctrine under federal law absent express legislative authorization.  Certified for hearing  before the California Supreme Court and ultimately decided by that Court to uphold the catalyst fee doctrine under California law. *(*Argued in Ninth Circuit)

*Fitzgerald v. City of Los Angeles*
2003 U.S. Dist. LEXIS 27382 (CD CA 2003)

Permanent injunction enjoining Fourth Amendment violations by the Los Angeles Police Department (LAPD). The injunction prevents the LAPD from engaging in stops of homeless persons for parole and probation sweeps on Skid Row without reasonable suspicion to believe that specific individuals are on parole or probation and subject to a search condition, or that the individual has engaged in, or is about to commit a crime. (Lead counsel)

*Khademi v. South Orange County Community College District*
194 F.Supp.2d 1011 (C.D. CA 2002)

First Amendment facial challenge invalidating college policy  regulating time, place and manner of student speech on campus.  (Lead counsel)

*Mardi Gras of San Luis Obispo v. City of San Luis Obispo*
189 F. Supp.2d 1018 (C.D. Cal. 2002)

Preliminary injunction to enjoin a municipal parade ordinance that required lengthy advance-notice requirement and permitted high insurance and police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.

*Bauer v. Sampson*
261 F.3d 775 (9th Cir. 2001)

First Amendment challenge to disciplinary action against college professor for publication of an alternative newsletter criticizing elected and appointed public officials and disclosing wrongdoing by college officials and personnel.  The college sought to discipline the professor for violating the district's policies on discrimination and work-place violence.  The polices were declared unconstitutional as applied to the professor's speech.

*H.C. v. Koppel*
203 F.3d 610 (9th Cir. 2000)

Dismissal of federal civil rights action filed in federal court against state court judge and appointed counsel for minor in family law matter. Circuit held that Younger Abstention applied and non-custodial parent had adequate state court remedy.

*Justin v. City of Los Angeles*
2000 U.S. Dist. LEXIS (CD Cal. 2000)
Class action to enjoin police sweeps of homeless population on Los Angeles' Skid Row. Permanent injunction stipulated to in settlement following certification of the injunctive relief class. (Lead counsel)

*Los Angeles Alliance for Survival, et al. v. City of Los Angeles*
 987 F. Supp. 819 (1997); 157 F.3d 1162 (9th Cir. 1998); on certification to the California Supreme Court, 22 Cal.4th 352 (2000); 224 F.3d 1076 (9th Cir. 2000)

Injunction issued in challenge to municipal ordinance barring so-called "aggressive solicitation" in broad areas of traditional public fora. Preliminary injunction entered by district court based on California Constitution. On appeal, the Ninth Circuit certified the California Constitution question to the California Supreme Court. Following decision by the California Supreme Court, the Ninth Circuit upheld the original injunction. (Lead counsel in district court; Co-counsel on appeal)

*Service Employees International Union 660 v. City of Los Angeles*
114 F. Supp.2d 966 (C.D. Cal. 2000)

Challenge to the "no-protest zone" at the Democratic National Convention in Los Angeles in 2000, as well as a preliminary injunction to enjoin the City of Los Angeles parade ordinance.

*United States v. Wunsch*
*54 F.3d 579 (9th Cir. 1995);84 F.3d 1110 (9th Cir. 1996) (reargument)*

First Amendment challenge to discipline of male attorney for "gender bias" in sending note to female Asst. U.S. Attorney after she successfully moved to disqualify him as defense counsel in a criminal case. Ninth Circuit invalidated the penalty and declared unconstitutional California's "offensive personality" regulation on attorneys' professional conduct. (Argued and briefed on appeal).

*American Jewish Congress v. City of Beverly Hills*
*65 F.3d 1539 (9th Cir. 1995);90 F.3d 379 (9th Cir. 1996) (en banc)*

First Amendment challenge to display of a religious symbol on public property and to permit scheme for expressive activities in public fora in the City of Beverly Hills. The en banc panel held the permit scheme unconstitutional and found that a preference had occurred for the display of a particular religious symbol. The en banc decision was unanimous.

*Baca v. Moreno Valley Unified School District*
936 F. Supp. 719 (C.D. Cal. 1996)
First Amendment challenge to school board regulations preventing speakers from making disparaging remarks about public employees during public board meetings.

*National Abortion Federation v. Operation Rescue*
*8 F.3d 680 (9th Cir. 1993)*

Class-action state-wide injunction against blockades of women's health care clinics by anti-abortion activists. First case decided under the "frustrate and hinder" clause of 42 U.S.C. § 1985(3), the 1871 Ku Klux Klan Act. Appeals court held cause of action under "frustrate and hinder" clause was properly plead and reversed 12(b)(6) ruling on that claim. (Co-lead counsel throughout; argued on appeal)

*Hewitt v. Joyner*
*940 F.2d 1561 (9th Cir. 1991)*

Establishment Clause challenge to Christian theme park, Desert Christ Park, owned and operated by San Bernardino County. Ninth Circuit held County ownership and operation of the park violated the Establishment Clause. (Lead counsel throughout litigation; argued on appeal).

*Standing Deer v. Carlson*
*831 F.2d 1525 (9th Cir. 1986)*

First Amendment challenge for Native Americans at Lompoc Federal Penitentiary to regulation barring religious headbands in the dining facilities for purported health reasons. (Argued and briefed on appeal)
*Burbridge v. Sampson*
*74 F.Supp.2d 940 (C.D. Ca. 1999)*

First Amendment challenge to community college policy regulating student speech in public fora on campus. Court issued a preliminary injunction, declaring the college's speech regulations unconstitutional.

*Rubin v. City of Santa Monica*
*823 F.Supp. 709 (C.D. Ca. 1993)*

First Amendment challenge to city permit scheme limiting access to public parks for protected expressive activities. Court issued a preliminary injunction and declared the permit scheme unconstitutionally on vagueness grounds and procedural due process grounds.  (Lead counsel)

# State Court

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*
34 Cal.4th 604 (2002)

California continues to recognize "catalyst" fee awards to prevailing parties under the private attorney-general statute (Cal. Code  of  Civ. Proc. §1021.5) and Fair Employment and Housing Act (FEHA) despite change in federal civil rights fee-shifting law.  Under California law, there is no requirement of a judicial determination establishing a change in the legal obligations of the parties. (Co-counsel and argued at California Supreme Court)

*Los Angeles Alliance for Survival v. City of Los Angeles*
22 Cal.4th 352 (2000)

Ordinance restricting certain activity as "aggressive solicitation" was not content-based under California Constitution
(co-counsel)

*Williams v. Garcetti*
5 Cal.4th 561 (1993)
*Williams v. Reiner*
13 Cal.App.4th 392 (1991)

Challenge on due process grounds to portion of STEPP law which imposed a criminal penalty  on parents of minor children engaged in or at risk of delinquent conduct.
(Argued and brief on appeal to California Supreme Court)

*Sands v. Morongo Unified School District*
53 Cal.3d 863 , *cert denied*, 112 U.S. 3026 (1991)
225 Cal.App.3d 1385 (1989)

Establishment Clause challenge to practice of holding prayers at public high-school graduations.
(Argued and briefed as lead counsel throughout litigation)

*Walker v. Superior Court of Sacramento*
47 Cal.3d 112 (1988)

Establishment Clause/Free Exercise/Due Process challenge to criminal prosecution of Christian Science parents for death resulting from use of prayer instead of traditional medicine in treatment of ill child.  (Wrote amicus brief on due process issues)

*Irvine Valley College Academic Senate, et al. v. South Orange County Community College District*
129 Cal.App.4th 1482 (2005)

Statutory construction of plain language of Education Code §87360, bolstered by legislative intent, requires actual joint agreement and mutual development of revisions to faculty hiring policies.
(co-counsel, drafted final briefs on appeal)

*Fashion 21, et al. v. Coalition for Humane Immigrant Rights (CHIRLA), et al.*
111 Cal.App.4th 1128 (2004)

Special motion to strike defamation complaint by retainer against garment worker advocates must be granted as

the plaintiff retailer could not establish a probability of prevailing on the merits of their claims.  Garment worker advocates properly relied on draft labor commission regulations suggesting retailer could be liable for sweatshop conditions of manufacturing of its retail goods.
(lead counsel at all stages)

*Gonzalez v. Superior Court*
33 Cal.App.4th 1539 (1995)

Challenge to discovery order in sexual harassment case requiring plaintiff to disclose name of confidential informant who provided her with photographic evidence of harassment.  "After-acquired evidence" rule applied to require disclosure.
(Lead counsel in trial court and appeal)

*Lantz. v. Superior Court of Kern County*
28 Cal.App.4th 1839 (1994)

Privacy rights challenge to interpretation of Consumer Personnel Records Statute (CCP § 1985(3), requiring strict adherence to statutory procedures and limiting exemption of local government agencies from adhering to statutory requirements.
(Lead counsel throughout litigation)

*Rudnick v. McMillan*
25 Cal.App.4th 1183 (1994)

Defamation verdict involving public figure plaintiff and local environmentalist author of letter to editor overturned on basis that letter was protected opinion and public figure subject to constitutional malice proof burden.  Wrote amicus brief which formed basis of appellate ruling.

*Westside Sane/Freeze v. Hahn*
224 Cal.App.3d 546 (1990)

Challenge to restrictions on First Amendment petition activities in shopping center.
(Co-counsel, co-wrote appeal)

*City of Glendale v. Robert George*
208 Cal.App.3d 1394 (1989)

Reversal of trial court order imposing prior restraints on speech of "Presidential Santa" on the basis that he constituted a public nuisance to his neighbors in a residential area.
(Argued and briefed on appeal)

*McCarthy v. Fletcher*
207 Cal.App.3d 130 (1989)

Challenge to removal of textbooks from school reading list based on community-based religious objections.  Court of Appeal reversed summary judgment decision, holding that there was sufficient evidence of constitutionally impermissible factors in evaluation of appropriateness of class-room reading materials.
(Argued and brief on appeal)

*Fiske v. Gillespie*
200 Cal.App.3d 130 (1988)
Challenge to sex-based actuarial presumptions in insurance industry rate for particular types of life insurance and annuity benefits.
(Argued on appeal)

# Publications:
# (Partial listing)

*Catalyst Fees After Buckhannon*
Civil Rights Litigation and Attorney Fees Annual Handbook
(January 2006)

*Free Speech and Harassment: An Overview*
*in the Public Employee Sector*
CPER: CALIFORNIA PUBLIC EMPLOYEE RELATIONS

Institute of Industrial Relations - UC Berkeley
June 1999 No. 136

*Defeating Employer Defenses to Supervisor Liability
After* Ellerth *and* Faragher
ADVOCATE, October 1998

*Student Expression Under California Law*
UCLA Journal of Education
Volume 3, pp. 127-137 (1989)

*Should Attorneys Be Disciplined For Gender Bias*
Point/Counterpoint ABA Journal August, 1995

*Fight Illegal Police Practices in State Court*
Los Angeles Daily Journal
March 6, 1992

*Judicial Oversight Limited by Supreme Court*
Los Angeles Daily Journal
May 6, 1991

*Jury Nullification is Conscience of Community*
Los Angeles Daily Journal
August 31, 1990

*A Basic Right Merits Shield From The Mob*
Los Angeles Times
August 11, 1991 p.M5

*Prop 115 revisited: Police charged with crimes
deserve fair trials too*
Los Angeles Daily News
May 7, 1991

*Prayer Doesn't Belong at Graduation*
USA Today
May 15, 1991 p. A10

*Killea Tactic Can Only Hurt the Church in the Long Run*
Los Angeles Times (San Diego)
November 20, 1989 p.B7

*The Fifth is a Shield for All*
Los Angeles Times
August 6, 1988 118
(authored for Exec. Dir. ACLU)

*Which Way Will Rehnquist Court Turn?*
Los Angeles Daily News
June 18, 1986 p.21

*Constitution Exacts Cost for Religious Freedom*
Los Angeles Daily News
June 8, 1986 FOCUS p.3

## Education:

| | |
|---|---|
| Peoples College of Law | J.D. May, 1978 |
| Douglass College For Women, Rutgers University | B.A. June, 1968 |

## Professional and Community Activities:

| | |
|---|---|
| Adjunct Professor - Loyola Law School<br>"Civil Rights Advocacy" Seminar | 2007-2009 |
| Blue Ribbon Panel on Rampart Inquiry, Member | 2004-2006 |
| Ninth Circuit Gender Bias Task Force<br>Convenor, Advisory Committee on Employment Law | 1992-1993 |
| Ninth Circuit Conference on "Ethnicity, Race, and Religion in the Ninth Circuit"<br>Member, Working Subcommittee | 1993 |
| National Police Accountability Project<br>Member, Advisory Board | 2006-present |
| National Lawyers Guild, Los Angeles - President | 2001-2008 |
| National Lawyers Guild Far West Regional Vice-President | 2003-2005 |
| National Lawyers Guild, National Executive Committee | 2003-present |
| NLG National Mass Defense Committee, Co-chair | 2003-present |
| Women Lawyers Association of Los Angeles<br>Member, ProChoice Committee | 1985-2002 |
| The California Anti-SLAPP Project<br>Member, Board of Directors | 1995-present |

## Awards:
## (Partial listing)

| | |
|---|---|
| PEN Freedom to Write Award | 1991 |
| American Jewish Congress Tzedek Award | 1992 |
| Planned Parenthood Los Angeles, Distinguished Service Award | 1990 |
| Freethought Heroine Award | 1992 |
| National Lawyers Guild - Los Angeles | 1999 |
| ACLU of Southern California Pro Bono Attorney Award | 2001 |
| Asian Pacific American Legal Center Pro Bono Award | 2003 |
| California Lawyer: Super Lawyer -Civil Rights/Constitutional Law | 2004-2010 |
| ACLU of Southern California Freedom of Expression Award | 2007 |
| Daily Journal Top 100 Most Influential Lawyers in California | 2007 |
| National Lawyers Guild - Ernie Goodman Award | 2007 |
| Angel Award - California Lawyer Magazine Award for pro bono work | 2007 |
| CLAY Award (California Lawyer of the Year - civil rights) - California Lawyer Magazine | 2008 |
| Top 75 Women Litigators in California - Daily Journal | 2008 |



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HERMAN ATKINS,                        )   Case No. CV 01-01574 DDP (Ex)
                                      )
                 Plaintiff,           )   ORDER GRANTING PLAINTIFF'S MOTION
                                      )   FOR ATTORNEYS' FEES AND COSTS
        v.                            )
                                      )   [Motion filed on July 9, 2007]
DANNY C. MILLER,                      )
                                      )
                 Defendants.          )
_____ )

        This matter comes before the Court on Plaintiff Herman
Atkins's ("Atkins" or "Plaintiff") motion for attorneys' fees and
costs.  After reviewing the papers submitted by the parties, the
Court grants the motion and adopts the following order.

I.    BACKGROUND

        In 1988, Herman Atkins was convicted of a 1986 rape that he
did not commit.  After his wrongful conviction, he worked to
establish his innocence.  The Innocence Project accepted his case
in 1993 and sought biological evidence to submit to DNA testing,
but were opposed in their efforts by the Riverside County District

1 Attorney. The Innocence Project was eventually able to conduct DNA
2 testing that proved Herman Atkins's actual innocence, and on
3 February 12, 2000, Atkins was released from prison.

4     In 2001, Atkins filed this 42 U.S.C. § 1983 wrongful
5 conviction action, alleging that various Riverside County
6 officials, including then-Detective Danny C. Miller ("Miller" or
7 "Defendant"), engaged in unconstitutional misconduct that caused
8 Atkins's wrongful conviction and imprisonment. All defendants
9 moved to dismiss, and the claims were narrowed in opinions issued
10 by the Hon. Margaret Morrow. The matter was transferred to the
11 Hon. Percy Anderson on June 12, 2002, upon his appointment to the
12 federal bench. After discovery, the remaining defendants moved for
13 summary judgment, which Judge Anderson granted in full on May 7,
14 2003, dismissing the entire case.

15     Atkins appealed. On September 14, 2005, the Ninth Circuit
16 reversed in relevant part and remanded for trial against Miller on
17 two theories of liability arising under the Fourteenth Amendment:
18 (1) that he deliberately fabricated evidence – a statement he
19 attributed to Eric Ingram – and; (2) that he withheld the material
20 fact of his misconduct from the prosecution, in violation of Brady
21 v. Maryland, 373 U.S. 83 (1963), and its progeny.

22     After remand, discovery was reopened. Trial was initially set
23 to begin on May 30, 2006, but was rescheduled twice. Pretrial
24 litigation continued from the initial trial date through to the
25 eventual trial, including eight defense and five plaintiff motions
26 in limine and three pre-trial conferences.

27     During the proceedings post-remand, Judge Anderson issued two
28 orders: the first excluding as irrelevant any evidence of Atkins's

1  actual innocence, and the second requiring Atkins to disclose to

2  Miller, before trial, work product concerning areas that would be

3  raised during his adverse examination of Miller.  In opposition to

4  these two rulings, Atkins filed an emergency motion for a writ of

5  mandamus to the Ninth Circuit, which the Ninth Circuit ultimately

6  granted on both grounds.

7      On August 25, 2006 – the Friday before trial was to begin –

8  Judge Anderson faxed a minute order inviting Miller to move for

9  summary judgment as to causation on Atkins's fabrication-of-

10 evidence theory.  Atkins immediately filed a second emergency

11 motion for a writ of mandamus on the ground that this very matter

12 had been determined by the Ninth Circuit in reversing Judge

13 Anderson's grant of summary judgment and finding a triable issue on

14 the fabrication claim.  The Ninth Circuit ordered Judge Anderson to

15 file a response, but Judge Anderson instead withdrew the August 25

16 minute order and the mandamus petition was denied as moot.

17     Atkins filed a motion to recuse Judge Anderson on Monday,

18 August 28, 2006, the day before jury selection was to begin.  The

19 motion was referred to the Hon. Florence-Marie Cooper, who found

20 the question "close" but denied the recusal request.  Atkins then

21 filed a third emergency motion to the Ninth Circuit seeking a writ

22 of mandamus the same day.  The Ninth Circuit agreed that the

23 question was close, but denied the motion without prejudice.

24     The case went to trial in front of Judge Anderson.  After a

25 two-week trial, the case was submitted to the jury.  Shortly into

26 the deliberations, the jurors sent back a note stating that they

27 did not think they would be able to reach a unanimous verdict.

28 They later sent another note inquiring whether unanimity was

3

1  required for all substantive questions on the verdict form.[1] When
2  they returned the following morning, the jurors indicated that they
3  would like to continue the deliberations. At the end of that day,
4  Judge Anderson polled the individual jurors as to their thoughts on
5  the probability of reaching an unanimous verdict; six indicated
6  that they thought it was probable, two thought it was not. The
7  next morning, Judge Anderson stated his intent to declare a
8  mistrial, over the objections of both parties.

9      Atkins filed a fourth emergency motion for a writ of mandamus,
10  seeking to enjoin Judge Anderson from releasing the jury. After
11  another deadlock note was received, the Ninth Circuit ordered Judge
12  Anderson to respond to the petition, but ultimately granted him
13  leave to do as he saw fit. Judge Anderson granted a mistrial and
14  discharge the jury on September 13, 2006. Accordingly, the
15  mandamus petition was denied as moot. However, the Ninth Circuit
16  issued an opinion ultimately recusing Judge Anderson.

17      The case was reassigned to the Hon. Christina A. Snyder on
18  September 19, 2006. On October 17, 2006, the Ninth Circuit sua
19  sponte issued an amended order, reiterating its findings of bias
20  but adding that it would have been preferable, before ruling on the
21  recusal motion and ordering the case be transferred to a different
22  judge for a new trial, to allow Atkins to first present his renewed
23  motion to the district judge who considered the initial motion.

24
25

26      [1] The verdict form indicated that if the answer to Question 1
27  (whether Miller fabricated evidence) was "No," the jury need not
    answer any other question, but instead should sign and return the
28  form. Thus, this question indicates that the jury had tentatively
    found for Atkins on the question of fabrication.

4

1  Thus, the Ninth Circuit permitted Atkins to make such a motion if
2  he wished to do so.

3      Accordingly, the case was reassigned back to Judge Anderson on
4  October 27, 2006 and Atkins made a renewed recusal motion to Judge
5  Cooper on October 30, 2006.  Judge Cooper granted the renewed
6  motion on November 13, 2006, and this case was transferred to this
7  Court on November 14, 2006.

8      Miller then filed a Rule 50 motion for judgment on the
9  fabrication claim and Atkins filed for reconsideration of several
10 motions in limine decided by Judge Anderson.  After further pre-
11 trial litigation and more lengthy negotiations as to the proposed
12 jury instructions, a three-week trial was conducted in April 2007.
13 At the conclusion, the jury found for Miller on the fabrication of
14 evidence claim, but found for Atkins on the Brady claim, finding
15 that Miller had fabricated the Ingram statement and that Miller's
16 suppression of that fabrication and other evidence favorable to
17 Atkins had caused Atkins's wrongful conviction.  The jury awarded
18 Atkins $2 million in damages.  Miller then filed a post-trial Rule
19 50 motion, which this Court denied on June 26, 2007.

20     Atkins now moves the Court for attorneys' fees and costs under
21 42 U.S.C. § 1988.

22

23 II.  DISCUSSION[2]

24     A.  Attorneys' Fees

25 _____

26     [2]  Defense counsel argues that Plaintiff's counsel failed to
   comply with the meet and confer requirements of L.R. 7-3.  Although
27 the Court could deny the motion for failure to comply with this
   rule, it is not clear to the Court that Plaintiff's counsel failed
   to comply.  Accordingly, in the interest of deciding this case on
28 the merits, the Court will consider the motion.

1    Under 42 U.S.C. § 1988, the district court may, in its
2   discretion, award attorneys' fees to a prevailing party in an
3   action brought under § 1983.  To determine the appropriate
4   attorneys' fee award under § 1988, courts use the "lodestar"
5   method, which "multiplies the number of hours the prevailing party
6   reasonably expended on the litigation by a reasonable hourly rate."
7   Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006)
8   (quotation and citation omitted).  After making that computation,
9   courts then assess whether it is necessary to adjust the
10  presumptively reasonable lodestar figure on the basis of twelve
11  factors.  Cunningham v. County of Los Angeles, 879 F.2d 481, 487
12  (9th Cir. 1988).  The twelve factors are:

13       (1) the time and labor required, (2) the novelty and
14       difficulty of the questions involved, (3) the skill
15       requisite to perform the legal service properly, (4)
16       the preclusion of other employment by the attorney due
17       to acceptance of the case, (5) the customary fee, (6)
18       whether the fee is fixed or contingent, (7) time
19       limitations  imposed  by  the  client  or  the
20       circumstances, (8) the amount involved and the results
21       obtained, (9) the experience, reputation, and ability
22       of the attorneys, (10) the "undesirability" of the
23       case, (11) the nature and length of the professional
24       relationship with the client, and (12) awards in
25       similar cases.

26  Id. at 252 n. 4 (citing Kerr v. Screen Extras Guild, Inc., 526 F.2d
27  67, 70 (9th Cir. 1975)).  However, many of these factors are
28  subsumed within the initial lodestar determination, and therefore

1  it is only the rare case in which this lodestar determination

2  should be adjusted.  Cunningham v. County of Los Angeles, 879 F.2d

3  481, 487 (9th Cir. 1988).

4      Defendant concedes that Plaintiff is the prevailing party

5  under § 1988 and that fees should be awarded.  However, Defendant

6  contends that the amount Plaintiff is requesting is excessive.

7          1.   Rates

8      Plaintiff's counsel is seeking reimbursement for a total of

9  3,174 substantive hours.[3]  Plaintiff requests the following rates

10 for the work of his legal staff:

11     Peter Neufeld:      $675

12     Debi Cornwall:      $400

13     Jennifer Laurin:    $315

14     Anna Hoffman:       $300

15     Defendant argues that Plaintiff's requested rates are

16 excessive.  Defendant suggests the following rates:

17     Peter Neufeld:      $350 to $400

18     Debi Cornwall:      $200 to $250

19     Jennifer Laurin:    $150 to $200

20     Anna Hoffman:       $150 to $200

21     A reasonable hourly rate is one "in line with those prevailing

22 in the community for similar services by lawyers of reasonably

23 comparable skill, experience, and reputation."  Sorenson v. Mink,

24 239 F.3d 1140, 1145 (9th Cir. 2001).  The plaintiff bears the

25 burden of producing evidence that the requested rates are in line

26

27     [3]  See Pl.'s Ex. 1, attached to Reply.  Several other
    attorneys also worked on the case over the six years it was
    litigated.  Plaintiff is not seeking compensation for their
28  efforts.

7

1  with those prevailing in the community for similar services by

2  lawyers of reasonably comparable skill, experience and reputation.

3  Id.  The burden is on the defendant to produce rebuttal evidence in

4  support of a lower hourly rate.  Id.

5      All four Plaintiff's counsel are lawyers at Cochran, Neufeld

6  and Scheck, LLP ("CNS"), a small civil rights firm formed nine

7  years ago by Johnnie Cochran, Peter Neufeld and Barry Scheck.  CNS

8  is a seven-attorney firm with a nationwide practice devoted

9  entirely to police misconduct § 1983 cases, and predominantly

10 wrongful conviction suits.  Plaintiff represents that CNS is the

11 only firm in the country litigating these cases full-time.

12      Peter Neufeld, a founding partner of CNS, graduated from New

13 York University Law School in 1975.  He has over 30 years of

14 experience as a trial attorney.  He is a cofounder and co-director

15 of the Innocence Project at the Benjamin N. Cardozo Law School, and

16 has written or co-authored several articles and a book on wrongful

17 convictions.  For his work in criminal justice, civil rights and

18 trial practice, he has been repeatedly honored by countless

19 reputable schools and organizations.  He represents that he has

20 probably litigated more wrongful conviction cases than any lawyer

21 in the country outside of CNS.

22      Debi Cornwall graduated from Harvard Law School in 2000.  She

23 clerked for the Hon. Robert Sweet of the Southern District of New

24 York before joining CNS, where she has worked as an associate for

25 nearly six years.  At CNS, she has successfully litigated and co-

26 chaired wrongful conviction suits in cases across the country.  In

27 2006, she became a partner at CNS.

28

1     Anna Hoffman graduated third in her class from New York

2 University School of Law in 2004.  She clerked for the Hon.

3 Reginald C. Lindsay of the District of Massachusetts before joining

4 CNS as an associate in 2006.

5     Jennifer Laurin graduated first in her class from Columbia Law

6 School in 2003.  She clerked for the Hon. Thomas P. Griesa of the

7 Southern District of New York and the Hon. Guido Calabresi of the

8 Second Circuit before joining CNS.

9     Plaintiff's requested rates fall at the high end of the

10 spectrum.[4]  However, as noted above, this case had a long and

11 difficult history.  It involved complex and novel issues of

12 criminal procedure, constitutional law, tort law and governmental

13 immunities.  Plaintiff's briefs and oral arguments were excellently

14 presented and, during the trial, the Court found Plaintiff's

15 attorneys exceedingly well-prepared and skilled at trial

16 litigation.  In short, the Court believes that Plaintiff's

17 attorneys did an excellent job trying this complicated, difficult

18 case.  Their experience, reputation and skill are all considerable,

19 and Defendant has not submitted any relevant evidence or cited to

20 authority that would indicate Plaintiff's counsel's proposed rates

21 are above market.[5]  Accordingly, the Court does not find that

22 Plaintiff's requested rates are so exceptionally high as to justify

23 deviating from the lodestar figure.  The Court is therefore

24

---

25     [4]  In support of its motion, Plaintiff submitted the
26 declarations of Carol Sobel and Barrett Litt, two experienced civil
rights lawyers who primarily practice in Los Angeles, as well as
27 recent National Law Journal articles on billing rates.  (Pl.'s Exs.
2-5.)

28     [5]  Most of Defendant's cases are from out of district.

1  inclined to apply those rates in calculating Plaintiff's attorneys'

2  fees.

3     Defendants also argue that Plaintiff's requested rate of

4  $100/hour for the work performed by Plaintiff's paralegal, Tanya

5  Koshy, is too high.  However, in Los Angeles,[6] such a rate is

6  typical, if not modest.  (See, e.g., Pl.'s Ex. 2, Declaration of

7  Barrett S. Litt ¶ 25.)  Accordingly, the Court is not inclined to

8  deviate from Plaintiff's requested paralegal fee.

9

10          2.   Hours: unsuccessful claims and degree of success

11               obtained

12     Where the prevailing party has not won every claim initially

13  brought, the reviewing court must determine the appropriate level

14  of compensation to plaintiff's counsel for time spent on claims she

15  did not win.  Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir.  2003);

16  Sorenson v. Mink, 239 F.3d 1140, 1147 (9th Cir. 2001).  In making

17  this determination, the first step is to consider whether "the

18  plaintiff fail[ed] to prevail on claims that were unrelated to the

19  claims on which he succeeded."  Hensley v. Eckerhart, 461 U.S. 424,

20  434 (1983).  Claims are "unrelated" if they are "entirely distinct

21  and separate" from the claims on which the plaintiff prevailed.

22  Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1499 (9th Cir. 1995).

23  Hours expended on unrelated, unsuccessful claims should not be

24  included in an award of fees.

25

26  ────────────────────────

27     [6]  Defendant argues that "Inland Empire" rates should apply
    because the case could have been filed in Riverside.  That,
    however, is not the standard.  It was filed in Los Angeles, and
28  therefore the higher Los Angeles rates apply.

1   The second step is to consider whether "the plaintiff
2   achieve[d] a level of success that makes the hours reasonably
3   expended a satisfactory basis for making a fee award."  Hensley,
4   461 U.S. at 434.  In answering that question, a district court
5   "should focus on the significance of the overall relief obtained by
6   the plaintiff in relation to the hours reasonably expended on the
7   litigation."  Id. at 435.  "Where a plaintiff has obtained
8   excellent results, his attorney should recover a fully compensatory
9   fee."  Id.  A plaintiff may obtain excellent results without
10  receiving all the relief requested.  Id. at 435 n. 11.

11  Here, there were no unrelated claims.  The fabrication of
12  evidence claim and the Brady claim that were litigated in the
13  second civil trial were clearly intertwined.[7]  Moreover, the claims
14  Plaintiff initially brought against all four defendants arose out
15  of the same core set of facts and legal theories, such as those
16  related to identification procedures, that prevailed at trial.
17  Finally, the forensic Brady and fabrication claims were important
18  to the materiality and causation elements of the Brady claim
19  against Miller that ultimately prevailed.  Thus, the Court is
20  inclined to find that Plaintiff's claims were all related.  See
21  Webb v. Sloan, 330 F.3d 1158, 1169 (where all claims arise out a
22  common core of facts and a common course of conduct, it is
23  reversible error for a district court to exclude such claims as
24  "entirely distinct and separate" from the successful claims).

25

26

27       [7]  Indeed, to find for Plaintiff on the Brady cause of action,
    the jury necessarily found (as indicated on the Special Verdict
28  Form) that Defendant had fabricated the Ingram statement.

1    Next, the Court must determine "the significance of the
2 overall relief obtained by the plaintiff in relation to the hours
3 reasonably expended on the litigation."  Defendant argues that
4 plaintiffs who have won similar wrongful conviction civil rights
5 lawsuits typically have received awards much larger than Atkins's.
6 Thus, Defendant contends, Plaintiff's $2 million verdict is not
7 "excellent."  This contention, however, fails to take into account
8 the unique circumstances giving rise to this case.  This case was
9 complicated factually, procedurally and substantively.  Plaintiff's
10 counsel, who litigates wrongful conviction suits almost
11 exclusively, has stated that this case stood out as presenting
12 unique hurdles to success.  (Declaration of Deborah L. Cornwall ¶
13 20.)  Given the complexity of this action, a two million award is
14 an excellent result.[8]  Moreover, as Plaintiff explains, the number
15 of hours spent in litigating this case was exceptionally low, given
16 its long history and its difficulty.  In short, there is no support
17 for reducing Plaintiff's fees based on the size of the verdict.

18

19          3.   Travel time

20     Defendant argues that Plaintiff is not entitled to
21 compensation for substantive work completed during travel.  In the
22 Ninth Circuit, courts determine whether the travel time was
23 reasonably incurred.  See Davis v. City of San Francisco, 976 F.2d
24 1536, 1543 (9th Cir. 1992), diff't potion vacated by 984 F.2d 345

25

26     [8]  Significantly, even if Plaintiff had prevailed under his
27 fabrication of evidence theory, the jury could not have awarded him
   any further damages; Plaintiff prevailed against Defendant for the
28 full extent of his loss.

12

1   (9th Cir. 1993). Here, Plaintiff billed travel time at 50% of the

2   proposed substantive rates. Plaintiff has provided evidence that

3   its firm has a unique expertise in this area of law, as the only

4   firm nationally handling wrongful conviction cases full time.

5   Moreover, Plaintiff's lead counsel, Peter Neufeld, had a

6   longstanding relationship with Plaintiff from his years of pro bono

7   representation resulting in Plaintiff's exoneration and release.

8   Given these circumstances, the Court finds that Plaintiff's

9   counsel's travel work was necessary and reasonable.

10

11         4.   Administrative work

12      In the Ninth Circuit, "even purely clerical or secretarial

13   work is compensable if it is customary to bill such work

14   separately." Trustees of Const. Industry & Laborers Health &

15   Welfare Trust v. Redland Ins. Co., 460 F.3d 1253, 1257 (9th Cir.

16   2006) (citation omitted). In Los Angeles, it is customary to bill

17   administrative tasks separately. Here, Plaintiff's counsel has

18   separated out the administrative tasks and billed them at 50% of

19   the proposed substantive rates. Thus, the Court is inclined to

20   grant this portion of the fee request.

21

22         5.   Fees on fees

23      The Ninth Circuit has repeatedly held that time spent by

24   counsel in establishing the right to a fee award is compensable.

25   See, e.g., D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379,

26   1387-88 (9th Cir. 1990). Plaintiff has requested "fees on fees" in

27   the total amount of $6,500 for the work done in preparing this

28   motion. Plaintiff has calculated this rate as follows: For the

1 work of Debi Cornwall, 10 hours x $200/hr (proposed 50% discounted

2 rate); for the work of Anna Hoffman, 30 hours X $150/hr (proposed

3 50% discounted rate). Defendant argues that because Plaintiff's

4 substantive fee request is unreasonable, Plaintiff's fees on fees

5 request should be reduced. Because the Court finds Plaintiff's

6 substantive request reasonable, however, it is also inclined to

7 grant Plaintiff's fees on fees request.

8

9      B.    Expenses and Costs[9]

10      Federal Rule of Civil Procedure 54(d)(1) provides generally

11 that "costs other than attorney's fees shall be allowed as of

12 course to the prevailing party unless the court otherwise directs."

13 Fed. R. Civ. P. 54(d)(1). "Under § 1988, the prevailing party may

14 recover as part of the award of attorney's fees those out-of-pocket

15 expenses that would normally be charged to a fee paying client."

16 Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005). Such out-of-

17 pocket expenses are recoverable when reasonable. Id.

18

19      1.    Jury Consultant Fees

20      Courts in the Ninth Circuit will award prevailing parties the

21 expenses and fees of jury consultants who ran focus groups and

22 assisted in jury selection at trial. See, e.g., Confederated

23

24      [9] Plaintiff's counsel is not seeking reimbursement for
approximately $22,000 of costs incurred before 2003, when
25 Plaintiff's counsel shifted to a new book-keeping system. This
includes the costs of the 11 depositions taken before summary
26 judgment, and travel expenses associated with taking those
depositions.
27      Plaintiff's counsel also withdrew its request for $1,000 in
mediation costs, and its request for compensation for $1,228.58
28 incurred to bring Plaintiff to New York for his second deposition.

14

1 | <u>Tribes of Siletz Indians of Oregon v. Weyerhaeuser Co.</u>, No. CV 00-

2 | 1693-A, 2003 WL 23715982, at *8-9 (D. Or. Oct. 27, 2003) (allowing

3 | $60,000 in costs for trial consulting service to conduct a mock

4 | trial), <u>aff'd</u> 411 F.3d 1030 (9th Cir. 2005), <u>vacated and remanded</u>

5 | <u>on other grounds sub nom Weyerhauser Co. v. Ross-Simmons Hardwood</u>

6 | <u>Lumber Co., Inc.</u>, 127 S.Ct. 1069 (2007).  Plaintiff's counsel used

7 | Josh Dubin Consulting Services for their jury consultant needs and

8 | negotiated a discounted rate.  Given the complexity of the issues

9 | in this case and the discounted rate, the Court is inclined to find

10 | Plaintiff's total jury consultant expenses of $20,935.32

11 | reasonable.

12 |

13 |         2.   <u>Travel expenses</u>

14 |      Travel costs are compensable so long as they are reasonable.

15 | <u>See Lasha v. Tharp</u>, 907 F.2d 154 (mem. op.) at *2 (9th Cir. 1990).

16 | Here, Plaintiff's counsel attempted to minimize the number of

17 | flights to Los Angeles, appearing telephonically when possible.  At

18 | times, however, Plaintiff's counsel and witnesses were required to

19 | travel to Los Angeles on a week's notice or less, which increased

20 | the costs of travel.  During both three-week trials, lead counsel

21 | Peter Neufeld stayed with a friend rather than in a hotel.  The

22 | total cost of travel, lodging and meals over five years of

23 | litigation is $40,363.35.  The Court is inclined to find this

24 | amount reasonable.

25 |

26 |         3.   <u>Shipping expenses</u>

27 |      Defendant argues that Plaintiff's shipping expenses should not

28 | be reimbursed.  However, most of Plaintiff's shipping expenses are

1  for filings to this Court, which does not have civil e-filing.
2  Thus, even local counsel must use a shipping carrier, send a
3  runner, or bill paralegal time and travel costs to file documents.
4  Plaintiff's other major shipping expense was sending boxes of
5  documents to Los Angeles for the two trials.  The Court is inclined
6  to find these shipping expenses reasonable and compensable.

7

8            4.   Investigator expenses

9       Defendant appears to argue that Plaintiff's investigation
10 expenses of $54,995.48 were unreasonable.  However, Plaintiff
11 incurred many of these expenses in his efforts to locate Riverside
12 Deputy Chris Taylor, a witness whose identity and location
13 Defendant did not reveal to Plaintiff before trial.  Plaintiff also
14 used an investigator to locate and initiate contact with Eric
15 Ingram, whose testimony was critical to Plaintiff's claims, as well
16 as the three eyewitnesses, so that their testimony could be taken
17 by deposition.  Given the length of time that had passed between
18 Plaintiff's wrongful conviction and his release, this work required
19 an extremely skilled investigator.  Accordingly, the Court is
20 inclined to find Plaintiff's request for investigation expenses
21 reasonable.

22

23 III. CONCLUSION

24      For the foregoing reasons, the Court finds that no reduction
25 to the lodestar is warranted.  Accordingly, the Court is inclined
26 to grant the motion and award Atkins § 1988 attorneys' fees in the
27 amount of $1,368,834, fees on fees in the amount of $6,500, and

28

1  costs in the amount of $165,067.22.[10]  The Court is also inclined to

2  award post-judgment interest under 28 U.S.C. § 1961(a).

3

4

5  IT IS SO ORDERED.

6

7

8  Dated:  8·27-07

   DEAN D. PREGERSON
9                                              United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____

28      [10]   This figure does not include the $4,763.50 requested
    separately in a Bill of Costs under § 1920.