United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARGUERITE HIKEN and THE MILITARY LAW
TASK FORCE,

           Plaintiff(s),

  vs.

DEPARTMENT OF DEFENSE and
UNITED STATES CENTRAL COMMAND,

           Defendant(s).

No. C 06-2812 MHP

**MEMORANDUM
AND ORDER RE
MOTIONS FOR
SUMMARY
JUDGMENT**

     This matter is before the court on renewed motions for summary judgment and a supplemental motion for summary judgment filed by defendants. The court has reviewed the submissions of the parties, the exhibits and the documents presented for *in camera* review and enters the following order. The court's order filed October 2, 2007, recites the background, facts and issues in this case. They will not be repeated here except as necessary to understand the present posture of the case and the motions now before the court. In the October 2007 order the court instructed defendants to file a supplemental declaration addressing the waiver issue, the adequacy of the search and further details of the administrative information withheld under Exemption 2. Doc. 53 at 7, 11:20-23, 17:16-17. The court further ordered that the government revise the *Vaughn* Index to "tie the disclosure of information to specific harms." Id. at 9:7-8. In addition to ruling on particular exemptions, the court ordered *in camera* review to assist in the determination of the adequacy of the search as well as the merits of the asserted exemptions, particularly with respect to

United States District Court
For the Northern District of California

the deliberative process privilege covered by Exemption 5. Id. at 9-10 and 20-21.

Further declarations have been filed, including those of Major General Thomas L. Moore and Margaret P. Grafeld.  A Revised Vaughn Index ("RVI") has been filed and documents have been reviewed *in camera*.  The parties have fully briefed the renewed and supplemental motions and the court has taken all of the foregoing into consideration in entering this order.  The submissions on the renewed motions address the issues of waiver, adequacy of the search conducted by defendants, adequacy of the RVI, the merits of particular exemptions and the segregability of documents under those exemptions, and, finally, plaintiffs' contentions of bad faith, misleading statements and illegality of the underlying conduct.  The supplemental motion addresses the Grafeld declaration and the separate Vaughn Index related to documents reviewed by the Department of State,  The court deals with each of these in turn.

## I.  RENEWED CROSS-MOTIONS FOR SUMMARY JUDGMENT

### WAIVER

In their respective renewed motions for summary judgment the parties once again raise the issue of waiver as to the AR 15-6 Report.  The court took up this issue in its October 2, 2007 order finding that there was insufficient evidence to make a finding.  Thus, the court ordered defendants to supplement the declarations of Major General Timothy F. Ghormley, Doc.Nos. 18-2 and 36-2, with further specific information. Order, Doc.53 at 11:19-23.  Defendants responded  with a declaration from Maj. Gen. Thomas L. Moore.  Doc. 66-2, Dec. 14, 2007.   That  declaration spells out in greater detail the circumstances under which the report was posted on the Multinational Force - Iraq ("MNF-I").

Two redacted copies of the AR 15-6 Report have been released to plaintiffs, one in November 2006 and another, pursuant to this court's order, in October 2007.  The latter, according to plaintiffs, contains fewer redactions, and those redactions are cited at page 4 of plaintiffs' reply in support of their renewed motion.  Filed March 3, 2008, Doc. 74 at 8:4-17.

Because the information cited by plaintiffs was contained in the internet version of the AR

2

**United States District Court**
For the Northern District of California

1   15-6 Report, plaintiffs claim defendants have waived their right to assert the claimed exemptions as

2   to this information.  As the court understands the Moore declaration, an unauthorized or unofficial

3   redacted copy of the Report was released.   Redactions had been made to that copy in a format that

4   was believed to protect the redactions from disclosure.  That document was posted, but the format

5   turned out to be faulty and some or all of the redacted information was revealed or manipulated to

6   allow disclosure. The faulty release was then pulled the following day to prevent "further

7   unintentional release of classified information."  Moore Dec. at ¶4.a.-c.

8           A waiver of exemption occurs when an "official and documented disclosure" to the public is

9   made.  *Fitzgibbons v. CIA*, 911 F.2d 755, 765 (D.C.Cir.1990)(citing *Afshar v. Dep't of State*, 702

10  F.2d 1125, 1133 (D.C.Cir.1983)).  In addition to this requirement for waiver, the information sought

11  must be "as specific as the information previously released" and it must match the information

12  previously released.  *Id*.  The court in *Fitzgibbons* justifies these precautions because there can be a

13  "critical difference between official and unofficial disclosures."  *Id*. (citing *Abbotts v. Nuclear

14  Regulatory Comm'n*, 766 F.2d 604, 607-08 (D.C.Cir. 1985); *Military Audit Project v. Casey*, 656

15  F.2d 724, 742-45 (D.C.Cir.1981); *Phillippi v. CIA*, 655 F.2d 1325, 1132-33 (D.C.Cir.1981)).

16          Essentially, there are three configurations of AR15-6 that are implicated in the waiver issue.

17  The first iteration was redacted and placed on the internet by the  MNF-I Public Affairs Office and

18  the Combined Press Information Center neither of which had obtained proper review of the

19  document before releasing it.  The second iteration was the unredacted or manipulated version of the

20  first iteration.  The third was the official one redacted and provided by defendants to plaintiffs in this

21  action.  Only the third iteration falls within the definition of *Fitzgibbons* and its antecedents.  It is

22  acknowledged as an "official and documented disclosure".  The first was not authorized or "official"

23  and was retrieved by MNF-1 the day after its posting.  There was no delay in retrieval once the error

24  was discovered.  The erroneous posting was not official and does not constitute a waiver. The

25  second is also not the "official" iteration.  It is as if the document was hacked, albeit, apparently not

26  requiring a great deal of skill to pierce.  Nonetheless, the official intent was to keep from public

27  disclosure those portions that were redacted, even if inartfully executed.  Thus, the waiver of

28

3

exemption applies only to the third iteration of AR15-6 and any other portions of the AR15-6 that have been officially released for public disclosure.  All other iterations remain subject to the claimed exemptions unless the court finds that the exemptions themselves are not well taken.

ADEQUACY OF THE SEARCH

The Supplemental Declaration of Maj.Gen. Moore spells out in greater particularity the conduct of the search.  The declaration details the physical and database searches and the search terms used.  The quantity of the terms is extensive and the quality of the search is exhaustive.  The court finds that the Supplemental Declaration taken together with the court's *in camera* review shows that an adequate, indeed thorough, search was conducted. [1]

ADEQUACY OF REVISED VAUGHN INDEX AND SUPPLEMENTAL INDEX

In its renewed summary judgment motion the government argues that the RVI shows that disclosure could damage national security by posing a security risk to troops.[2]  Plaintiffs respond that the RVI with respect to documents 1, 2b, 2c, 2e, 3, 3b, 3c, 3d, and 4b is inadequate for failure to include dates of the documents and the locations to which they relate.  Defendants counter that they have provided dates insofar as the documents were dated, that some of the documents lacked dates and further that no dates were redacted.  The court is satisfied that to the extent dates are available they have been indicated and no further attempt to determine dates is required.

Plaintiffs also argue that defendants have failed to adequately segregate and produce material that is not within the asserted exemptions, pointing out as one example the ultimate release of a document defendants previously had contended contained no segregable material.

The adequacy of the RVI and supplemental Vaughn Index with respect to each document and the particular exemptions claimed and the segragability issue are discussed below.

/////

/////

/////

United States District Court
For the Northern District of California

1    EXEMPTION 1

2         The FOIA statute establishes a presumption of disclosure unless the requested records fall

3    within one of nine enumerated exemptions set forth in section 552(b).  *See NLRB v. Robbins* Tire *&*

4    *Rubber Co.*, 437 U.S. 214, 244-45 (1978).  "These exemptions are 'explicitly made exclusive'" and

5    "must be 'narrowly construed.'" *Milner v. Dep't of the Navy*, 562 U.S.___, 131 S.Ct. 1259, 1262

6    (2011)(quoting *EPA v. Mink*, 410 U.S. 73, 79 (1973).  The first, contained in (b)(1) and referred to

7    as Exemption 1, exempts matters that are "(A) specifically authorized under criteria established by

8    an Executive order to be secret in the interest of national defense or foreign policy and (B) are in fact

9    properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).   In actions before the

10   district court reviewing claims of exemption, all such claims, including those under (b)(1),  are

11   reviewed *de novo* and the agency bears the burden of justifying the claimed exemptions.  *King v.U.S.*

12   *Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir.1987).

13        The primary means of satisfying this burden is for the agency to submit affidavits or

14   declarations that describe with sufficient detail and specificity the material withheld in order to show

15   that it is "within the domain of the exemption claimed" and that the affidavits or declarations are

16   "neither controverted by contrary record evidence nor impugned by bad faith on the part of the

17   agency." *Id.*  They must provide a "relatively detailed analysis [of the material withheld] in

18   manageable segments." *Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 78 (D.C.Cir. 1987) (quoting

19   *Ray v. Turner*, 587. F.2d 1187, 1191 (D.C.Cir.1978)).

20        Furthermore, pursuant to the prevailing application of *Vaughn v. Rosen*, 484 F.2d 820

21   (D.C.Cir.1973), *cert. denied*, 415 U.S. 977 (1974), courts uniformly require the agency to file a

22   detailed *Vaughn* index "specifically identifying the reasons why a particular exemption is relevant

23   and correlating those claims with the particular part of a withheld document to which they apply."

24   *King*, 830 F.2d at 218-19 (quoting *Mead Data Cent. v. U.S. Dep't of the Air Force*, 566 F.2d 242,

25   251 (D.C.Cir.1977)).  Generalizations, vague assertions and broad statements that lack particularity

26   addressed to the documents in question will not suffice.

27        The court previously ruled on the merits of the Exemption 1 claim, finding that defendants

28                                                        5

United States District Court
For the Northern District of California

1    had met their burden of non-disclosure under that Exemption except as deemed waived.  However,

2    the court ordered defendants to submit a revised *Vaughn* Index to tie the withheld disclosures to

3    specific harms if the information was disclosed.  Defendants submitted two Revised *Vaughn* Indices,

4    Docs.Nos. 59-1 and 66-1, with respect to Documents 1-5, which appear to be identical.  They

5    submitted another *Vaughn* Index with respect to a limited number of documents, U1-U5, referred to

6    the Department of State for review and accompanied by the declaration of Margaret P. Grafeld, the

7    Department's Information and Privacy Coordinator and its Office of Information Programs and

8    Services ("IPS").  Doc.No. 49-1.

9        The parties have file renewed motions for summary judgment and defendants have filed a

10   supplemental motion for summary judgment as to documents U1-U5.

11       For the purposes of Exemption 1, the *Vaughn* indices state that the documents were classified

12   under Executive Order ("E.O.") 12958.[3]   Classifications for the purpose of the (b)(1) exemption are

13   determined in accordance with the Executive Order in effect at the time the decision is made.  *King*,

14   830 F.2d at 216.  The district court reviewing the claim of exemption must "assess the propriety of a

15   classification decision ...in terms of the executive order in force at the time the agency's ultimate

16   classification decision is actually made."  *Id*. at 217.  However, if the matter is remanded, or if for

17   any reason the agency itself determines to reexamine its decision, the agency should comply with

18   the "most current executive assessment of the Nation's security needs."  *Id*.

19       Even though documents have been classified and come within Exemption 1 this does not

20   mean that the merits of that assertion do not change over time.  The merits of a classification are

21   determined as of the time of classification pursuant to the Executive Order in effect at the time of the

22   classification.  *Baez v. U.S. Dep't of Justice*, 647 F.2d 1328, 1333 (D.C.Cir.1980).  Records may be

23   classified after the date of their origination and the government may reassess their classification to

24   determine whether the documents "still warrant classification."  *Id*. at 1332-34; *see also Lesar v.*

25   *U.S. Dep't of Justice*, 636 F.2d 472, 479-80 (D.C.Cir.1980).  "[C]hanged international and domestic

26   circumstances" may require a different classification and the agency may review the initial decision

27   when a FOIA request is received or thereafter.  *Baez*, 647 F.2d at 1333-32.  *Baez* and its progeny

28

United States District Court
For the Northern District of California

1    recognize the need to evaluate and reevaluate current international and security conditions.

2         In assessing the merits of the classifications asserted here, particularly Exemption 1, a

3    fundamental question is raised by the state of current affairs and security conditions in Iraq.  At the

4    time of the request and classifications in this case, United States and Iraqi troops were engaged in

5    battles in a number of locations in Iraq.  The merits of non-disclosure of some of the records in this

6    case may have been well taken at that time.  However, on August 31, 2010, the President of the

7    United States announced that "the American combat mission in Iraq has ended. Operation Iraqi

8    Freedom is over...." *See* http://www.whitehouse.gov/the-press-office/2010/08/31/

9    remarks-president-address-nation-end-combat-operations-iraq.  On December 1, 2011, as United

10   States troops were leaving Iraq, Vice-President Biden confirmed the promise made to the American

11   and Iraqi peoples by the President of the United States that all the remaining United States troops

12   would be removed from Iraq by the end of 2011.  *See* http://www.whitehouse. gov/the-press-office/

13   2011/12/01/remarks-vice-president-biden-event-honor-us-and-iraqi-servicemembers .  As of

14   December 20, 2011, all combat troops had left Iraq and the military mission in Iraq came to an

15   official end.  *See* http://www.whitehouse.gov/blog/2011/12/20/ homecoming-final-

16   us-forces-iraq-troops.  Although the circumstances justifying classification may have existed at the

17   time of the classification, they are significantly different at this time and the rationale for classifying

18   many portions of the documents appear to no longer obtain.

19        The (b)(1) exemption claim for each of the documents identified on the RVI are premised on

20   Executive Order 12958, as amended, sections 1.4(a) and/or 1.4(i) in addition to section 1.4(g) as to

21   Document 5.  These sections, actually found at section 1.5 in E.O. 12958 and identically at 1.4 in

22   E.O. 13292, which amended E.O. 12958, provide for classification categories authorized pursuant to

23   (b)(1), specifically:

24        1.4(a) "military plans, weapons systems or operations";
         1.4(c)  "intelligence activities (including special activities), intelligence sources or
25                methods, or cryptology";
         1.4(g) "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans,
26                or protection, services relating to the national security, which includes defense
                 against  transnational terrorism".

27

28                                                    7

1    In the Revised Vaughn Index the description of each document and the specific harms from

2    its release are alleged as follows:

3    Document Number 1 - This document contains Rules of Engagement ("ROE").  It "includes

4    a listing of classified references" and "execution guidance to the troops.  Disclosure "would reveal

5    current operating procedures and the intelligence process used to identify current and potential

6    targets".  The specific harm identified is that  "[i]f our opponents knew our Rules of Engagement

7    they could alter their behavior which would put our own service members and Coalition Forces at

8    risk as they follow the procedures laid out in this document, resulting in the loss of lives of our

9    troops.  Non-disclosure safeguards information that could be exploited by our enemies."  Ex. A,

10   RVI, p. 1.

11   Document Number 2c - This document relates to "Vehicle Marking Standards" and "includes

12   procedures designed to enable our forces to identify vehicles of friendly forces".  Disclosure "would

13   reveal current operating procedures and methods of vehicle identification".  The specific harm

14   identified is that "[i]f our opponents knew these procedures they could alter their behavior...."  The

15   remainder of the harm articulated is identical to that described for Doc. No. 1.   Id. at pp.2 and 3.

16   Document Number 2d - The subject of this document is "Escalation of Force".  It "includes

17   procedures designed to minimize escalation of force incidents".  Its disclosure "would reveal current

18   operating procedures and methods of self-defense and target identification."  The specific harm

19   identified is the same as set forth for Doc. Nos. 1 and 2c.  Id. at pp.3 and 4..

20   Document Number 3 - The subject of this document is Rules of Engagement for another

21   Phase or Operation than the one described for Doc. No. 1.  This document "includes rules of

22   engagement including current operating procedures and methods of self-defense" and "execution

23   guidance to the troops".  Disclosure, according to the RVI, "would reveal current operating

24   procedures and the intelligence process used to identify current and potential targets".  The specific

25   harm claimed reads exactly the same as that described for Doc. Nos. 1, 2c and 2d.  Id. at pp. 4 and 5.

26   Document Number 3b - This document involves Rules of Engagement and Targeting.  The

27   contents are described as including "rules of engagement including targeting, weapons selection

28

United States District Court
For the Northern District of California

1  procedures and calculating collateral damage."  Once again, the RVI states that disclosure "would

2  reveal current operating procedures and the intelligence process used to identify current and

3  potential targets".  The specific harm alleged reads the same as all of the preceding.  Id. at pp. 5 and

4  6.

5       Document Number 3c - This is another document involving Rules of Engagement. It is

6  entitled "Kinetic Strike Authorization Matrix". Its description, contents, effect of disclosure nad

7  specific harm reads exactly the same as the description for Doc. No. 3b, which means that the

8  specific harm portion is exactly the same as all of the preceding documents. Id. at p.6

9       Document Number 3d - This is another document involving Rules of Engagement and its

10  title is Additional Authority Approval Matrix.  Its description, contents, effect of disclosure and

11  specific harm reads exactly the same as those set forth for Doc. Nos. 3b and 3c, which again means

12  that the specific harm portion is exactly the same as all of the preceding documents. Id. at pp.6 and

13  7.

14       Document Number 4 - The subject of this document is also Rules of Engagement.  It is

15  entitled Appendix 7 to Annex C to MNC-1 Operations orders 06-01. It reads the same as the

16  description for Doc. No. 2d and articulates the same specific harm as all of the preceding documents.

17  Id. at pp.7and 8.

18       As noted above, for each of the documents 1- 4 the RVI sets forth the identical paragraph

19  regarding the specific harm that would occur if the document or the redacted portions of it were

20  disclosed.  The specific harm is not particularized or tailored in any manner other than, if at all, the

21  brief identification of the undisclosed information, e.g., Rules of Engagement, Escalation of Force,

22  targeting and weapons selection practices. What is striking about the descriptions of the above

23  documents is the repeated statement that disclosure "would reveal current operating procedures and

24  the intelligence process" or refers to other "current methods" and "potential targets".   The

25  significance of this language is its contemporaneity,  meaning the "current" status of military

26  activities in Iraq, i.e., at the time of the creation and application of the documents.  These assertions

27  no longer ring true, given the present status of military activities in Iraq.

28

1   /////

2          The declarations of Maj. Gen. Ghormley are consistent with this language.  See, e.g.,

3   Ghormley Dec., Doc. 18-2 at ¶¶4, 6, 7, 8, 9,and 10; Ghormley Supp. Dec., Doc. 36-2, at ¶¶ 7 and 8.

4          The court could on these grounds alone find that the articulated reason for specific harms can

5   no longer justify non-disclosure, even though the documents may have been properly classified.

6   However, equally important, the reasons for non-disclosure and specific harms in the RVI are

7   inadequate.  They lack particularity and essentially repeat the same verbiage for each of the

8   documents.  They are not sufficient in detail and specificity to identify their nature and extent and

9   the harm that would result from their release.  The RVI repeats conclusory language and its

10  repetition becomes boilerplate.  Thus, the court finds that as to Documents 1, 2c, 2d, 2e, 3, 3a and 4,

11  the RVI is inadequate and fails to meet the specificity requirements laid out in *Mead Data Central,*

12  *Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir.1977), which held that an agency

13  seeking to withhold disclosure of documents "must provide a relatively detailed justification,

14  specifically identifying the reasons why a particular exemption is relevant and correlating those

15  claims with the particular part of a withheld document to which they apply."   The analysis of the

16  documents must be sufficiently detailed and in "manageable segments" such that they can inform the

17  requester of whether the exemptions are well taken.  *See, e.g., Goldberg v. U.S. Dep't of State*, 818

18  F.2d at 78.

19         The description of Document Number 5, the AR 15-6 investigation, is more extensive.  This

20  document contains the Army Regulation ("AR") 15-6 Investigation that has been the subject of

21  much of this litigation.  The RVI states that portions of this document pertain to "maps and diagrams

22  of checkpoints, TCPs, and BPs; operational techniques, tactics, and procedures for IED threats and

23  detection; information regarding insurgent movements and tactics in the region, and operational

24  threat analysis for IEDs...."  RVI at p. 9.  The document also "concerns vulnerabilities or capabilities

25  of systems, installations, projects, plans, or protection services relating to national security,

26  including defense against transnational terrorism."  Id.  Unauthorized disclosure, it is claimed,

27  "could reasonably be expected to result in damage to national security."  Id.  This articulation,

28

1   although lengthy, is repetitive as can be seen from an actual review of the RVI and as can be seen

2   from the foregoing excerpts. For all its length, the description and specific harms set forth for

3   Document No. 5 are still conclusory and lack the specificity required by *Mead Data, Goldberg* and

4   *King*. They parrot the exact language of the respective classifications under sections 1.4(a), (c ) and

5   (g).

6         The information given in the RVI with respect to Document No. 5 is also inadequate given

7   the size of the document, the number of Annexes A-M, and the repetitive nature of the material

8   contained within the Annexes. The court has reviewed *in camera* these documents and finds that

9   they are very repetitive and that from the descriptions given neither plaintiffs nor any reasonably

10  informed reader of the RVI could discern what documents may be segregable. It is the job of the

11  agencies involved to determine and make clear those portions of the documents that are reasonably

12  segregable. "It has long been a rule in this Circuit that non-exempt portions of a document must be

13  disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central*, 566

14  F.2d at 260 (noting the 1974 amendment to FOIA requiring "any reasonable segregable portion of a

15  record shall be provided... after deletion of the portions which are exempt"). The agency must

16  justify non-segregability. Conclusory statements will not provide adequate support. There must be

17  sufficient "detailed justification, specifically identifying the reasons why a particular exemption is

18  relevant and correlating those claims with the particular part of a withheld document to which they

19  apply." *Nat'l Security Archive Fund, Inc. v. CIA*, 402 F. Supp.2d 211, 217-18

20  (D.D.C.2005)(quoting *Krikorian v. Dep't of State*, 984 F.2d 461, 466-67 (D.C.Cir. 1993)). The only

21  statement provided by defendants that addresses segregability consists of two brief and conclusory

22  sentences in the first Ghormley declaration at paragraph 7. The court determines from its review

23  that much of the material contained in Document No. 5 with all its Annexes can be segregated and

24  disclosed, even as of the time of the compilation of the RVI and the court's review of it. That is

25  even more true given the current conditions in Iraq.

26        Furthermore, having reviewed the documents submitted *in camera*, it is clear that the RVI is

27  inadequate to describe the documents with sufficient specificity to assist the requester of records and

28

11

**United States District Court**
For the Northern District of California

1  the recipient of the RVI in determining whether the exemptions are justified.  The documents

2  delivered for *in camera* review were voluminous.  They were delivered in a mobile cart and

3  contained thousands of pages, many of them duplicative.

4        The documents designated as Volume 1 and its Annexes A-M constitute the document

5  identified as Document 5 in the RVI.  The court's review of this document shows as follows:

6        Page 00001 contains a cover letter dated April 17, 2005, plus a cover letter of October 22, 2006, enumerating records.

7        Pages 00002 through 000049 contain a review of the Calipari incident, including the fact, the conditions, the location, the mission, the personnel involved, the forensic evidence, the findings and

8  recommendation.

9        Pages thereafter bearing "Tabs A, Annexes C through L include procedures for investigation, correspondence with the Italian government, witness statements, atmospherics, IEDs and related information discovered, threats and threat assessments, conclusions regarding decreases in attacks,

10  threat tactics and trends, attacks and targeting, field operating procedures, ROEs, training, information regarding the Baghdad International Airport (BIAP), forensic and personnel information

11  and unit logs.

12        The difficulty with these submissions is that these items are lumped together in one long

13  paragraph at page 9 of the RVI with no attempt to distinguish the various papers, let alone pages,

14  within the document.[4]  However, from the *in camera* submissions it appears that defendants are

15  claiming that all of Document 5 is covered by the asserted exemptions.  There has been no effort to

16  segregate those portions of this enormous document, which, in fact, consists of a number of

17  documents.  There has been no effort to designate only those portions that are truly exempt.  It is not

18  the responsibility of the court to redact hundreds of pages indicating which exemptions apply to

19  which portions of documents.

20        Certainly, there are facts, locations, procedures and other matters that do not implicate

21  military plans, weapons systems or operations, intelligence sources and methods or cryptology, or

22  the vulnerabilities and capabilities described in sections 1.4(a), (c ) and (g) and do not deserve

23  protection under these sections.  Furthermore, given the current U.S. military conditions in Iraq, it is

24  not clear how much of this information could be expected to damage national security which, as

25  articulated in the RVI and the declarations, looks to the future.

26        Documents1, 2c, 2d, 2e, 3, 3b, 3c,  3d and 4, described in the RVI and for which Exemption

27  1 is asserted, are not so extensive.  They contain ROEs, but much of the information is general in

28

1   nature, discusses graduated force, deadly and non-deadly force and instructions with respect to

2   ensuring familiarity and consistency with the ROE.  The information is commonly known or readily

3   accessible.  With respect to this general information it is segregable and does not justify

4   classification.  To the extent these documents provide information specific to circumstances in Iraq

5   or pertain to specific military plans in Iraq such portions may be segregated and withheld, except to

6   note that although classifiable at the time of the classification, they would not generally be

7   classifiable now as they do not relate to future national security.  To the extent these documents

8   pertain to weapons systems, weapons operations, or intelligence sources and methods, such

9   information is entitled to Exemption 1 protection.

10          Based on the foregoing as to Document 1, pages 1-4, and paragraphs 3a and 3e of Document

11  1 shall be disclosed.  Pages 5-14, specifically 3b, 3c, 3d, 3f ,are exempt.  Paragraphs 4a and b on

12  page 17 shall be disclosed.

13          The exemptions claimed under (b)(1) for Documents 2c, 2d and 2e are sufficiently supported

14  by the RVI and appear to be consistent with this exemption.  However, the basis for the claim is the

15  disclosure of "current operating procedures and methods of self-defense and target identification"

16  which no longer obtains.  Since the information is Iraq-specific, although properly classified at the

17  time of classification, there appears to be no reason for the continued withholding of these

18  documents except as to any portion that pertains to weapons systems or intelligence sources and

19  methods.

20          Having insufficiently described the documents with required specificity, having failed to

21  adequately provide for their segregability, and now facing very different circumstances in Iraq, the

22  government shall disclose the contents of the foregoing documents except as allowed above or

23  except as justified in other exemptions asserted for those documents and allowed below.

24

25  EXEMPTION 2

26          Defendants have asserted the (b)(2) exemption as to a number of documents.   In asserting

27  this exemption, defendants have categorized the documents in terms of High 2 and Low 2.

28

1    Stemming from the once seminal opinion in *Crooker v. Alcohol, Tobacco & Firearms*, 670 F.2d

2    1051 (D.C.Cir.1981), several appellate courts developed two levels of the (b)(2)

3    Exemption referred to as the "High 2" and "Low 2" exemptions.  "High 2" was defined as

4    documents that are "predominately internal...the disclosure of which would risk circumvention of

5    agency statutes and regulations";  "Low 2" was defined as documents that are "predominately

6    internal...that deal[t] with trivial administrative matters." *Schiller v. NLRB*, 964 F.2d 1205, 1207

7    (D.C.Cir.1992); *see also Massey v. FBI*, 3 F.3d 620, 622 (2nd Cir.1993); *Kaganove v. EPA*, 856 F.2d

8    884, 889 (7th Cir.1988).

9        Another line of cases took a narrower approach confining Exemption 2 to only routine

10   internal matters or matters of "merely internal significance".  *See Cox v. Dep't of Justice*, 576 F.2d

11   1302, 1309-10 (8$^{th}$Cir.1978)(relying on language in *Dep't of Air Force v. Rose*, 452 U.S. 352, 362-

12   63 (1976) and *Stokes v. Brennan*, 476 F.2d 699, 703 (5$^{th}$Cir.1973)

13       The *Schiller* line of cases subscribing to the High and Low 2 designations was rejected this

14   year in *Milner v. Dep't of Navy*, 562 U.S.___, 131 S.Ct. 1259 (2011).  *Milner* involved an

15   Exemption 2 claim for data and maps of the Department of Navy ("Navy") used to help store

16   explosives at naval bases.  The Court of Appeals for the District of Columbia Circuit held that these

17   documents qualified for a High 2 Exemption.  After a lengthy discussion of the purpose of

18   Exemption 2, the Supreme Court rejected the *Crooker* High 2 approach, noting that the government

19   "has other tools at hand to shield national security and other sensitive matters.... [m]ost notably,

20   Exemption 1....and Exemption 7." *Id*. at 1271.  The Court held that Exemption 2, consistent with the

21   plain meaning of "personnel rules and practices encompasses only records relating to issues of

22   employee relations and human resources." *Id*.

23       To interpret Exemption 2 as defendants in this case have by using the High 2 or Low 2

24   designation is now contrary to the current interpretation rendered by the Supreme Court.  While the

25   documents in this case for which Exemption 2, whether High of Low, is claimed may relate to

26   activities of personnel, these activities are not of the type that fall within the ordinary meaning of

27   employee relations or human resources. They are the types of activities or matters for which there

28                                                    14

1    are "other tools at hand", namely Exemption 1.  As the Supreme Court noted, "Many documents an

2    agency generates in some way aid employees in carrying out their responsibilities.  If Exemption 2

3    were to reach all these records, it would tend to engulf other FOIA exemptions, rendering [?]

4    ineffective the limitations Congress placed on their application."  *Id*. at 1270

5          The court finds that Exemption 2 does not apply to the documents for which it is asserted, in

6    this case, Documents 1, 2a, 2b, 2c, 2d,2e, 3,3b, 3c, 3d, 4, and 5.

7

8    <u>EXEMPTION 3</u>

9          Exemption 3 is asserted for Documents, Nos.2c, 2d, 3, 4, 4b, and 5, which are the subject of

10   the renewed motion. These exemptions are asserted only for names and personal or other identifying

11   information of military members assigned to overseas, sensitive or "routinely deployable" units.

12   See, e.g.,  RVI at p.3.  Exemption 3, contained in 5 U.S.C. section 552(b)(3), depends on statutory

13   bases for non-disclosure.  In this case the basis claimed for each of these documents is 10 U.S.C.

14   section 130b which provides that the Secretary of Defense and the Secretary of Homeland Security

15   "may...authorize to be withheld" certain personal identifying information regarding certain members

16   of the armed forces.   The exemptions in each of these cases authorized the withholding of the name

17   or signature block of a military member assigned to an "overseas unit, sensitive unit or a routinely

18   deployable unit" of the armed forces, using the exact language of section 103b (a)(1).  The 130b

19   assertions for each of these documents except 4b are sustained.  With respect to 4b the assertion is

20   overly broad.  It states that "[p]ortions of the MiTT/SPiTT Guidance card pertaining to military

21   personnel...."  The military personnel are those identified in (a)(1), however, that section limits the

22   exemption to "personally identifying information" of such personnel.  Therefore, only that

23   information that is personally identifying may be redacted and the remainder of the document shall

24   be disclosed unless otherwise found exempt under another exemption.

25          Another statutory basis for Exemption 3 is asserted for Document 5.  That exemption is

26   premised on section 130c of Title 10, which protects "sensitive information of foreign

27   governments".  The particular information referenced in the RVI is "diplomatic correspondence".

28                                                          15

1    The RVI states that portions of the AR 15-6 report "were redacted under 10 U.S.C. 130c and

2    Exemption 3 and were referred to the U.S. State Department for release consideration."  RVI at p.10.

3    However, the Grafeld declaration and its accompanying Vaughn Index, discussed below, relies on

4    (b)(1) and makes no mention of (b)(3) or Exemption 3.  Thus, the ruling the court makes herein

5    applies only to the documents for which (b)(3) is asserted and supported.   No declaration or Vaughn

6    Index addresses Exemption 3 with respect to the State Department documents.  To the extent

7    defendants claim it as to the State Department documents it is denied.

8

9    EXEMPTION 5

10          Document No. 5 is the only document for which Exemption 5 is asserted.  The RVI identifies

11   only portions of the AR 15-6 report and Annex G that qualify for this exemption.  This exemption,

12   defined in section 552(b)(5), provides for matters that are "inter-agency or intra-agency

13   memorandums or letters which would not be available by law to a party other than an agency in

14   litigation with the agency".  There are three privileges that courts have recognized come within

15   Exemption 5: the attorney-client privilege, the attorney work-product privilege and the deliberative

16   process privilege.  *NLRB v. Sears, Roebuck & Co.*, 412 U.S. 132, 149 (1975).  Defendants invoke all

17   three.  Normally Exemption 5 is construed as coextensive with civil discovery privileges.  *Martin v.*

18   *Office of Special Counsel*, 819 F.2d 1181, 1184-85 (D.C.Cir.1987).  Thus, the attorney-client and

19   work product privileges follow the contours of these traditional privileges.  The former applies to

20   legal advice sought from a professional legal adviser where the communication relating to that

21   purpose is given in confidence by the client and the communications between client and lawyer are

22   based on confidential information provided by the client.  The privilege is strictly construed.  *See*

23   *U.S. v. Martin, 278 F.3d 988, 999* (9th Cir.2002);  *Mead Data Central Inc. v. U.S. Dep't of the Air*

24   *Force*, 566 F.2d at 252-254..  The work-product privilege protects documents and other material

25   prepared by an attorney in contemplation of litigation.  It protects the "mental processes of the

26   attorney".  *Dep't of Interior v. Klamath Water Users Prot. Ass'n*., 532 U.S. 1, 8 (2001).

27          There are two prerequisites to the invocation of the deliberative process privilege: the

28                                                    16

United States District Court

For the Northern District of California

document must be pre-decisional and it must be deliberative "in that it makes recommendations or expresses opinions on legal or policy matters". *Vaughn v. Rosen*, 523 F.2d at 1144. The privilege contemplates a decision making process in which the document played some role even if it does not become part of the final decision. As with the other exemptions asserted in the RVI, the identification of particular portions of the document that fall within these chosen categories is nonexistent. The sole paragraph relating to this exemption is contained on page 10 of the RVI. [5] It fails to identify any particular pages or paragraphs of Document 5 that are privileged or involve the deliberative process. The declarations insofar as they address Exemption 5 are equally uninformative. They merely recite verbatim the language of section (b)(5). They make no effort to parse out the extensive pages and identify material that actually fall within the exemption. The RVI and declarations do not assist the court in sorting through the many documents and pages submitted for *in camera* review. This Circuit has stated "[w]e cannot stress strongly enough, however, that the district court's inspection prerogative is not a substitute for the government's burden of proof, and should not be resorted to lightly. In cases involving requests for hundreds of documents, no trial court can reasonably be expected to wade through a mass of exhibits in camera. We also underscore similar limitations upon in camera inspection at the appellate level." *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 743 (9th Cir.1979).

Comparing the efforts in this case with those in other cases points up the deficiencies here. In *Shannahan v. IRS*, 637 F.Supp.2d 902 (W.D.Wash.2009), footnote 4 shows the amount of detail offered with page numbers and other information identifying the withheld material. Even so, with respect to other documents the court found the agency's efforts wanting, noting that "only generalized information" was provided. *Id.* at 918. In *James Madison Project v. CIA*, 607 F.Supp.2d 109, 127-30 (D.D.C.2009), the court was able to identify documents by numbers and names of specific pages or portions.

On the other hand, this court found document descriptions insufficient where they failed to provide enough detail and were "overly simplistic and conclusory" accompanied by "boilerplate explanations". *Center for Biological Diversity v. Office of Management and Budget*, 625 F.Supp.2d

United States District Court
For the Northern District of California

885, 890-92 (N.D.Cal. 2009). Even by CBD's standards the declarations and RVI in this case fall short. For example, they fail to identify for each claimed document how it is pre-decisional and deliberative as was done in CBD. *Id*. at 890.

The court has reviewed Document 5, which as described above, is extensive. Nothing in the submissions or the RVI enlightens the court as to which specific portions of the document have purchase on Exemption 5 or other of the claimed exemptions. It is not for the court to sift through the many pages and ascertain which exemptions are claimed for which pages, paragraphs or sections, particularly when, as is the case with this document, four different exemptions are claimed. Furthermore, the court cannot determine the capacity of particular authors or recipients of documents and whether they are attorneys, decision makers or merely functionaries.

Therefore, with respect to this exemption only those portions of Document 5 that consist of findings, recommendations, coordination and findings and conclusions by or to attorneys or policy makers are deemed exempt. All other portions, unless exempt on other grounds, shall be disclosed, including witness statements, forensic evidence, atmospherics, and all other material not described in the preceding sentence. To the extent the material to be disclosed under this exemption, as explained above, contains attorney notes or comments characterizing the evidence or making conclusions or recommendations these may be redacted. However, since defendants have done such an inadequate job of making specific designations or segregating material, any questions about the need for disclosure shall be resolved against defendants.


EXEMPTION 6

Exemption 6, which is created to protect "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" under subparagraph (b)(6) of section 552, is asserted as to Documents 2c, 2d, 3, 4, 4b and 5. The claim with respect to 2c, 2d, 4 and 4b is to exclude the names, email addresses and/or phone numbers of individuals or military members who prepared the documents. With respect to Document 3 the exclusion is for the signature block of a military member. With respect to Document 5 the exclusion

1  includes photos, names, descriptions and pictures of military personnel and others who were injured,

2  deceased, or involved in the Calipari incident.

3       To satisfy Exemption 6 the information must be personnel, medical or similar files and their

4  disclosure must constitute a clearly unwarranted invasion of personal privacy.  The latter requires "a

5  balancing of individual privacy interests against the public interest in disclosure."  *Miami Herald*

6  *Pub. Co. v. U.S. Small Business Administration*, 670 F.2d 610, 615 (5th Cir.1982).  "Similar files" are

7  files that have the "same confidential character as information in medical or personnel files."  *Id.*

8  However, this term has been construed broadly "to cover detailed Government records on an

9  individual which can be identified as applying to that individual".

10 *U. S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982).  It includes "[a]ll

11 information which applies to a particular individual...regardless of the type of file in which it is

12 contained".  *Id.*

13      The information redacted in Documents 2c, 2d, 3, 4 and 4b under Exemption 6 is minimal.  It

14 does not provide any detailed personal information.  At most it indicates the name, email address

15 and/or phone number of an individual or military member of the Armed Forces who prepared the

16 subject document.  To the extent the email addresses and phone numbers are personal and not

17 official, there is no public interest in their disclosure and privacy trumps their disclosure.  However,

18 these documents were prepared and signed in the course of the signatories official capacity and are

19 part of an official record.  Names, official email addresses and phone numbers fail to meet the

20 "similar files" prong of Exemption 6 and fail to amount to an unwarranted invasion of privacy under

21 the test set forth above.  *See, e.g., Leadership Conference  on Civil Rights v. Gonzales*,

22 404 F.Supp.2d 246, 256-67 (D.D.C.2005), *appeal dismissed*, 2006 WL 1214937 (D.C.Cir. Apr. 28,

23 2006)(denying Exemption 6 for names and extensions of paralegals who were government

24 employees).  Therefore, the names and official email addresses and official phone numbers shall be

25 disclosed under this Exemption.  This does not affect the rulings on other exemption grounds, if any.

26

27      Document 5 presents other issues with respect to the nature of the information defendants

28                                                        19

1    seek to exempt under (b)(6).  The court has already addressed the issue of names and the above

2    holding applies to the names withheld in this document.  However, the other information consists of

3    "descriptions" and photos".  These relate to the Calipari incident which received national and

4    international attention.  Neither the declarations nor the RVI specify the contents of the descriptions

5    or the photos.  That would have been helpful.  The court's *in camera* review did not aid in this

6    determination because of this lack of clarity.  Thus, the court makes the following ruling.  To the

7    extent that the descriptions contain information such as dates of birth, home addresses, social

8    security numbers and other information that could expect to be found in personnel or medical files

9    including medical treatment in the past or in connection with the incident such information is

10   exempt under (b)(6).  However, descriptions and photos of and related to the incident including

11   those of injured persons or their injuries shall be disclosed unless they are found in this order to be

12   exempt on other grounds.  The attention this incident received raises it above any privacy interests

13   that may be claimed and places it in the realm of public interest.  Notoriety or embarrassment are not

14   reasons to invoke privacy blandishments or minimize public interest.

15

16   <u>SEGREGABILITY</u>

17           Throughout this order the court has dealt with the various exemptions asserted and issues of

18   segregability.  Section 552(b) provides that "[a]ny reasonable segregable portion of a record shall be

19   provided...."  "Non-exempt portions of a document must be disclosed unless they are 'inextricably

20   intertwined with exempt portions'".  *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C.Cir),

21   *cert. denied*, 525 U.S. 891 (1998)(quoting *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566

22   F.2d 242, 260 (D.C.Cir.1977).  To withhold entirely the agency must demonstrate that it cannot

23   segregate.  *Hertzberg v. Veneman*, 273 F.Supp.2d 67, 74 (D.D.C.2003).  This defendants have failed

24   to do.  In fact, they have made no mention of this in their submissions, despite several pages devoted

25   to the issue by plaintiffs in their response to defendants' motion.  They did not even give a nod to it

26   in their reply.  At the hearing on the motion defendants responded to the court's inquiry about

27   segregable documents treating it only in the context of documents they had released.  They have

28                                                                20

United States District Court
For the Northern District of California

made to attempt to show why the documents they still withhold are not segregable.  The "just trust

us" attitude does not satisfy section 552(b) or the extensive body of case law expounding on it.

Defendants have not demonstrated how the withheld documents are "inextricably intertwined" or

that it "cannot segregate the documents as subparagraph (b) requires.

THE BAD FAITH ISSUE

Plaintiffs would have this court find that defendants have acted in bad faith in responding to

the FOIA requests in this case.  They premise their argument primarily on the variance of the AR 15-

6 report.  As explained in this order the court is satisfied with the explanations given in the

Ghormley and Moore declarations even though the declarations are at variance.  The later-in-time

Moore declaration adequately explains the time line for the release and retrieval of this document.

While the defendants' actions may have been haphazard, they do not equate to bad faith.   The same

is true with respect to the different ROE documents.

To the extent that plaintiffs rely on this court's earlier statement about underlying activities,

plaintiffs over read that statement and the *Jones* case on which this court relied.  *See Jones v. F.B.I.*,

41 F.3d 238 (6th Cir.1994).  *Jones* involved documents related to an FBI investigation involving a

potentially tainted prosecution and a reason for fabricating or destroying documents based on this

underlying prosecution.  The underlying facts plaintiffs summon up in this case are essentially all the

potential violations of international laws that may be implicated in the war in Iraq, matters far

beyond the purview of this court to entertain let alone adjudicate particularly in the context of a

FOIA action.

Confining itself to the defendants' conduct in this action, defendants may have been cavalier

about their FOIA duties and have failed to submit declarations and Vaughn Indices that measure up

to established statutory and case law principles, however, the court does not find that defendants

have acted in bad faith.  The resolution for this conduct is denying their motion for summary

judgment and granting plaintiffs' motion to the extent provided for in this order.

21

## II. SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

This motion is directed at Documents U1 through U5 that were submitted to the Department of State for review.  The Department's Coordinator, Margaret P. Grafeld, has submitted a declaration and Vaughn Index as to these documents claiming exemption under section 552(b)(1) and E.O. 12958, as amended, section 1.4(b), providing for "foreign government information and 1.4(d) "foreign relations or foreign activities of the United States, including confidential sources." Plaintiffs have stated in their submissions on this motion that they do not seek disclosure of U4 and U5.  U1 - U3 consist of copies of letters from a senior Italian government official to the United States Ambassador in Rome, a response from the Ambassador and a telegram from the Embassy in Rome to the Department of State and Embassy in Baghdad.

The Vaughn Index submitted for these documents spells out enough details about them to apprise the court of the nature of the documents.  The question is whether they satisfy the requirements of 1.4(b) or (d).  E.O 12958, as amended, defines "foreign government information" as information provided to or by the United States government by or to a foreign government with the expectation that the information be held in confidence.  E.O. 12958, as amended, Sec.6.(r). Furthermore, as with any classified information, the government must show its disclosure could be expected to result in damage to the national security.

Although declarant Grafeld avers that the information in U1 was provided to the United States with an expectation of confidentiality, there is nothing in the documents that so states, nor does she point to any such references in the documents.  This generalized assertion and her statement that disclosure "would harm U.S. bilateral relations with Italy, damage Embassy Rome's relations with a key Italian political interlocutor, and handicap future U.S. diplomatic access to senior Italian officials" are formulaic.  She similarly characterizes Documents U2 and U3.  However, there is nothing in the documents or any factual representations external to the documents that supports these representations.

Subsection 1.4(d) is more illusive.  Neither the Executive Orders or the statute defines "foreign relations" or "foreign activities".  Nor has any case law delved into an explanation.  It is

further complicated by the fact that "national security" is defined as the "national defense or foreign relations of the United States". Thus, one of the classification categories is foreign relations which is also a component of national security. The terms foreign relations and foreign activities are exceptionally broad.

From the statute and the Executive Order we know that there are certain requirements that will result in a classification rendering material non-disclosable. In addition to the proper designation of the material the government must show that disclosure could be expected to damage national security. In other words properly designated material classified as foreign relations material will not be disclosable if it could damage foreign relations. The court will not expend time pondering this imponderable. The defendants have alleviated that inquiry by failing to provide anything other than conclusory reasons why disclosure could harm national security including this country's foreign relations. The same reasons found ineffective for section 1.4(b) are used for section 1.4(d). Recognizing, as this court must, that "Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosure", and despite the substantial weight to be given their opinions, the government, nonetheless, has the burden of proving entitlement to the exemption. *Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C.Cir.1993). In fact, the rationale for non-disclosure given in this case essentially would embrace all diplomatic exchanges. Furthermore, there is nothing to show that disclosure would harm national security.

Accordingly, the court finds that the claims of exemption for Documents U1 - U3 are not substantiated and the documents shall be disclosed.

## III. CONCLUSIONS

Based on the foregoing discussion and rulings,

IT IS HEREBY ORDERED that defendants' renewed motion for summary judgment is GRANTED in part and DENIED in part and plaintiff' renewed cross-motion for summary judgment is GRANTED in part and DENIED in part as follows:

23

1. Defendants have not waived exemptions to which they may be entitled by reason of the disclosure of the first and second iterations of the AR 15-6 report as described above.

2. The search conducted by defendants was an adequate search.

3. Exemption 1 is allowed as to any portions of Documents 1-6 inclusive that pertain to weapons systems, weapons operations, and intelligence sources and methods.

4. Exemption 1 is allowed as to those matters set forth on pages 15 and 16 of this Order.

5. Exemption 1 is disallowed and defendants' motion is DENIED and plaintiffs' motion is GRANTED as to all other portions of Documents 1-5 inclusive for failure to provide adequate Vaughn Indices and to segregate documents or to support the lack of segregation as set forth above.

6. Defendants shall show cause in writing on or before **February 27, 2012** why Documents 1-5 should not be fully released other than as to the exclusions set forth in paragraph 3 above on the grounds that circumstances justifying non-disclosure have changed since classification of these documents.[6] Plaintiffs may respond in writing on or before **March 12, 2012**, at which time the matter will be deemed submitted unless the court requests oral argument.

7. Exemption 2, where asserted, is disallowed as set forth above.

8. Exemption 3, where asserted, is allowed in part and disallowed in part as set forth above.

9. Exemption 5 is disallowed as set forth above.

10. Exemption 6 is allowed in part and disallowed in part as set forth above.

IT IS FURTHER ORDERED based on the discussion above, defendants' supplemental motion for summary judgment is DENIED and Documents U1- U3 shall be disclosed.

IT IS FURTHER ORDERED that all documents subject to disclosure under this order shall be released to the plaintiffs within sixty (60) days of the date of this order.

Dated: February 2, 2012

_____
MARILYN HALL PATEL
United States District Judge

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

**ENDNOTES**

1.  The Declaration fails to discuss the Exemption 2 issues.  However, given the ruling herein as to Exemption 2, it is unnecessary to require that this Exemption be addressed in a further declaration.

2.  Plaintiff does not dispute that the documents in question were properly classified  under Exemption 1 in accordance with the procedural criteria of the controlling Executive Order. *See Lesar v. U.S. Dept. Of Justice*, 636 F.2d 472, 483-85 (D.C.Cir. 1980).

3.  E.O. 12958 was signed by the President on April 17, 1995, effective 180 days thereafter.  It was amended in part by E.O. 13292, signed by the President on March 25, 2003, effective 180 days thereafter.  E.O. 12958 and E.O. 13292 were revoked upon execution of E.O. 13526, signed by the President on December 29, 2009, effective 180 days thereafter.  As explained above, documents classified under (b)(1) are to be classified in accordance with the Executive Order in effect at the time of classification.

Curiously, the RVI states the documents for which (b)(1) exemptions are claimed, to the extent they are dated, bear dates subsequent to the effective date of the amendments contained in E.O. 13292 and references to "Section 1.4a" and "Section 1.4c" are consistent with the sections in E.O. 13292, not with the section numbers in E.O. 12958.  It would appear that the range of dates for the undated documents likely fall in the post-13292 period.  Yet, the RVI makes no mention of E.O. 13292.

A review of the two Executive Orders indicates that the language of the cited classifications in these two sets of subparagraphs is identical.  In other words the sections bearing 1.4a and 1.4c in E.O. 13292 read the same as 1.5a and 1.5c in E.O. 12958.  Thus, in this respect the two Executive Orders read the same.

4.  The RVI at page 9 reads as follows:

FOIA Exemption 1, found at 5 U.S.C. 552(b)(1), exempts from release information properly classified in accordance with Executive order. Portions of the AR 15-6 investigative report and associated annexes pertaining to Rules of Engagement; field and tactical Standard Operating Procedures; information regarding operational routes, roadside security, and other essential military operations; Standard Operating Procedures (SOPs) regarding Traffic Control Points (TCPs) and Blocking Positions (BPs); operational techniques, tactics, and procedures (TTPs) for IED threats and detection; and operational threat analysis of IED attacks are properly classified as SECRET in accordance with Executive Order 12958, as amended, Section 1.4(a) concerning military plans, weapons systems, or operations. This information was classified as SECRET by a person authorized as an Original Classification Authority. The Original Classification Authority determined that the aforementioned information concerns military plans, weapons systems, or operations under Section 1.4(a) of E.O. 12958 and that the unauthorized disclosure of this information could reasonably be expected to result in damage to national security. Additionally, portions of the AR 15-6 investigative report and associated annexes pertaining to maps and diagrams of checkpoints, TCPs, and BPs; operational techniques, tactics, and procedures (TTPs) for IED threats and detection; information regarding insurgent movements and tactics in the region, and operational threat analysis for IEDs are properly classified as SECRET in accordance with Executive Order 12958, as amended, Section 1.4(g), concerning vulnerabilities or capabilities of systems, installations, projects, plans, or protection services relating to national security, including defense against transnational terrorism. This information also was classified as SECRET by a person authorized as an Original Classification Authority. The Original Classification Authority

determined that the aforementioned information concerns vulnerabilities or capabilities of systems, installations, projects, plans, or protection services relating to national security, including defense against transnational terrorism under Section 1.4(g) of E.O. 12958 and that the unauthorized disclosure of this information could reasonably be expected to result in damage to national security. Accordingly, the aforementioned information was redacted from the AR 15-6 report and Annexes E, F, K, L, and M under Exemption 1.

5.  The pertinent part of the RVI at page 10 reads as follows:

FOIA Exemption 5, found at 5 U.S.C. 552(b)(5), exempts from release inter-agency or intra-agency documents which would not be available by law to a party in litigation with the agency. Attorney legal reviews pertaining to the AR 15-6 report regarding its sufficiency and compliance with legal requirements that are subject to the attorney-client privilege and the attorney workproduct privilege were redacted under Exemption 5. Additionally, 5 U.S.C. 552 (b)(5), exempts from release information pertaining to an agency's deliberative process in decision making. Portions of the AR 15-6 investigative report that discuss pre-decisional internal advice that is deliberative in nature, such as opinions and recommendations regarding fault and potential disciplinary actions and changes to policies, are exempt from disclosure pursuant to the deliberative process privilege under Exemption 5. The aforementioned information was redacted from the AR 15-6 report and Annex G.

6.  The court could remand this matter for further review regarding these classifications. However, given the court's rulings ordering disclosure on other grounds, remand would be unduly time consuming and unnecessary.  That would not preclude defendants from deciding to release the documents on the basis of change circumstances as suggested herein.