1 COLLEEN FLYNN, SBN 234281
   CHRIS FORD, SBN 239376
2 3435 Wilshire Blvd., Suite 2900
   Los Angeles, CA 90010
3 Telephone: (213) 487-8000
4 Facsimile: (213) 487-8001
   E-mail: colleen_ucsc@hotmail.com
5
   W. GORDON KAUPP, SBN 226141
6 115 ½ Bartlett Street
   San Francisco, CA 94110
7 Telephone: (415) 285-8091
8 Facsimile: (415) 285-8092
   E-mail: gordonk@hotmail.com
9
   ATTORNEYS FOR PLAINTIFFS
10

11            UNITED STATES DISTRICT COURT FOR THE

12            NORTHERN DISTRICT OF CALIFORNIA

13            SAN FRANCISCO DIVISION

14

15 MARGUERITE HIKEN and                    **Case No. CV-06-2812 (MHP)**
   THE MILITARY LAW TASK FORCE,
16                                          **PLAINTIFFS' NOTICE OF MOTION AND**
                                            **MOTION FOR AN ATTORNEY FEE**
17        Plaintiffs,                       **AWARD PER 5 U.S.C. § 552(a)(4)(E);**
                                            **MEMORANDUM OF POINTS AND**
18        v.                                **AUTHORITIES IN SUPPORT THEREOF**

19
   DEPARTMENT OF DEFENSE
20 and UNITED STATES                        Hearing Date: July 9, 2012
   CENTRAL COMMAND,                         Time:         9 a.m.
21                                          Courtroom:    9, 19th floor
22
         Defendants.                        Judge:        Hon. James Ware
23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2    **NOTICE OF MOTION**........................................................................................4

3    **MEMORANDUM OF POINTS AND AUTHORITIES** ..........................................5

     **INTRODUCTION** ...........................................................................................6
4
     **ARGUMENT**..................................................................................................12
5
         I.    **THE COURT SHOULD AWARD ATTORNEY FEES TO PLAINTIFFS**
6              **BECAUSE THEY SUBSTANTIALLY PREVAILED IN THE**
               **LITIGATION**...........................................................................13
7
               A.    **Plaintiffs Substantially Prevailed Under** *Buckhannon* **for Attorney**
8                    **Fees Earned Prior to December 31, 2007 Because They Obtained**
                     **"Some Relief" From This Court** ........................................13
9
               B.    **Plaintiffs Substantially Prevailed Under the Current Reading of § 552**
10                   **(a)(4)(E) for Attorney Fees Earned Subsequent to December 31, 2007**
                     **Because the Relief They Obtained Was Via Judicial Order** ...............15
11
         II.   **PLAINTIFFS ARE ENTITLED TO ATTORNEY FEES** ...........................16
12
               A.    **Disclosure "Furthers a Project Benefiting the General Public"** ..........17
13
               B.    **The Nature of Plaintiff's Interest is Scholarly, Journalistic and in the**
14                   **Public Interest**....................................................................17

15             C.    **There is No "Reasonable Basis" for Defendants' Withholding** ..........18

16                   a.    **Defendants' Dilatory Conduct Demonstrated "Recalcitrance" and**
                           **"Obduracy," Justifying an Order for Attorney Fees on This Basis**
17                         **Alone** ....................................................................20

18                   b.    **Defendants' Actions Lacked a "Colorable Basis"** .........................22

         III.  **THE COURT SHOULD ORDER DEFENDANTS TO PAY PLAINTIFFS**
19             **THE LODESTAR AMOUNT** .......................................................23

20             A. **The Court should Defer to Counsel's Professional Judgment in**
                  **Determining Whether the Number of Hours Billed Is Reasonable** .....23
21
               B. **The Court Should Apply Plaintiffs' Attorneys' Current Billing Rates**
22                **in Light of Their Having Worked on This Matter for More Than Six**
                  **Years Without Compensation** ................................................25
23
     **CONCLUSION** ...............................................................26

24

25

26

27

28

1          **TABLE OF AUTHORITIES**

2     **CASES**

3     *American Small Business League v. U.S. Small Business Admin.*, 2009 WL 1011632

4     (N.D. Cal. 2009) ......................................................................14, 15, 19, 20, 23

5     *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human*

6     *Resources,* 532 U.S. 598 (2001) ........................................................10, 11, 12

7     *Church of Scientology of California v. U.S. Postal Service*, 700 F.2d 486 (9th Cir. 1983) ..

8             ...........................................................................................13, 14, 15

9     *Contreras v. U.S. Dept. of Justice*, 729 F.Supp.2d 167 (D.C. Cir 2010)....................10, 12

10    *Davis v. Dept't of Justice*, 460 F.3d 92 (D.C. Cir. 2006) .................................10

11    *Davy v. C.I.A.*, 550 F.3d 1155 (D.C. Cir. 2008) ..............................10, 13, 15, 16

12    *Fenster v. Brown*, 617 F.2d 740 (D.C. Cir. 1979) ..........................................15

13    *Hart v. United States HHS*, 676 F.Supp.2d 846, 857 (D. Ariz. 2009)........................13

14    *Hiken v. Dep't. of Defense*, 521 F.Supp.2d 1047 (N.D. Cal. 2007) ........5, 6, 11, 18, 19, 21

15    *Jones v. Metro Life Ins. Co*., No. C 08-03971, 2012 U.S. District LEXIS 33817 (N.D. Cal,

16    Feb. 24, 2012) ..........................................................................................22

17    *Long v. I.R.S*, 932 F.2d 1309 (9th Cir. 1991) .............................................9, 20

18    *Los Angeles Gay & Lesbian Community Services Center v. IRS*, 559 F.Supp.2d 1055

19    (C.D. Cal. 2008)...............................................................................14, 19, 20

20    *Miller v. Holzmann*, 575 F.Supp.2d 2 (D.D.C. 2008).........................................20

21    *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008)................................20, 21

22    *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319

23    (D.C. Cir. 1982) ......................................................................................22

24    *O'Neill, Lyasght & Sun v. D.E.A.*, 951 F.Supp. 1413 (C.D. Cal. 1996)....................14, 15

25    *Oregon Natural Desert Assn. v. Locke*, 572 F.3d 610 (9th Cir. 2009) ............................10

26    *Peter S. Herrick's Customs and Intern. Trade Newsletter v. U.S. Customs and Border*

27    *Protection*, 2006 WL 3060012, 34 Media L. Rep. 2460 (D.D.C. 2006) ..........................16

28    *Powell v. U.S. Dept. of Justice*, 569 F.Supp 1192 (N.D. Cal. 1983) .................................20

Plaintiffs' Motion for Attorney Fees Per 5 U.S.C.§552(a)(4)(E)

1  *Preservation Coalition of Erie County v. Federal Transit Admin.*, 356 F.3d 444

2  (2nd Cir. 2004) ...................................................................................................11

3  *Read v. F.A.A.*, 252 F.Supp.2d 1108 (W.D. Wash. 2003) ....................................16, 17, 19

4  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007)............................................22

5  *Wheeler v. IRS*, 37 F.Supp.2d 407 (W.D. Pa. 1998)................................................16, 18, 19

6  *Wildlands CPR v. U.S. Forest Service*, 558 F.Supp.2d 1096 (D. Mont. 2008)................10

7

8  **STATUTES**

9  5 U.S.C. § 552(a)(4)(E) ...............................................................................1, 9, 10, 12

10  5 U.S.C. § 552(a)(4)(E)(i)............................................................................................9

11  5 U.S.C. § 552(a)(4)(E)(ii) ........................................................................................13

12  5 U.S.C. § 552(a)(6)(A)(i) .........................................................................................17

13  5 U.S.C. § 552(a)(6)(A)(ii) ........................................................................................17

14  5 U.S.C. § 552(b) ........................................................................................................3

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**NOTICE OF MOTION**

2  TO THE HONORABLE COURT, THE PARTIES, AND THEIR ATTORNEYS OF

3  RECORD:

4        PLEASE TAKE NOTICE that on July 9, 2012 at 9:00 a.m. in Courtroom 9 of the

5  Honorable James Ware, United States District Chief Judge, at the United States

6  Courthouse, for the Northern District of California, 450 Golden Gate Avenue, 19th Floor,

7  San Francisco, California 94102, Plaintiffs Marguarite Hiken and the Military Law Task

8  Force will and hereby do move this Court to issue an Order awarding attorney fees and

9  costs under 5 U.S.C. § 552(a)(4)(E) in the amount of $381,633.99.

10        This motion is based upon the attached memorandum of points and authorities, the

11  attached declarations and exhibits, the pleadings and papers filed in this case, and such

12  written and oral arguments as may hereinafter be made by the parties.

13

14

15  DATED: June 14, 2010          BY: _____/s/_____

16                                            Chris Ford
                                              Counsel for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

### MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs in this case, Marguerite Hiken and the Military Law Task Force of the National Lawyers Guild, have substantially prevailed. Through this litigation, they have obtained the release of documents the defendants, Department of Defense and United States Central Command, sought to withhold from the public. These documents relate to the Rules of Engagement in effect during the war in Iraq and controversial and heavily criticized action by the United States Military, *i.e.*, the 2005 shooting of Italian journalist Giuliana Sgrena and Italian agent Nicola Calipari near Baghdad, Iraq. These documents include a voluminous after-action report on the Sgrena incident containing investigative analysis and findings, photographs, and communications between the U.S. and Italian governments. The released documents also include information about limitations on the use of force, escalation of force procedures, and other Rules of Engagement in effect during the war in Iraq.

The released documents shed light on the manner in which our government conducts wars abroad and are, therefore, the types of documents whose release promotes transparency, public debate, and democracy. The Freedom of Information Act ("FOIA") was enacted to promote exactly such principles. Nevertheless, substantial litigation was required to obtain their release, as the defendants resisted disclosure and repeatedly failed to comply with their obligations under the Act.

Notably, most of the work plaintiffs' counsel have done on this case over the past seven years would not have been required if defendants had taken their obligations under the FOIA seriously by searching for responsive documents and segregating and releasing non-exempt information in response to plaintiffs' initial, administrative request in 2005. Had they done so at the administrative level, a lawsuit may never have even been filed. Not only did defendants fail to adequately search for, segregate and release responsive materials, defendants further disregarded their statutory obligations by repeatedly submitting grossly inadequate *Vaughn* Indices and declarations with boilerplate, overly simplistic and conclusory explanations as to the justifications for withholding. And, at least in the case of the Ghormely declaration, the government submitted

1  misleading information to plaintiffs and the Court, preventing the Court from ruling on exemptions
2  to disclosure and generating the need for additional litigation.

3       Throughout this lawsuit, defendants expected the Court to simply take their word that
4  release of any withheld material would endanger service members. Such a false and unreasonable
5  position created the need for plaintiffs to aggressively litigate the case and resulted in court orders
6  requiring defendants to release more information after almost every stage of litigation. As Judge
7  Marilyn Hall Patel stated in her last order, defendants' "just 'trust us' attitude does not satisfy
8  section 552(b) or the extensive body of case law expounding on it." Order Re Motions for
9  Summary Judgment at 21:1-2, Dkt. No. 94 ("Feb. 2012 Order").

10      Defendants' most flagrant disregard for their statutory obligations appears to be their failure
11  to produce, or even identify, a single Fallujah-related document. Plaintiffs' 2005 FOIA request
12  included the Rules of Engagement ("ROE") in effect for the 2004 sieges of Fallujah. At the most
13  recent hearing in this matter, on May 14, 2012, counsel for defendants informed the Court that
14  defendants were unable to find any Fallujah-related documents and so provided plaintiffs with the
15  closest documents they could find. See Decl. of Colleen Flynn, para. 13, filed concurrently
16  herewith. It is unfathomable that defendants could not locate a single ROE-related document from
17  Fallujah, where they carried out an extended siege of the city and the ROE for the siege were
18  highly debated in the media. (See discussion of Fallujah in Plaintiffs' Opposition to Defendants'
19  Motion for Clarification and Partial Reconsideration, Dkt. No. 108, filed April 11, 2012).

20      Despite defendants' resistance to transparency and, as Judge Patel observed, "cavalier"
21  attitude towards their statutory obligations, Feb. 2012 Order at 21:22-24, plaintiffs were ultimately
22  successful in this litigation. They obtained the release of thousands of pages of requested
23  documents, substantially prevailing in this matter, and are they now are eligible for and entitled to
24  an award of attorney fees.

25

26                              **PROCEDURAL HISTORY**

27      On March 17, 2005, the Military Law Task Force of the National Lawyers Guild
28  and Marguerite Hiken ("plaintiffs") submitted a Freedom of Information Act ("FOIA") request to

1   the Department of Defense requesting the ROE and other documents for the soldiers involved in

2   the shooting attack on Guiliana Sgrena's car and the soldiers involved in the siege of Fallujah.

3   Specifically, plaintiffs requested:

4       (1)  Any and all Rules of Engagement (whether called so, or by any other name) in effect

5   for military personnel who, on March 4, 2005, fired upon, or ordered the firing upon, the car

6   carrying Italian journalist Giuliana Sgrena while she was en route to the Baghdad, Iraq airport;

7       (2)  Any other documents bearing on any purported justification for the actions taken by the

8   military, or any personnel, in firing on Ms. Sgrena's car on March 4, 2005;

9       (3)  Any and all Rules of Engagement (whether called so, or by any other name) in effect

10  for military personnel engaged in Fallujah, Iraq from March through December, 2004; and,

11       (4)  Any and all documents (guidelines, directives, trainings, rules, orders, etc.) which

12  relate to, touch upon, or concern the judgments of U.S. military personnel in Iraq in distinguishing

13  between civilians and combatants, including without limitation such decision-making in Fallujah

14  and along the road to the Baghdad Airport in Iraq.

15      On August 15, 2005, U.S. Central Command ("CENTCOM") denied the request outright

16  and on September 26, 2005 plaintiffs submitted an administrative appeal to the Department of

17  Defense as instructed by CENTCOM.

18      Plaintiffs filed this action in federal court on April 25, 2006. On October 6, 2006, seven

19  months after plaintiffs filed suit and over year after submitting their administrative appeal,

20  defendants denied the appeal.

21      On November 1, 2006, CENTCOM sent plaintiffs a heavily redacted Army Regulation 15-6

22  investigative report ("AR 15-6 Report") with associated Annexes A through J and L through M.

23  Apparently, the government had lost Annex K, a document classified as "SECRET." (See Decl. of

24  Maj. Gen. Ghormley, para. 12 fn. 1, Dkt. No. 18, "The 15-6 report is missing Annex K. MNF-I and

25  USCENTCOM have conducted diligent and reasonable searches for Annex K but have been unable

26  to locate it.") The report and annexes concern the U.S. military's investigation into the attack by

27  U.S. military personnel on the car carrying Ms. Sgrena. The letter accompanying the report and

28  annexes informed the plaintiffs that the defendants continue to withhold all other responsive

1  materials. Annex K was later found and provided. *No documents regarding Fallujah were*

2  *provided, even in redacted format.*

3      By letter dated November 7, 2006, CENTCOM sent plaintiffs supplemental responsive

4  documents from the annexes to the AR15-6 Report, which it had failed earlier to disclose.

5  Additionally, the letter informed plaintiffs that CENTCOM had located another eight pages of

6  documents that "fall under the purview of the Department of State (DOS)," and that those pages

7  were forwarded to DOS "for a direct response" to plaintiffs. These documents were the subject of

8  defendants' supplemental motion for summary judgment. (Dkt. Nos. 46, 60). In her Feb. 2012

9  Order, Judge Patel denied defendants' motion seeking to withhold these documents and ordered

10  defendants to release them in their entirety. Feb. 2012 Order at 23:18-21.

11      The parties filed cross motions for summary judgment in December 2006/January 2007, and

12  Judge Patel held a hearing on these motions on March 26, 2007. On October 2, 2007, she issued a

13  ruling on these motions, *Hiken v. DoD*, 521 F.Supp.2d 1047 (N.D. Cal. 2007) (Dkt. No. 53)

14  ("*Hiken*" or "2007 Order"), ordering defendants to segregate and release non-exempt materials and

15  produce information concerning certain names assigned to routes or units in the AR 15-6 report.

16  Judge Patel also ordered defendants to provide the Court with a supplemental declaration, a revised

17  *Vaughn* Index and the withheld documents for *in camera* review because defendants' declarations

18  and Index were inadequate; defendants had, incorrectly, expected Judge Patel to sanction their "just

19  trust us" approach and rule on FOIA exemptions with only the incomplete and misleading

20  information they had provided. Feb. 2012 Order at 21:1-2.

21      In response to the Court's 2007 Order, defendants produced a revised version of the AR 15-

22  6 Report with significantly fewer redactions and 117 pages of ROE-related documents which had

23  previously been withheld in their entirety. Defendants also filed further declarations and a revised

24  *Vaughn* Index, and submitted all documents to the Court for *in camera* review. Because Judge

25  Patel had insufficient information from the government to rule on whether or not the search was

26  sufficient, defendants also conducted an entirely new search, resulting in their finding many

27  additional documents.

28

1    Defendants' original *Vaughn* Index had identified only four ROE-related documents.

2    (*Vaughn* Index, Exhibit A to Ds' MSJ, Dkt. No. 18-1). The Court's 2007 Order criticized the

3    government's search that resulted in only these four documents, citing the "lack of specific search

4    terms," the "general nature of the description contained in the affidavit," and "evidence that the

5    results of the search failed to produce responsive documents." *Hiken*, 521 F.Supp.2d at 1054-55.

6    Defendants claimed they were unable to provide more information about the original search, so

7    instead of providing a declaration further explaining the original search, defendants executed an

8    entirely new search with plaintiffs' consent and the Court's permission. (Defendants' Renewed

9    Motion for Summary Judgment, Dkt. No. 66, at 1:21-23). Defendants located twelve additional

10   documents as a result of their new search. (Defendants' Revised *Vaughn* Index, Exhibit A to

11   Defendants' Renewed Motion for Summary Judgment, Dkt. No. 66-2).

12   Defendants had previously withheld the ROE-related documents in their entirety and

13   justified their failure to segregate and release these documents by falsely claiming that "[t]he only

14   non-exempt information that could be segregated would consist of lists of references or heading

15   titles such as 'General Guidance' or 'Definitions' that, if released, would be of no informational

16   value." (Declaration of Major General Timothy F. Ghormley, USMC, Exhibit 2 to Ds' MSJ, Dkt.

17   No. 18, at para. 7). However, when defendants subsequently released *117 pages* of ROE materials

18   in compliance with this Court's 2007 Order, the materials revealed much more than just heading

19   titles, such as information on information about limitations on the use of force, escalation of force

20   procedures, and other Rules of Engagement in effect during the war in Iraq.

21   Moreover, defendants additionally withheld essential facts the release of which would

22   undermine their untrue assertion that the AR 15-6 report was "leaked" onto their Web site and thus

23   not an official disclosure. (Defendants' Reply in Support of Their Motion for Summary Judgment

24   and Opposition to Plaintiffs' Cross-Motion for Summary Judgment, Dkt. No. 35, at 3-4; Ghormley

25   Supp. Decl., Dkt. No. 36, paras. 3-5). The Court held that it lacked sufficient evidence to determine

26   whether defendants' release of the AR 15-6 report was official and so ordered additional

27   information be provided. *Hiken*, 521 F.Supp.2d at 1057.

28

1    Because the Court was unable to rule on many of the pending issues and exemptions due to

2    defendants' abundant failures at providing an adequate *Vaughn* Index and declarations, a second

3    round of litigation was required. Beginning in December 2007, the parties litigated renewed cross-

4    motions for summary judgment. (Dkt. Nos. 66, 69).

5    On February 3, 2012, Judge Patel ruled on the motions that the parties had filed since her

6    2007 Order: the parties' renewed cross-motions for summary judgment and defendants'

7    supplemental motion for summary judgment regarding the documents they had referred to the

8    Department of State. (Dkt. Nos. 46, 60). Judge Patel, in her Feb. 2012 Order, denied defendants'

9    supplemental motion for summary judgment and ordered defendants to release all of the documents

10   that were the subject of the supplemental motion. Feb. 2012 Order at 23:18-21. The Court also

11   granted in part and denied in part both parties' renewed cross-motions for summary judgment,

12   requiring defendants to produce to plaintiffs within 60 days all documents ordered disclosed, *i.e.,*

13   by April 2, 2012. (Dkt. No. 94). On March 14, 2012, defendants produced to plaintiffs *the majority*

14   *of the information the Court had ordered disclosed*.

15   Judge Patel ruled against defendants on a host of issues. For example, although Judge Patel

16   had in 2007 ruled that defendants had met their burden for justifying non-disclosure under

17   Exemption 1, 2007 Order at 14:5-6, after she had seen the documents *in camera* she ruled that

18   Exemption 1 was not well taken in many instances. For example, as to the AR 15-6 report and

19   annexes, she held that "[c]ertainly there are facts, locations, procedures and other matters that do

20   not implicate military plans," etc. As to the ROE-related documents, she found that general

21   information – graduated force, deadly and non-deadly force and instructions regarding ensuring

22   familiarity with the ROE "is segregable and does not justify classification." Feb. 2012 Order at

23   13:3-4.

24   As to Exemption 2, Judge Patel found that Exemption 2 does not apply to the documents for

25   which it is asserted; Exemption 2, "consistent with the plain meaning of 'personnel rules and

26   practices' encompasses only records relating to issues of employee relations and human resources."

27   Feb. 2012 Order at 14:20-22. Although defendants were allowed to withhold Exemption 2

28

Plaintiffs' Motion for Attorney Fees Per 5 U.S.C.§552(a)(4)(E)

1  materials pursuant to Exemption 1, they released a substantial amount of material previously

2  withheld pursuant to Exemption 2.

3      Exemption 3 was asserted by defendants for documents 2c, 2d, 3, 4, 4b, and 5. Feb. 2012

4  Order at 15:9. As to Document 5, the AR 15-6 Report and its annexes, where defendants were

5  attempting to withhold diplomatic correspondence pursuant to Section 130b of Title 10, Exemption

6  3, withholding was denied. Feb. 2012 Order at 15:25-16:7. Exemption 3 withholding was granted

7  as to the other documents, except 4b, which defendants released in its entirety. Feb. 2012 Order at

8  15:18-19.

9      Regarding Exemption 5, defendants initially attempted to withhold significant information

10  in the AR 15-6 Report and Annexes pursuant to this exemption claiming the deliberate process

11  privilege, attorney-client privilege, etc. As to Exemption 5 withholdings, Judge Patel found that

12  defendants' document descriptions were insufficient and their explanations boilerplate, overly

13  simplistic and conclusory. Feb. 2012 Order at 17:25-27. *Defendants ultimately withheld only one*

14  *document pursuant to Exemption 5* – a letter from an attorney regarding the adequacy of the Sgrena

15  investigation. All other information previously withheld pursuant to Exemption 5 was released to

16  plaintiffs.

17      As to Exemption 6, defendants were able to withhold information such as certain names and

18  faces in photographs. Order on Defendants' Motion for Partial Reconsideration, at 9:3-4, (Dkt. No.

19  111) ("May 2012 Order"). Regardless, plaintiffs obtained important photographs of the Sgrena

20  investigation, which shed light on the manner in which it was conducted. Defendants also,

21  nevertheless, provided many, unredacted names.

22      Besides finding many of defendants' withholdings without merit, Judge Patel, notably, held

23  that in this litigation defendants "have been cavalier about their FOIA duties and have failed to

24  submit declarations and Vaughn Indices that measure up to established statutory and case law

25  principles." Feb. 2012 Order at 21:22-24. The Court also issued to defendants an Order to Show

26  Cause "why Documents 1-5 should not be fully released… on the grounds that circumstances

27

28

1  justifying non-disclosure have changed since classification of the documents … other than as to the

2  exclusions," permitted by the Court. Feb. 2012 Order at 24:10-14.**1**

3      However, defendants, preferring not to fully comply with the Court's 2012 Order, sought

4  and received a temporary stay. (Dkt. No. 105). The stay allowed them to withhold, until their

5  motion for partial reconsideration was decided, several names and faces in photographs from the

6  AR 15-6 report and some information they had previously withheld pursuant to Exemption 2

7  (which they lost) now pursuant to Exemption 1. Defendants sought clarification and partial

8  reconsideration of the Feb. 2012 Order on March 28, 2012. (Dkt. No.106).

9      On May 24, 2012 this Court granted defendants motion for clarification and partial

10  reconsideration. No ruling was ever issued on the briefing submitted in response to the Order to

11  Show Cause. (Dkt. Nos. 94, 96, 97). On June 6, 2012, the Court set the current briefing schedule

12  for the litigation of attorney fees. (Dkt. No. 114).

13

14                            **<u>ARGUMENT</u>**

15      To receive an award of attorney fees, a FOIA requester must show that s/he has

16  "substantially prevailed" in the litigation by securing documents responsive to his/her request. 5

17  U.S.C. § 552(a)(4)(E)(i);**2** *E.g. Long v. I.R.S.*, 932 F.2d 1309, 1313 (9th Cir. 1991) A plaintiff who

18  successfully shows that s/he has substantially prevailed is eligible for attorney fees. *Id*. The plaintiff

19  also, however, must show entitlement to fees, which the court determines by applying case law-

20  derived criteria. *Id*. Once the plaintiff has demonstrated eligibility and entitlement to fees, the final

21  step is for the court to determine whether the fees are reasonable. *Id*. at 1313-14 (9th Cir. 1991).

22      Not only have plaintiffs herein made the requisite showings for a fee award, as

23  demonstrated *infra*, but such an award would further the underlying purpose of the FOIA's attorney

24  fees provisions. "The touchstone of a court's discretionary decision under section 552(a)(4)(E)

25  must be whether an award of attorney fees is necessary to implement the FOIA. *A grudging*

26  _____

27      **1** On March 23, 2012 this case was reassigned from Judge Patel to Chief Judge Ware. (Dkt. No. 103).

28      **2** All statutory references are to Title 5 of the United States Code.

1  *application of this provision*, *which would dissuade those who have been denied information from*

2  *invoking their right to judicial review*, *would be clearly contrary to congressional intent.*" *Davy v.*

3  *C.I.A.*, 550 F.3d 1155, 1158 (D.C. Cir. 2008) ("*Davy*") (emphasis added). Based on plaintiffs'

4  showing here, this Court should grant their Motion for an award of attorney fees.

5

6  **I.   THE COURT SHOULD AWARD ATTORNEY FEES TO PLAINTIFFS**

7  **BECAUSE THEY SUBSTANTIALLY PREVAILED IN THE LITIGATION.**

8  **A.   Plaintiffs Substantially Prevailed Under *Buckhannon* for Attorney Fees**

9  **Earned Prior to December 31, 2007 Because They Obtained "Some**

10  **Relief" From The Court.**

11  Plaintiffs have prevailed and are eligible for an attorney fee award pursuant to *Buckhannon*

12  *Board & Care Home, Inc. v. W. Va. Dept. of Health and Human Res.*, 532 U.S. 598, 601, 610.

13  (2001) ("*Buckhannon*"). In *Buckhannon*, the Supreme Court expressly rejected the catalyst theory

14  of fee recovery. *Buckhannon*, 532 U.S. at 603. Congress restored the catalyst theory with the

15  enactment of the Openness Promotes Effectives in our National Government Act ("OPEN

16  Government Act")[3], which took effect on December 31, 2007. *E.g. Contreras v. U.S. Dept. of*

17  *Justice*, 729 F.Supp.2d 167, 170 (D.C. Cir 2010). The Ninth Circuit Court of Appeals has ruled that

18  the OPEN Government Act is not applicable retroactively. *Oregon Natural Desert Assn. v. Locke*,

19  572 F.3d 610, 616-18 (9th Cir. 2009). This litigation began in 2006 and continues to the present.

20  Thus, the Court should apply the *Buckhannon* analysis herein to Plaintiffs' attorney fees earned

21  prior to December 31, 2007 and find that Plaintiffs substantially prevailed, but it should apply the

22  present reading of § 552 (a)(4)(E) to all fees earned thereafter and make a similar finding.

23  The *Buckhannon* Court held that a party prevails for the purpose of obtaining a fee award

24  only when it "has been awarded some relief by [a] court." *Id*. at 603. The *Buckhannon* standard

25  applies in FOIA cases. *E.g. Davis v. Dept't of Justice*, 460 F.3d 92, 105 (D.C. Cir. 2006). Under

26

27  [3] By passage of the OPEN Government Act, the provisions in § 552 (a)(4)(E) "replaced" the *Buckhannon* analysis. *Wildlands CPR v. U.S. Forest Service*, 558 F.Supp.2d 1096, 1098 (D. Mont. 2008).

28

*Buckhannon*, courts apply a two-part test to determine whether a party has prevailed. Under this test, a plaintiff must establish that its federal court action (1) resulted in a "material alteration of the legal relationship of the parties" (2) that was 'judicially sanctioned,'" *Li v. Keisler*, 505 F.3d 913, 917 (9th Cir. 2007), i.e. the product of "a court-ordered 'change [in] the legal relationship between [the plaintiff] and the defendant.'" *Buckhannon*, 532 U.S. at 604-605 (alteration in the original).

In the present case, the Court's 2007 and February 2012 Orders materially altered the legal relationship between the parties – finding some redactions not well taken and requiring defendants to segregate and release documents previously withheld in their entirety – and constitutes the kind of judicial imprimatur envisioned by the *Buckhannon* Court. *See Preservation Coalition of Erie County v. Federal Transit Admin.*, 356 F.3d 444, 451 (2nd Cir. 2004) ("judgments on the merits" constitute an example of an appropriate judicial imprimatur). Specifically, the Court in 2007 ordered defendants, *inter alia*, to produce to plaintiffs all segregable portions of the documents relating to the Rules of Engagement ("ROE") as well as information concerning certain names assigned to particular routes or units in the AR 15-6 report. *Hiken*, 521 F.Supp.2d at 1060. Within a month of the 2007 Order, defendants released two compact disks with 117 pages of previously withheld documents related to the Rules of Engagement ("ROE").[4] Defendants had previously withheld the entirety of the ROE-related documents.

The Court's Feb. 2012 Order also compelled defendants to disclose an extensive array of previously withheld documents. For example, with respect to Exemption 1, the Court ordered defendants to release pages 1-4, paragraphs 3a and 3e and paragraphs 4a and 4b of Document 1 and Documents 2c, 2d, and 2e, except as the latter pertain to weapons systems or intelligence sources or methods. Feb. 2012 Order at 13:10-23.

With regard to Exemption 2, the Court found that Documents 1, 2a, 2b, 2c, 2d, 2e, 3, 3b, 3c, 3d, 4 and 5 were subject to release and not protected by that exemption. Feb. 2012 Order at 15:5-6. On defendants' motion for reconsideration, the Court allowed defendants to withhold pursuant to

---

[4] Plaintiffs have not filed materials stored on these disks as exhibits because defendants notified plaintiffs by letter dated October 31, 2007 that defendants also provided the materials to the Court.

1  Exemption 1 a small portion of those documents previously asserted as protected from disclosure

2  under Exemption 2, specifically twelve pages in documents 2a, 2b, 2d and 3d. May 2012 Order at 4

3  n.9, 6 n.15. Thus, with regard to the vast majority of the documents sought to protect under

4  Exemption 2, plaintiffs prevailed.

5        Exemption 3 was asserted by defendants for documents 2c, 2d, 3, 4, 4b, and 5. As to

6  Document 5, the AR 15-6 Report and its annexes, where defendants were attempting to withhold

7  diplomatic correspondence pursuant to Section 130b of Title 10, Exemption 3, withholding was

8  denied. Exemption 3 withholding was granted as to the other documents, except 4b which

9  defendants released in its entirety.

10        With regard to Document 5, defendants' assertion of Exemption 5 failed, and defendants

11  ultimately released pursuant to court order all Exemption 5 withholding from Document 5 except

12  one page, a letter from an attorney regarding the adequacy of the Sgrena investigation. Finally,

13  while the May 2012 Order, at 9:3-4, allowed defendants to further redact personally identifying

14  information and photographs, defendants, pursuant to the February 2012 Order, nonetheless

15  released photographs of the Sgrena investigation that shed light on the manner in which it was

16  conducted.

17        In sum, by requiring defendants to release to plaintiffs a substantial quantity of materials

18  responsive to plaintiffs' FOIA request as set forth above, the 2007 and February 2012 Orders

19  created a judicially sanctioned change in the relationship of the parties and "awarded some relief"

20  to plaintiffs. Thus, plaintiffs have substantially prevailed under *Buckhannon* and are eligible for an

21  award of attorney fees for work done prior to December 31, 2007. *Buckhannon*, 532 U.S. at 603-

22  606; *Contreras*, 729 F.Supp.2d at 170.

23

24        **B. Plaintiffs Substantially Prevailed Under the Current Reading of § 552**

25              **(a)(4)(E) for Attorney Fees Earned Subsequent to December 31, 2007**

26                    **Via Judicial Order.**

27        Under the current provisions of the FOIA, a party who has obtained relief through "(I) a

28  judicial order, an enforceable written agreement or consent decree; or (II) a voluntary or unilateral

15

1   change in position by the agency" has substantially prevailed. § 552 (a)(4)(E)(ii). "Accordingly,

2   under the current version of 5 U.S.C. § 552(a)(4)(E)(ii), Plaintiffs are eligible for an award of

3   attorneys' fees if (a) they have obtained a judicial order granting them relief, or (b) Defendant

4   voluntarily changed its position as a result of Plaintiffs' complaint." *Hart v. United States HHS*,

5   676 F.Supp.2d 846, 857 (D. Ariz. 2009).

6        In its 2007 and February 2012 Orders, the Court ordered that defendants make substantial

7   disclosures, as set forth supra in part I.A. Without question, it was only through litigation and the

8   Court's orders that the documents were disclosed to plaintiffs. Accordingly, plaintiffs' counsel are

9   also eligible for an award of attorney fees for the work they did subsequent to December 31, 2007

10  pursuant to § 552 (a)(4)(E)(ii).

11

12            **II.  PLAINTIFFS ARE ENTITLED TO ATTORNEY FEES.**

13       Once a court has determined that a party has substantially prevailed and is thus eligible for

14  attorney fees, it may, in its discretion, determine whether the party is "entitled" to such fees by

15  taking into account such factors as "(1) the benefit to the public, if any, deriving from the case; (2)

16  the commercial benefit to the complaint; (3) the nature of the complainant's interest in the

17  records sought; . . . (4) whether the government's withholding of the records sought had a

18  reasonable basis in law"; and "whatever [other] factors it deems relevant in determining whether an

19  award of attorney's fees is appropriate." *Church of Scientology of California v. U.S. Postal Service*

20  ("*Church of Scientology*"), 700 F.2d 486, 492 (9th Cir. 1983). (internal quotation marks omitted).

21       The first three factors "assist a court in distinguishing between requesters who seek

22  documents for public informational purposes and those who seek documents for private advantage.

23  The former engage in the kind of endeavor for which a public subsidy makes some sense, and they

24  typically need the fee incentive to pursue litigation; the latter cannot deserve a subsidy as they

25  benefit only themselves and typically need no incentive to litigate." *Davy*, 550 F.3d at 1160. Thus,

26  when a court evaluates entitlement to fees in a FOIA action, "a distinction is to be drawn between

27  the plaintiff who seeks to advance his private commercial interests . . . and a newsman who seeks

28  information to be used in a publication or the public interest group seeking information to further a

1   project benefiting the general public." *Id.* at 1158. As demonstrated below, plaintiffs herein fall

2   under the latter category, having sought the requested materials not for commercial benefit but for

3   the benefit of the public.

4

5          **A.  Disclosure of the Requested Documents "Furthers a Project Benefiting**

6              **the General Public."**

7          This Court has noted that the first factor, pertaining to the public benefit derived from the

8   case, "relates to the degree of dissemination and likely public impact from disclosure of the

9   requested information. . . . Types of requests that might justify fee awards include a request for

10  information to be used in a publication or a request by a public interest group for information that

11  furthers a project benefitting the general public." *American Small Business League v. U.S. Small*

12  *Business Admin. ("ASBL")*, 2009 WL 1011632 *3 (N.D. Cal. 2009) (citing *Church of Scientology*,

13  700 F.2d at 493 & 493 n.6). Further, "[t]he information need not be of public interest as long as

14  there is a public benefit from the fact of its disclosure." *O'Neill, Lysaght & Sun v. D.E.A.*, 951

15  F.Supp.1413, 1423 (C.D. Cal. 1996) (citing *Church of Scientology* 700 F.2d at 493).

16         Plaintiffs, Marguerite Hiken and the National Lawyers Guild's Military Law Task Force

17  ("MLTF"), a nonprofit organization, requested the information at issue in this litigation for the

18  purpose of preparing an article for publication in "On Watch," the newsletter of the MLTF. Exhibit

19  1 to Ds' MSJ, Dkt. No. 18. On Watch, published on and available free to all via the Internet,

20  informs the public regarding the activities of the U.S. military. *Id.*; Declaration of Marguerite

21  Hiken, June 12, 2012 ("Hiken Dec."), para. 4.

22

23         **B.  The Nature of Plaintiffs' Interest is Scholarly, Journalistic and in the**

24             **Public Interest.**

25         The second and third factors of the entitlement test "are often considered together." *Los*

26  *Angeles Gay & Lesbian Community Services Center v. IRS* ("*LAGLCSC*"), 559 F.Supp.2d 1055,

27  1060 (C.D. Cal. 2008); *accord*, *Church of Scientology*, 700 F.2d at 494 (courts have found it

28  "logical to read the two criteria together"). Specifically,

> [t]he second factor, commercial benefit to plaintiff, and the third factor, the nature of plaintiff's interest in the information sought, relate to whether the plaintiff requested information for a private commercial benefit only or whether the public interest benefited from the release of the requested information. . . . For example, a court might allow recovery of attorneys' fees for an indigent plaintiff or a non-profit public interest group, but not for a large corporate plaintiff.

*ASBL*, 2009 WL 1011632, at *3 (citing *Church of Scientology*, 700 F.2d at 493 n.6, 494); *see also O'Neill*, 951 F.Supp. at 1424 (fee award justified where requestor's interest is neither private nor personal). Additionally, "a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, [unless] ... his interest was of a frivolous or purely commercial nature," *Davy*, 550 F.3d at 1160-61 (quoting *Fenster v. Brown*, 617 F.2d 740, 742 n. 4 (D.C. Cir. 1979) (alteration in the original) (internal quotation marks omitted).

Here, plaintiffs enjoy no private or commercial benefit from disclosure of the materials the Court ordered disclosed. Hiken Dec., para. 4. The purpose of the article the MLTF seeks to publish based on the requested materials is to inform the public about important issues pertaining to the government's foreign policy decisions. FOIA request letter, Exhibit 1 to Ds' MSJ, Dkt. No. 18; Complaint, Dkt. No. 1, paras. 6-7. The MLTF's newsletter, On Watch, is made available online at no charge. Hiken Dec., para. 4. Thus, plaintiffs' interest in the information is scholarly, journalistic and public-interest oriented. It is not frivolous or of a commercial nature, and the requesters' interests is neither private nor personal. Hiken Dec., paras. 3-4. Accordingly, plaintiffs have satisfied both the second and third factors of the entitlement test.

## C.  There is No "Reasonable Basis" for Defendants' Withholding.

To satisfy the "reasonable basis in law" factor, the government must show that (1) "it had a reasonable basis in law for concluding that the information in issue was exempt" *and* (2) "it had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Fenster*, 616 F.2d at 744. The first factor "relates to whether the government agency's actions appeared to have a 'colorable basis in law' or instead appeared to be carried out 'to frustrate the requester.'" *ASBL*, 2009 WL 1011632, at *4. "The question is not whether [the requestor] has

1  affirmatively shown that the agency was unreasonable, but rather whether the agency has shown

2  that it had any colorable or reasonable basis for not disclosing the material until after [requestor]

3  filed suit." *Davy*, 550 F.3d at 1163. Even if the government's argument "is found on a colorable

4  basis in law," that does not foreclose fee recovery by plaintiff; rather, this fact "is merely weighed

5  along with the other factors." *Wheeler v. IRS*, 37 F.Supp.2d 407, 414 (W.D. Pa. 1998).

6        Regarding the second factor for determining whether the government has a reasonable basis

7  for withholding, courts take such a dim view of obdurate behavior that upon a plaintiff's showing

8  of such behavior, a court need not consider the first three fee-entitlement factors – public benefit,

9  commercial nature, and nature of complainant's interest. Recalcitrance and obduracy, according to

10  the *Wheeler* Court, can make the fee-entitlement factor pertaining to reasonable basis *dispositive* in

11  favor of a plaintiff "without consideration of any of the other factors." *Wheeler*, 37 F.Supp.2d at

12  414. For instance, "if [an agency] had engaged in dilatory tactics simply to avoid a disclosure

13  obligation, then its conduct might well qualify as 'recalcitrant' or 'obdurate' and hence

14  unreasonable." *Peter S. Herrick's Customs and Intern. Trade Newsletter v. U.S. Customs and*

15  *Border Protection*, 2006 WL 3060012, at \*10, 34 Media L. Rep. 2460 (D.D.C. 2006). In another

16  example, an agency's failure to respond to the plaintiff's request for twenty months following

17  plaintiff's final payment of copying costs "demonstrates recalcitrance and obduracy." *Read v.*

18  *F.A.A.*, 252 F.Supp.2d 1108, 1112 (W.D. Wash. 2003).

19        In *Wheeler*, the agency placed the plaintiff's FOIA request "on the back burner" until the

20  complaint was filed, then "located some files." *Wheeler*, 37 F.Supp.2d at 410, 414. After some

21  delay, an agency employee, on suggestion by counsel, searched through some previously

22  unexamined boxes of materials and found two responsive documents. *Id*. The agency attempted to

23  explain away the delay by citing a merger between two offices. *Id*. The court, however, did not

24  credit that explanation, finding that the agency's actions "indicate a lack of even a colorable basis

25  in law." *Id*.

26       //

27

28

**1.   Defendants' Dilatory Conduct Demonstrated "Recalcitrance"**
**and "Obduracy," Justifying an Order for Attorney Fees on This**
**Basis Alone.**

Defendants have demonstrated recalcitrance and obduracy throughout both the administrative and litigation phases of the within matter. For example, during the administrative phase, defendants waited nearly half a year to communicate their denial of plaintiffs' initial FOIA request, a gross violation of § 552 (a)(6)(A)(i). *See* Ps' MSJ at 12:11-16. Then, despite defendants' claims that they had placed plaintiffs' administrative appeal on the "front burner," defendants instead threw it on the back burner for *more than a year* before finally denying it in violation of § 552 (a)(6)(A)(ii). *Id*. at 12:16-13:1. Thus, defendants' dilatory behavior spanned approximately nineteen months – a very similar amount of time to the twenty months of delays found in *Read* to "demonstrate[] recalcitrance and obduracy." *Read*, 252 F.Sup.2d at 1112.

Defendants' dilatory behavior continued throughout the litigation. For example, defendants failed to segregate and release non-exempt ROE materials until this Court ordered them to do so in 2007. Even after that Order, rather than promptly segregate and release, defendants generated further delays by deluging the Court with a mobile cart filled with thousands pages of documents, many of them duplicative. Feb. 2012 Order at 12. Following the Court's *in camera* review, defendants demonstrated a continued failure to segregate and release, disrespecting the Court with their "just trust us" attitude, "not even giv[ing segregability] a nod in their reply." Feb. 2012 Order at 11-12, 20-21. Furthermore, defendants justified this failure by falsely claiming that "[t]he only non-exempt information that could be segregated would consist of lists of references or heading titles such as 'General Guidance' or 'Definitions' that, if released, would be of no informational value." Declaration of Major General Timothy F. Ghormley, USMC, Exhibit 2 to Ds' MSJ, Dkt. No. 18, at para. 7. However, when defendants subsequently released 117 pages of ROE materials upon this Court's Order, the materials revealed much more than just heading titles, such as information on information about limitations on the use of force, escalation of force procedures, and other Rules of Engagement in effect during the war in Iraq.

1    Defendants further prolonged the litigation by initially conducting an inadequate search.

2   Defendants' original *Vaughn* index identified only four ROE-related documents. *Vaughn* index,

3   Exhibit A to Ds' MSJ. The Court criticized the government's search that resulted in only these four

4   documents, citing the "lack of specific search terms," the "general nature of the description

5   contained in the affidavit," and "evidence that the results of the search failed to produce responsive

6   documents." *Hiken*, 521 F.Supp.2d at 1054-55. Defendants claimed they were unable to provide

7   more information about the original search, so instead of providing a declaration further explaining

8   the original search, defendants executed a new search with plaintiffs' consent and the Court's

9   permission. Defendants' Renewed Motion for Summary Judgment ("Ds' Renewed MSJ"), Dkt. No.

10   66, at 1:21-23. Defendants located twelve additional documents as a result of their new search.

11   Defendants' Revised *Vaughn* Index, Exhibit A to Defendants' Renewed Motion for Summary

12   Judgment, Dkt. No. 66-2. Nonetheless, even after defendants revised their *Vaughn* index, the

13   revised document failed to adequately describe the reasons for non-disclosure and specific harms,

14   lacked the requisite particularity and "repeat[ed] conclusory language and its repetition [became]

15   boilerplate." Feb. 2012 Order at 10. Defendants' continued failure to provide the Court with an

16   adequate *Vaughn* index prolonged the litigation and left both the Court and plaintiffs in the dark

17   regarding their legal justifications for withholding public documents.

18    Moreover, defendants additionally prolonged the litigation by withholding essential facts

19   the release of which would undermine their untrue assertion that the AR 15-6 report was "leaked"

20   onto their Web site and thus not an official disclosure. Defendants' Reply in Support of Their

21   Motion for Summary Judgment and Opposition to Plaintiffs' Cross-Motion for Summary

22   Judgment, Dkt. No. 35, at 3-4; Ghormley Supp. Decl., Dkt. No. 36, paras. 3-5. This imposed an

23   unwarranted delay in the litigation, evidenced by this Court's statement that it lacked sufficient

24   evidence to determine whether defendants' release of the AR 15-6 report was official. *Hiken*, 521

25   F.Supp.2d at 1057. In summary, defendants' willfully keeping the Court and plaintiffs in the dark

26   regarding their withholding justifications, ongoing failure to segregate and release documents that

27   do not fall within the FOIA exemptions and to provide something so basic as an adequate *Vaughn*

28   Index, and extreme delays in the administrative phase of this matter demonstrate recalcitrance and

1  obduracy, and this Court should find that plaintiffs are entitled to attorney fees based on this factor

2  alone. *Wheeler*, 37 F.Supp.2d at 414.

3

4                    **2.   Defendants' Actions Lacked a "Colorable Basis."**

5          Even if defendants' dilatory behavior is not seen as demonstrating the kind of recalcitrance

6  or obduracy found in *Wheeler* or *Read*, defendants had no colorable basis in law for withholding

7  the materials the Court ultimately ordered disclosed. *See ASBL*, 2009 WL 1011632, at *4. For

8  example, in *Wheeler*, the defendants' locating "some files," then later, *on suggestion of their own*

9  *counsel*, performing further searches and finding responsive documents, "indicate[d] a lack" of a

10 colorable basis in law. *Wheeler*, F.Supp.2d at 414.

11         Here, defendants initially searched some file cabinets and electronic files, but failed to meet

12 the basic search standards enunciated by the courts – despite having taken many months to respond

13 to plaintiffs' request. *See* Plaintiffs' Reply in Support of Their Motion for Summary Judgment and

14 Opposition to Defendants' Reply at 11:6-12:20; *Hiken*, 521 F.Supp.2d at 1054. Consequently, this

15 Court, citing "[t]he lack of specific search terms and the general nature of the description contained

16 in the affidavit in combination with evidence that the results of the search failed to produce

17 responsive documents," found it necessary to conduct *in camera* review to determine the adequacy

18 of defendants' search for responsive information. *Hiken*, 521 F.Supp.2d at 1054-55.

19         Here, as in *Wheeler*, defendants' lengthy delays and failure to perform an adequate search

20 "appeared to be carried out 'to frustrate the requester.'" *ASBL*, 2009 WL 1011632, at *4. Moreover,

21 as this Court found, defendants lacked a colorable basis in law to not segregate and release

22 information contained in the documents listed in their initial *Vaughn* index – or in their revised

23 *Vaughn* index, *Hiken*, 521 F.Supp.2d at 1060; Feb. 2012 Order at 10. Under these circumstances,

24 the Court should find that defendants lacked a colorable basis for their withholding and that

25 plaintiffs are therefore entitled to attorney fees in this matter.

26

27

28

1
2

## III.   THE COURT SHOULD ORDER DEFENDANTS TO PAY PLAINTIFFS THE LODESTAR AMOUNT.

3        Where, as here, a plaintiff has demonstrated eligibility for and entitlement to attorney fees,

4   courts scrutinize the attorneys' billing statements for "reasonableness of (a) the number of hours

5   expended and (b) the hourly fee claimed. If these two figures are reasonable, then there is a *strong*

6   *presumption* that their product, the lodestar figure, represents a reasonable award." *LAGLCSC*, 559

7   F.Supp.2d at 1060 (quoting *Long v. IRS*, 932 F.2d at 1313-14) (emphasis added) (internal quotation

8   marks omitted); *accord*, *ASBL*, 2009 WL 1011632, at *4 ("if the submitted number of hours and

9   the hourly rate are reasonable, then there is a 'strong presumption' that their product is a reasonable

10  award").  Generally, "an attorney's usual billing rate is presumptively the reasonable rate, provided

11  that this rate is in line with those prevailing in the community for similar services by lawyers of

12  reasonably comparable skill, experience and reputation." *Miller v. Holzmann*, 575 F.Supp.2d 2, 11

13  (D.D.C. 2008) (internal quotation marks omitted).

14       In addition, a court may authorize "an upward or downward[5] adjustment from the lodestar

15  figure if certain factors relating to the nature and difficulty of the case overcome this strong

16  presumption and indicate that such an adjustment is necessary." *LAGLCSC*, 559 F.Supp.2d 1055,

17  1060. This Court, for example, adjusted a lodestar figure upward by applying a multiplier of 1.5

18  where the attorney worked *pro bono* for his client, and the attorney's work was "at a higher level of

19  competence than that of attorneys with similar experience." *Powell v. U.S. Dept. of Justice,* 569

20  F.Supp.1192, 1204 (N.D. Cal. 1983).

21

22

23

### A.  The Court should Defer to Counsel's Professional Judgment in Determining Whether the Number of Hours Billed Is Reasonable.

24       The Ninth Circuit Court of Appeals has sought to discourage trial court judges from cutting

25  back excessively on requested attorney fees in civil right cases, observing "that lawyers are not

26  _____

27       [5] Worth noting is that a Ninth Circuit court appears to have limited a court's authority to
28  adjust downward from the lodestar figure. *See Long v. IRS*, 932 F.2d at 1316.

likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Thus, the court continued, a trial court "*should defer to the winning lawyer's professional judgment* as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id*. (emphasis added).

Some duplication of effort is necessary and "is inherent in the process of litigating over time." *Moreno*, 534 F.3d at 1112.

> When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed.

*Id*. Thus, acknowledging that at least some apparent duplication of effort is necessary to the performance of competent legal representation, even where a court suspects unnecessary duplication, it can impose a "haircut," or reduction, of *no more than 10 percent*. *Id*. (rejecting a court's 25 percent attorney fee reduction based on duplication of effort). Here, to account for any duplication that may have gone beyond that which was absolutely necessary, Plaintiffs' attorneys have already calculated in the within request for attorney fees a 10 percent "haircut." *See* Flynn Dec., para 28.

In addition to offering up front to take a 10 percent "haircut" on their total fees, plaintiffs' attorneys' have been reasonable in their work allocation in this case, as shown in their billing records, particularly in light of defendants' litigation tactics. The Court should bear in mind that it found many of defendants' withholdings without merit and held that in this litigation defendants "*have been cavalier about their FOIA duties* and have failed to submit declarations and Vaughn Indices that measure up to established statutory and case law principles." Feb. 2012 Order at 21:22-24 (emphasis added). Specifically, defendants submitted "boilerplate," "conclusory" and repetitive assertions in their Vaughn indices regarding classification and segregation, in some instances merely "parrot[ing]" classification language and compelling the Court to "ponder the

imponderable." *Hiken*, 521 F.Supp.2d at 1055; Feb. 2012 Order at 10:9-10 , 10:27-11:5, 23:5-10. Against this backdrop, the Court was required to repeatedly seek further information from defendants – or corrections to their false and misleading statements and assertions –so that it could make final decisions on releasability of the requested materials, necessitating delays and ongoing litigation.

### B. The Court Should Apply Plaintiffs' Attorneys' Current Billing Rates in Light of Their Having Worked on This Matter for More Than Six Years Without Compensation.

Moreover, this Court has noted that it may consider the delay in payment in arriving at a reasonable hourly billing rate for the plaintiffs' attorneys "by either applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement." *Jones v. Metro Life Ins. Co*., No. C 08-03971, 2012 U.S. District LEXIS 33817, at *15 (N.D. Cal, Feb. 24, 2012) (quoting *Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 947 (9th Cir. 2007)). Plaintiffs urge the Court to recognize that their attorneys have expended hundreds of hours in attorney time through six long years of litigation without any compensation and to apply the attorneys' current rates.

The attorneys for plaintiffs herein support their lodestar billing rates by showing their rates in similar cases; what they command in the marketplace; actual billing practices during the course of the litigation; and recent fees awarded, based on actual evidence of prevailing rates, to attorneys of comparable reputation and experience performing similar work. *See generally National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325-28 (D.C. Cir. 1982) ("*Veterans*"); Declaration of Colleen Flynn ("Flynn Dec."); Declaration of Chris Ford ("Ford Dec"); Declaration of Gordon Kaupp ("Kaupp Dec."); Declaration of Kenneth Kreuscher ("Kreuscher Dec."); Declaration of Carol Sobel ("Sobel Dec."); Declaration of Thomas Burke ("Burke Dec."). Plaintiffs' counsel, for example, maintained contemporaneous, complete and standard time records that accurately reflect the work performed by each attorney. *Veterans*, 675 F.2d at 1327. Flynn Dec., para. 27; Ford Dec., para. 10; Kaupp Dec., para. 14; Kreuscher Dec., para. 14. Further,

1  lead counsel Colleen Flynn demonstrates that her reasonable market billing rate is $475 per hour.

2  Flynn Dec., para. 24. Co-counsel W. Gordon Kaupp, Chris Ford and Kenneth Kreuscher

3  demonstrate that their reasonable market billing rates are $500 per hour, $450 per hour, and $425

4  per hour, respectively. Flynn Dec., para. 29; Ford Dec., para. 9; Kaupp Dec., para. 11.; Kreuscher

5  Dec., para 13; *see* Sobel Dec., para. 9. Plaintiffs have prepared a table showing each of their

6  attorneys' hours worked in the first phase of this litigation and in preparing the within motion, their

7  reasonable billing rate, and their presumptively reasonable lodestar figures. *ASBL*, 2009 WL

8  1011632, at *4; Flynn Dec., para. 29.

9       The total of fees and costs owed plaintiffs is $381,633.99. *Id*. The Court should award

10  plaintiffs the total amount of attorney fees sought herein.

11

12       **IV.    CONCLUSION**

13       Based on the foregoing, the Court should issue an order that defendants pay plaintiffs'

14  attorney fees and costs as set forth herein.

15

16  DATED: June 14, 2012                    Respectfully submitted,

17

18

19                                   BY:_____/s/ Chris Ford_____
                                         COLLEEN FLYNN
20                                       CHRIS FORD
                                         W. GORDON KAUPP
21                                       Attorneys for Plaintiffs

22

23

24

25

26

27

28