STUART F. DELERY
Acting Assistant Attorney General

MELINDA HAAG
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director

TIMOTHY A. JOHNSON
D.C. Bar No. 986295
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-1359
Facsimile: (202) 616-8470
E-mail: timothy.johnson4@usdoj.gov

*Attorneys for Defendants*
*Department of Defense*
*and U.S. Central Command*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| MARGUERITE HIKEN and THE MILITARY LAW TASK FORCE,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF DEFENSE and UNITED STATES CENTRAL COMMAND,<br><br>Defendants. | Case Number: C 06-02812 (JW)<br><br>**OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR ATTORNEY FEES**<br><br>Hearing Date: July 9, 2012<br>Hearing Time: 9:00 a.m. |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ......................................................................................................... 2

STATEMENT OF ISSUES ........................................................................................... 2

STATEMENT OF FACTS ............................................................................................ 2

ARGUMENT ................................................................................................................ 3

    I.    Plaintiffs Are Not Entitled to Fees Because Defendants Had a Reasonable Basis for Their Withholdings and Plaintiffs' Fee Request Is Grossly Unreasonable. ........................................ 4

        A.    Defendants' Positions Had a Reasonable Basis in Law. ................................. 5

        B.    Plaintiffs' Grossly Unreasonable Fee Request Weighs Strongly against Any Award. 9

    II.    Plaintiffs' Fee Request Is Unreasonable Because It Includes Hundreds of Hours Billed on Unsuccessful Filings and Claims. ....................................................................... 10

        A.    Plaintiffs' Attorneys' Hours for 2006 to April 28, 2008 Must Be Greatly Reduced to Account for Their Limited Success. .................................................. 12

        B.    Plaintiffs Cannot Seek Fees for Time Billed After April 28, 2008. ............................. 16

    III.    Plaintiffs' Attorneys Bill for a Grossly Unreasonable Number of Hours. .................... 17

        A.    Plaintiffs Overstaffed the Case, Leading to Unnecessary Duplication of Work. ........ 18

        B.    Plaintiffs' Attorneys Bill for Large Amounts of Other Unnecessary Work. .............. 20

    IV.    The Hourly Rates Requested for Plaintiffs' Attorneys Are Unsupported by Any Evidence and Are More than Twice Reasonable Rates. .................................................. 22

        A.    Plaintiffs Have Failed to Provide Reliable Evidence of Hourly Rates. ...................... 23

        B.    A Reasonable Hourly Rate for Plaintiffs' Attorneys Would Be $200. ..................... 25

    V.    If the Court Awards a Fee Award, a Reasonable Award Would Be $19,640. ............... 30

CONCLUSION............................................................................................................ 31

1

## **TABLE OF AUTHORITIES**

2

### **CASES**

3

4     *Action on Smoking & Health v. Civil Aeronautics Bd.*,
         724 F.2d 211 (D.C. Cir. 1984) ...................................................................................21
5
6     *Adde v. United States*,
         98 Fed. Cl. 517 (Fed. Cl. 2011) ...............................................................................14
7
8     *Barjon v. Dalton*,
         132 F.3d 496 (9th Cir. 1997) .....................................................................................22
9
10    *Barnard v. Dep't of Homeland Sec.*,
         656 F. Supp. 2d 91 (D.D.C. 2009) ..........................................................................5, 9
11
12    *Brown v. Stackler*,
         612 F.2d 1057 (7th Cir. 1980) ....................................................................................9
13
      *Camacho v. Bridgeport Fin., Inc.*,
14       523 F.3d 973 (9th Cir. 2009) ................................................................................23, 24
15
      *Campbell v. Nat'l Passenger R.R. Corp.*,
16       718 F. Supp. 2d 1093 (N.D. Cal. 2010) ...................................................................29
17
      *Chalmers v. City of Los Angeles*,
18       796 F.2d 1205 (9th Cir. 1986) ..............................................................................17, 18
19
      *Chem. Mfrs. Ass'n v. EPA*,
20       885 F.2d 1276 (5th Cir. 1989) ..................................................................................14
21
      *Chesapeake Bay Found. v. U.S. Dep't of Agric.*,
22       11 F.3d 211 (D.C. Cir. 1993) .................................................................................5, 7
23
      *Church of Scientology of Cal. v. U.S. Postal Serv.*,
24       700 F.2d 486 (9th Cir. 1983) ......................................................................................5
25
      *Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*,
26       825 F. Supp. 2d 226 (D.D.C. 2011) ..........................................................................17
27
      *Comm'r, I.N.S. v. Jean*,
28       496 U.S. 154 (1990)....................................................................................................17

      *Democratic Party of Wash. State v. Reed*,
         388 F.3d 1281 (9th Cir. 2004). ..................................................................................18

ii

*Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*,
   No. C 07-05278, 2008 WL 2331959 (N.D. Cal. June 4, 2008) ........................................20, 21

*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*,
   811 F. Supp. 2d 216 (D.D.C. 2011) ...............................................................................20, 24

*Fair Housing Council of San Diego v. Peñasquitos Casablanca Owner's Ass'n*,
   523 F. Supp. 2d 1164 (S.D. Cal. 2007 ...................................................................................22

*Farrar v. Hobby*,
   506 U.S. 103 (1992)...............................................................................................................10

*Farris v. Cox*,
   508 F. Supp. 222 (N.D. Cal. 1981) ..........................................................................................9

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992) ...............................................................................................11

*Gudenkauf v. Stauffer Commc'ns, Inc.*,
   953 F. Supp. 1237 (D. Kan. 1997)..........................................................................................18

*Hahnemann Univ. Hosp. v. All Shore, Inc.*,
   514 F.3d 300 (3d Cir. 2008).............................................................................................21-22

*Harper v. Lugbauer, No. C 11-01306*,
   2012 WL 1499174 (N.D. Cal. Apr. 9, 2012) ...........................................................25-26, 28

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)............................................................................................... *passim*

*Hersh & Hersh v. U.S. Dep't of Health & Human Servs.*,
   No. C 06-4234, 2008 WL 2725497 (N.D. Cal. July 10, 2008)..................................................4

*LaPrade v. Kidder Peabody & Co.*,
   146 F.3d 899 (D.C. Cir. 1998) .................................................................................................9

*Library of Congress v. Shaw*,
   478 U.S. 310 (1986)................................................................................................................24

*Long v. IRS*,
   932 F.2d 1309 (9th Cir. 1991) ...........................................................................................4, 5

*Los Angeles Gay & Lesbian Cmty. Servs. Ctr. v. IRS*,
   559 F. Supp. 2d 1055 (C.D. Cal. 2008) ..................................................................................19

iii

*Marbled Murrelet v. Pac. Lumber Co.*,
   163 F.R.D. 308 (N.D. Cal. 1995) .................................................................22

*McCown v. City of Fontana*,
   565 F.3d 1097 (9th Cir. 2009) ....................................................................14

*Mendez v. Cnty. of San Bernardino*,
   540 F.3d 1109 (9th Cir. 2008) ....................................................................10

*Muniz v. United Parcel Serv., Inc.*,
   No. C 09-01987, 2011 WL 3740808 (N.D. Cal. Aug. 23, 2011).........................9, 29

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*,
   675 F.2d 1319 (D.C. Cir. 1982) ...................................................................25

*Nat'l Sec. Archive v. Dep't of Defense*,
   530 F. Supp. 2d 198 (D.D.C. 2008) ..............................................................13

*Navarro v. General Nutrition Corp.*,
   No. C 03-0603, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005) ...........................28

*Pande v. ChevronTexaco Corp.*,
   No. C-04-05107, 2008 WL 906507 ...............................................................28

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*,
   No. Civ.A. 03-195, 2006 WL 508332 ...........................................................7, 8

*Petrone v. Sec'y of Health & Human Servs.*,
   936 F.2d 428 (9th Cir. 1991) ......................................................................13

*Piper v. Dep't of Justice*,
   339 F. Supp. 2d 13 (D.D.C. 2004).............................................................11, 14

*In re Portal Software Inc. Sec. Litig.*,
   No. C-03-5138, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ........................27-28

*Prison Legal News v. Exec. Office for U.S. Attorneys*,
   No. 08-cv-01055, 2010 WL 3170824 (D. Colo. Aug. 10, 2010)..........................7-8

*Prison Legal News v. Schwarzenegger*,
   608 F.3d 446 (9th Cir. 2010) ................................................................27, 29

*Read v. FAA*,
   252 F. Supp. 2d at 1112 ..........................................................................7, 14

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

*Reynolds v. Goord*,
    No. 98 Civ. 6722, 2001 WL 118564 (S.D.N.Y. Feb. 13, 2001) ............................................21

*Schwarz v. Sec'y of Health & Human Servs.*,
    73 F.3d 895 (9th Cir. 1995) ...........................................................................................11, 13, 17

*Sial v. Prof'l Collection Consultants*,
    No. CV 07-7868, 2008 WL 2415037 (C.D. Cal. June 12, 2008) ........................................20

*Simon v. United States*,
    587 F. Supp. 1029 (D.D.C. 1984) .........................................................................................8

*Sorenson v. Mink*,
    239 F.3d 1140 (9th Cir. 2001) ..............................................................................................25

*Tax Analysts v. U.S. Dep't of Justice*,
    965 F.2d 1092 (D.C. Cir. 1992) ............................................................................................7

*Theme Promotions v. News Am. Marketing FSI, Inc.*,
    731 F. Supp. 2d 937 (N.D. Cal. 2010) ............................................................................26, 27

*Ulin v. ALEA-72, Inc.*,
    No. 09-3160, 2011 WL 4974282 (N.D. Cal. Oct. 19, 2011) ................................................27

*Weisberg v. Dep't of Justice*,
    745 F.2d 1476 (D.C. Cir. 1984) ...........................................................................................11

*Weisberg v. Dep't of Justice*,
    848 F.2d 1265 (D.C. Cir. 1988) ...........................................................................................24

*Welch v. Metro Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) ...........................................................................................23, 26

*Willis v. City of Oakland*,
    231 F.R.D. 597 (N.D. Cal. 2005) .........................................................................................26

*Winterstein v. Stryker Corp. Grp. Life Ins. Plan*,
    No. C 02-05746, 2006 WL 1889901 (N.D. Cal. July 10, 2006) ..........................................26

*Yahoo!, Inc. v. Net Games, Inc.*,
    329 F. Supp. 2d 1179 (N.D. Cal. 2004) ...............................................................................26

v

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

**STATUTES**

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006) ............................................2, 4, 10

42 U.S.C. § 1988.................................................................................................................10

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

Plaintiffs' Renewed Motion for Attorney Fees, Dkt. No. 115, should be denied.  Although Plaintiffs prevailed on a small number of issues in this case, Defendants' positions all had a reasonable basis, and the amount of fees requested by Plaintiffs ($381,633.99) is excessive – almost twenty times the amount of fees Plaintiffs could reasonably request.  Plaintiffs seek hundreds of thousands of dollars in fees for briefing motions and issues on which they lost. Their attorneys have overbilled, often by billing for several attorneys to complete the same straight-forward task.  And Plaintiffs' attorneys, most of whom were in their first years of practice when the relevant tasks were performed, billed at highly inflated rates – roughly $ 250 an hour more than they could reasonably have commanded when the work was performed. Given the reasonableness of Defendants' positions throughout this litigation, the limited extent to which Plaintiffs prevailed in this case, and Plaintiffs' extremely inflated fee request, the Court should deny Plaintiffs' Renewed Motion for Attorney Fees in its entirety.  If the Court instead decides to award fees to Plaintiffs, it should award no more than $19,640, an amount that more accurately reflects Plaintiffs' degree of success, the number of hours reasonably necessary to litigate this case, and a reasonable hourly fee.

# STATEMENT OF ISSUES

1.  Whether the Court should deny Plaintiffs' fee request entirely, given the reasonable basis for Defendants' positions and the grossly unreasonable amount of fees requested by Plaintiffs.

2.  Whether Plaintiffs' fee request fails to reflect their limited success.

3.  Whether the number of hours billed by Plaintiffs' attorneys is excessive.

4.  Whether the hourly rates requested by Plaintiffs are excessive.

# STATEMENT OF FACTS

Plaintiffs Marguerite Hiken and the Military Law Task Force ("Plaintiffs") filed a complaint under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), in 2006 seeking the disclosure of certain documents relating to the death of Nicola Calipari in Iraq.  In

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

2007, the Court issued an order upholding the legitimacy of many of Defendants' withholdings. *See* Mem. and Order ("2007 Order"), Dkt. No. 53, filed Oct. 2, 2007, at 12-15, 21-22. The Court, however, denied summary judgment to both parties and requested additional information from Defendants. *See id* at 22. Both parties filed renewed motions for summary judgment, concluding with a hearing on April 28, 2008. *See* Dkt. Nos. 78, 79. On February 2, 2012, almost four years after the parties last addressed the issues at stake, the Court issued an order that, among other things, authorized Defendants to continue withholding some information under Exemptions 1, 3, 5, and 6, but also required Defendants to show cause why their withholdings of classified operating procedures under Exemption 1 were still justified given the end of the Iraq War, and ordered Defendants to disclose all information withheld under Exemption 2 as well as names and several photographs withheld under Exemption 6. *See* Mem. and Order ("February 2012 Order"), Dkt. No. 94, filed Feb. 3, 2012, at 13, 15, 19-20, 24.

In response to the February 2012 Order and the passage of four years, Defendants conducted a new review of their withholdings and disclosed information that no longer needed to be withheld. Defs.' Response to Show Cause Order, Dkt. No. 96, filed Feb. 27, 2012, Ex. 1, Declaration of Major General Karl R. Horst (Feb. 26, 2012) ("Horst Decl.") ¶ 4. Defendants also sought reconsideration of certain aspects of the February 2012 Order. *See* Dkt. No. 106, filed Mar. 28, 2012. Defendants sought to reclassify certain information previously withheld under Exemption 2 and withhold it under Exemption 1. *Id.* Defendants also requested that they be allowed to continue withholding names, most photographs, and other personally identifying information under Exemption 6. *Id.* The Court granted these requests for reconsideration, and directed Plaintiffs to file any motion for fees. Order ("May 2012 Order"), Dkt. No. 111, filed May 24, 2012.

## ARGUMENT

Plaintiffs are not entitled to fees. Defendants prevailed on the majority of issues in dispute and had a reasonable basis for all of their withholdings. Plaintiffs, in contrast, seek a grossly unreasonable amount of fees, itself adequate reason to deny them any fee award.

3

Plaintiffs request hundreds of thousands of dollars of fees for claims and issues on which they lost.  They used four attorneys when one or two would do and thereby billed a plainly excessive number of hours for simple tasks.  They also seek to charge hourly rates twice what their attorneys could have reasonably charged when the work at issue was performed.  Thus, their fee request should be denied.

## I.   Plaintiffs Are Not Entitled to Fees Because Defendants Had a Reasonable Basis for Their Withholdings and Plaintiffs' Fee Request Is Grossly Unreasonable.

"In order to receive an award of fees, a prevailing party in a FOIA action must demonstrate both e*ligibility* for and *entitlement* to such a recovery."  *Long v. IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991) (emphasis in original).  Defendants do not dispute that Plaintiffs are eligible for attorney fees under FOIA.  Although Plaintiffs exaggerate the extent to which the Court ruled in their favor, the Court did order the disclosure of several documents and portions of documents, which arguably constitutes "relief through . . . a judicial order" sufficient to make Plaintiffs eligible for attorneys' fees under Title 5, Section 552(a)(4)(E).  *But see Hersh & Hersh v. U.S. Dep't of Health & Human Servs.*, No. C 06-4234, 2008 WL 2725497, at *2 (N.D. Cal. July 10, 2008) (holding a plaintiff was ineligible for fees where, though the Court's order had led the disclosure of 18 pages of documents, "the nature and quality of the information that plaintiff received . . . is itself insubstantial particularly when compared to the type of information that was generally sought by the plaintiff.").

Plaintiffs, however, are not entitled to attorneys' fees, both because Defendants' positions had a reasonable basis in law and because Plaintiffs' fee request is grossly unreasonable.  That a FOIA plaintiff is eligible for fees does not make that plaintiff entitled to fees.  *Long*, 932 F.2d at 1313.  The award of FOIA attorney fees is an act of discretion.  *Id*.  In deciding whether a FOIA

4

plaintiff is entitled to fees, a court must consider "(1) [t]he public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting from disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and (4) whether the government's withholding of the records had a reasonable basis in law." *Id*. The court may also consider whatever other factors it deems relevant, *id*., including the reasonableness of the plaintiff's fee request. *Barnard v. Dep't of Homeland Sec.*, 656 F. Supp. 2d 91, 100 (D.D.C. 2009).

### A. Defendants' Positions Had a Reasonable Basis in Law.

Here, the fourth factor – whether Defendants had a reasonable basis for its withholdings – weighs strongly against a fee award. This factor weighs in the government's favor if its withholdings of the documents at issue had a "colorable basis in law." *Chesapeake Bay Found. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993); *see also Church of Scientology of Cal. v. U.S. Postal Serv*., 700 F.2d 486, 492 n.6 (9th Cir. 1983). Where the government's basis for withholding is actually correct, this factor is dispositive: the plaintiff is not entitled to fees. *Chesapeake Bay Found.*, 11 F.3d at 216. On the other hand, "[i]f the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." *Id*.

Defendants prevailed on the vast majority of their withholdings. In its 2007 Order, the Court found that Defendants had adequately justified their withholdings under Exemptions 1, 3, and 6. *See* 2007 Order at 14, 17-19, 22. The Court, though requesting additional information, upheld all of Defendants' Exemption 2 withholdings except for certain publicly available names, trivial administrative information, and segregable heading titles and reference lists – all information, the Court acknowledged, of apparently minimal value. *Id*. at 15-17. The Court also

5

upheld some of Defendants Exemption 5 withholdings but determined that more information was needed to rule on other withholdings.  *Id*. at 19-20.

Additionally, Defendants largely prevailed in the February 2012 Order, as amended by the May 2012 Order.  Although, given the end of the Iraq War, the Court required Defendants to explain why their Exemption 1 withholdings were still necessary and ordered the disclosure of a few pages that the Court concluded no longer needed to be protected,[1] the Court nonetheless accepted Defendants justifications and allowed the continued withholding of the vast majority of Exemption 1 information.  *See* Feb. 2012 Order at 12-13; May 2012 Order at 6.  The Court rejected Defendants' Exemption 2 withholdings but only because of intervening Supreme Court precedent, and the Court then allowed Defendants to reclassify and withhold much of this information under Exemption 1.  Feb. 2012 Order at 13-15; May 2012 Order at 6.  The Court upheld Defendants' Exemption 3 withholdings, except for certain portions of a single page, which the Court concluded were segregable from the protected information.  Feb. 2012 Order at 15.  Although the Court concluded that Defendants' description of their Exemption 5 withholdings was inadequate, it nonetheless allowed certain withholdings.  *Id*. at 18.  And the February 2012 Order, as amended by the May 2012 Order, upheld most of the Defendants' Exemption 6 withholdings – the sole exception being several pictures of the scene of the accident that previously had been redacted.  *Id*. at 19-20; May 2012 Order at 8-9.  Accordingly, "[b]ecause [the government] prevailed on the majority of its claims, its overall position was

---

[1]  The Court also ordered the disclosure of a few pages of communications between the United States and Italy, which the Court concluded were not properly protected despite a declarant's statement that these communications were confidential and that their release would harm U.S.-Italian relations.  Feb. 2012 Order at 22.

6

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

reasonable." *People for the Ethical Treatment of Animals ("PETA") v. U.S. Dep't of Agric.*, No. Civ.A. 03-195, 2006 WL 508332, at *5.

Moreover, Defendants had reasonable bases for those few withholdings that were not upheld, as explained at length in their prior pleadings. First, Defendants had a reasonable basis for withholding any information that the Court earlier ruled was validly withheld, even if the passage of time (as with some Exemption 1 withholdings) or changes in the interpretation of the law (as with Exemption 2) caused the Court to later rule that the information should be disclosed or the government to decide to voluntarily release it. *Cf. Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1096-97 (D.C. Cir. 1992) (concluding that district court's ruling for government suggested that its withholdings had a reasonable basis, even where that decision was later overruled). Second, that the government did not initially describe its withholdings to a court's satisfaction does not indicate that those withholdings lacked a reasonable basis in law. *PETA*, 2006 WL 508332, at *6 (holding that the government had a reasonable basis for its unsuccessful withholdings, despite its failure to sufficiently describe those documents in its *Vaughn* index).

Third, absent bad faith, a delay in the disclosure of documents does not undermine the reasonableness of the government's position, especially where the government had a colorable basis for withholding the information it eventually produced. *See Chesapeake Bay Found.*, 11 F.3d at 216 (holding that, if information disclosed after initial resistance was actually exempt from disclosure under FOIA, no fees would be recoverable); *Read v. FAA*, 252 F. Supp. 2d at 1112 ("[D]elay due to bureaucratic ineptitude alone is not sufficient to weigh in favor of an ward of attorney's fees."). And, fourth, when the government withholds a document in its entirety and that withholding has a reasonable basis, the existence of some segregable information in the document does not mean that the government acted unreasonably. *See Prison Legal News v.*

7

*Exec. Office for U.S. Attorneys*, No. 08-cv-01055, 2010 WL 3170824, at *3 (D. Colo. Aug. 10, 2010) ("Although the Executive Office could have voluntarily disclosed [non-exempt] portions of the video . . . , the fact that it did not do so does not necessarily lead to a conclusion that its refusal to disclose was not reasonably based in law.").

Finally, contrary to Plaintiffs' claims, Pls. Renewed Fee Mot. at 20-21, Defendants never engaged in any "recalcitrant" or "obdurate" behavior that would suggest that its actions did not have a reasonable basis.  The Court has consistently rejected similar claims by Plaintiffs throughout this litigation.  *See* 2007 Order at 10-11 ("[M]any of these assertions [of improper conduct] have been rebutted by the defendants and others are mischaracterizations of the facts. Therefore, the courts sees no such tangible evidence of bad faith."); Feb. 2012 Order at 21 ("[T]he court does not find that defendants have acted in bad faith.").  At most, the Court once suggested that Defendants "may have been cavalier about their FOIA duties" by failing to provide adequate information about its withholdings, *id.*, but such a suggestion hardly equates to a finding of recalcitrance.  Mistakes are not subterfuge, and thus are not evidence of recalcitrant or obdurate conduct.  *PETA*, 2006 WL 508332, at *6 (holding that the government had reasonable basis for its unsuccessful exemptions, despite "errors in legal judgment and perhaps blunder[s]"); *Simon v. United States*, 587 F. Supp. 1029, 1032 (D.D.C. 1984) ("[T]he court declines to impose a fee award to sanction sluggish agency response.").

Thus, given that Defendants' withholdings were largely upheld by the Court, had a colorable basis, and were not motivated by bad faith, Plaintiffs are not entitled to a fee award.

8

**B.  *Plaintiffs' Grossly Unreasonable Fee Request Weighs Strongly against Any Award.***

When a plaintiff submits an inflated fee request in a FOIA case, the Court has discretion to deny a fee award entirely for this reason alone.  *Barnard*, 656 F. Supp. 2d at 100.  Otherwise, plaintiffs would have an incentive to inflate their requests, knowing that they would not be penalized for doing so:

> If . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.  To discourage such greed a severer reaction is needful.

*Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).  *See also LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 906 (D.C. Cir. 1998) ("[A] district court might in some circumstances consider a fee request, or a particular item within a fee request, so 'outrageously unreasonable' that outright denial of the request or an item within the request would be appropriate."); *Farris v. Cox*, 508 F. Supp. 222, 227 (N.D. Cal. 1981) ("To discourage such overreaching and curb the practice of padding fee requests, the appropriate remedy in this case is to deny compensation."); *Muniz v. United Parcel Serv., Inc.*, No. C 09-01987, 2011 WL 3740808, at *14 (N.D. Cal. Aug. 23, 2011) (holding ten percent reduction in fee award was supported by plaintiff's "disproportionate fee request").  Thus, to prevent Plaintiffs from exploiting this litigation for illegitimate financial gain and from shifting the burden of calculating a reasonable fee to Defendants and the Court, Plaintiffs should be penalized for their grossly unreasonable fee request.

Courts have generally concluded that a fee request is so outrageously inflated as to justify a complete denial of fees in two contexts:  "where the fee request appeared to have been made in bad faith, such a billing outrageous numbers of hours on simple matters, or where the plaintiff

9

made no effort to eliminate hours spent on unsuccessful, unrelated claims." *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1127 (9th Cir. 2008).[2]

As discussed below, Plaintiffs' fee request does both. Plaintiffs' attorneys billed ridiculous amounts of time for the simplest projects, such as over fifty hours to draft a nine-page complaint. *See infra* Section III. Likewise, Plaintiffs' fee request includes hundreds of hours spent on unsuccessful filings and claims. *See infra* Section II. Indeed, as explained below, were the Court to conclude that Plaintiffs are otherwise entitled to a fee award, a reasonable amount would be roughly $19,640. *See infra* Section V. Plaintiffs request $381,633.99, almost twenty times that amount.

Accordingly, because Defendants' positions throughout the litigation have been reasonable and because Plaintiffs now make a grossly unreasonable fee request, this fee request should be denied.

## II. Plaintiffs' Fee Request Is Unreasonable Because It Includes Hundreds of Hours Billed on Unsuccessful Filings and Claims.

Plaintiffs ask the Court to order the government to pay them hundreds of thousands of dollars for efforts devoted to unsuccessful claims. The Court should not do so.

Were the Court to determine that Plaintiffs are entitled to a fee award, that award could only include "reasonable attorney fees and other litigation costs reasonable incurred." 5 U.S.C. § 552(a)(4)(E)(i). "The most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation

---

[2] In *Mendez*, the Ninth Circuit declined to "decide whether it would ever be appropriate for a court entirely to deny fees and costs under [42 U.S.C.] § 1988 purely on the excessiveness of the request," because neither of these situations were present in the case. 540 F.3d at 1127. Of course, Section 1988 differs from FOIA in that, unlike under FOIA, a Court's discretion to deny fees to a prevailing party under Section 1988 is "very narrow." *See id.* at 1126.

10

marks omitted).  When setting a reasonable fee award, "work on an unsuccessful claim cannot be deemed expended in pursuit of the ultimate result achieved . . . and therefore no fee may be awarded for services on the unsuccessful claim."  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (citation and internal quotation marks omitted).  Accordingly, to determine a reasonable fee award based on the plaintiff's degree of success:

> The district court first asks if the plaintiff did not prevail on claims that were unrelated to those on which he succeeded and excludes any fees associated with those unsuccessful claims.  Second, the court makes further reduction when plaintiffs' success on any remaining interrelated unsuccessful and successful claims was limited.

*Gates v. Deukmejian*, 987 F.2d 1392, 1404 (9th Cir. 1992).

An unrelated claim is a "claim[] for relief . . . based on different facts and legal theories." *Hensley*, 461 U.S. at 434; *see also Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 903 (9th Cir. 1995) (discussing how to determine relatedness of claims).  Thus, in FOIA cases, litigation regarding each exemption claimed by the government should generally be treated as a separate claim, and a plaintiff therefore cannot recover for time spent litigating exemptions the government properly applied.  *See Piper v. Dep't of Justice*, 339 F. Supp. 2d 13, 24 (D.D.C. 2004) (holding that plaintiff was not entitled to fees for disputing the government's withholdings under an exemption that the court found to be properly applied).  In addition, a plaintiff cannot recover fees for unnecessary motions or other filings.  *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1499 (D.C. Cir. 1984).

Plaintiffs do not adhere to this standard in their fee request.  Although Plaintiffs state they have excluded the hours they spent opposing Defendants' Motion for Clarification and Partial

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

Reconsideration, *see* Flynn Decl., Dkt. 116, at 26, 38,[3] they fail to eliminate any other time they spent on unsuccessful claims or unsuccessful filings throughout this litigation.  *See generally id.*

As noted above, Plaintiffs' failure to exclude time spent on unsuccessful matters is grounds for denying Plaintiffs any fee award.  *See supra* Section I.B.  If the Court decides Plaintiffs are nonetheless entitled to fees, the Court must attempt to determine how much time Plaintiffs spent litigating those few matters on which they prevailed.  The Court can first eliminate any time not spent on litigation leading up to the 2007 Order and the February 2012 Order, the two orders on Plaintiffs which base their claim to be the prevailing party, as only litigation preceding those orders can be said to have been successful.  The last such litigation was the summary judgment hearing held on April 28, 2008, *see* Dkt. No. 78, after which these matters were pending before the Court until the February 2012 Order.  Thus, a discussion of the degree of Plaintiffs' success might be sensibly divided into a discussion of Plaintiffs' time billed until April 28, 2008, and their time billed after that date:  Plaintiffs' attorneys may argue that some of their actions through April 28, 2008 were successful; they cannot reasonably argue that their actions after this date were.

### A. Plaintiffs' Attorneys' Hours for 2006 to April 28, 2008 Must Be Greatly Reduced to Account for Their Limited Success.

The bulk of Plaintiffs' time during this period centers on four filings:  Plaintiffs' Complaint (Dkt. No. 1), their Motion for Summary Judgment (Dkt. No. 20), their Supplemental Motion for Summary Judgment (Dkt. No. 60), and their Renewed Motion for Summary Judgment (Dkt. No. 69).  The shorter two of these filings – the nine-page complaint and the eight-page supplemental summary judgment motion – could be considered successful in their

---

[3]  In what may be a clerical error, Plaintiffs include at least one time entry for work on this opposition in their timeslips.   Flynn Decl., Dkt. 116, at 25.

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

entirety.  The complaint ultimately led to some court-ordered relief, and the Court ordered the

disclosure of the three short documents that were the subject of the Supplemental Summary

Judgment Motion.  *See* Feb. 2012 Order at 22-23.

The same cannot be said for Plaintiffs' lengthier filings, their summary judgment motion

and renewed summary judgment motion (and their associated replies).  The majority of these

were devoted to unsuccessful claims.  As described above in Section I.A, Defendants prevailed

on Exemption 1 and Exemption 3 and largely on Exemption 6.[4]  Defendants partially prevailed

on Exemption 5, and the results on Exemption 2 were mixed:  the Court rejected all Exemption 2

withholdings, but allowed the government to withhold some of them under Exemption 1.

The most direct approach to determine the number of hours devoted to successful claims

would be for the Court to go through Plaintiffs' attorneys' billing records and eliminate hours

they devoted to working on the unsuccessful claims.  That, however, is not possible here because

the attorneys' billing entries for these filings largely fail to specify what claim attorneys were

working on at a given time, despite their obligation to do so.  *See Schwarz*, 73 F.3d at 906 ("[A]n

attorney 'should maintain billing time records in a manner that will enable a reviewing court to

identify distinct claims.'") (quoting *Hensley*, 461 U.S. at 437).  This failure to keep precise

records is grounds for reducing or completely denying fees for these filings.  *Nat'l Sec. Archive*

*v. Dep't of Defense*, 530 F. Supp. 2d 198, 209 (D.D.C. 2008) (finding, in FOIA case, "that

---

[4]  In 2012, the government released significant quantities of information not because it had been
ordered to disclose it, but because four years had passed since the government's decision to
withhold it.  The government determined that, in light of this passage of time, this information
was now safe to disclose.  *See* Horst Decl. ¶ 4.  Accordingly, these disclosures were the result of
passage of time, not Plaintiffs' claims and do not indicate that Plaintiffs' claims were successful.
*See Petrone v. Sec'y of Health & Human Servs.*, 936 F.2d 428, 430 (9th Cir. 1991) (rejecting an
award of attorney fees because plaintiff "did not win . . . in the courtroom; she won because
Congress changed the law . . . and serendipity is not a reason for rewarding lawyers.") (internal
quotation marks omitted).

13

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

[plaintiff's] inability to segregate the time spent on the claim it won from the time spent on the claim it lost militates against the award of fees it seeks."); *Hensley*, 461. U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").

If the Court nonetheless determines to award fees for these motions, it must find some way approximate what portion of attorney time was devoted to successful claims. Although the Ninth Circuit has not adopted any particular methodology for doing so, it has suggested that awarding a plaintiff fees for a percentage of time comparable to the percentage of claims on which the plaintiff prevailed may be appropriate:

> [Plaintiff's] victory clearly fell far short of his goal; therefore, it is unreasonable to grant his attorneys more than a comparable portion of the fees and costs they requested. Although the district court need not be so mechanical as to divide the amount of fees and costs requested by the numbers of claims, and therefore grant one-ninth of the fees and costs, the district should take into account [plaintiff's] limited success when determining a reasonable award.

*McCown v. City of Fontana*, 565 F.3d 1097, 1105 (9th Cir. 2009). *See Read*, 252 F. Supp. 2d at 1113 (reducing attorney's fees for partially successful motions by 75 percent); *Piper*, 339 F. Supp. 2d at 24 (reducing attorney's fees for partially successful motion by 50 percent).

One means of approximating the amount of time devoted to successful claims is by assuming it is proportional to the number of pages of argument in the party's briefs devoted to the successful claims. *Cf. Chem. Mfrs. Ass'n v. EPA*, 885 F.2d 1276, 1283 (5th Cir. 1989) (holding page-based approach yielded fair measure of success); *Adde v. United States*, 98 Fed. Cl. 517, 530-31 (Fed. Cl. 2011) (declining to use page-based approach where it was possible to more directly determine number of hours devoted to successful claim). The following chart indicates the number of pages of argument that Plaintiffs devoted to each of their major claims in their original Motion for Summary Judgement and reply (Dkt. Nos. 20, 39).

14

| Argument | Pages | Ultimately Successful? |
|---|---|---|
| Exemption 1 | 10 | No |
| Exemption 2 | 14 | Mixed |
| Exemption 3 | 5 | No |
| Exemption 5 | 8 | Mixed |
| Exemption 6 | 7 | Minimal[5] |
| Bad Faith | 3 | No |
| Initial *Vaughn* Index Inadequate | 5 | Yes |
| Revised Search Necessary | 2 | Yes |
| In Camera Review Necessary | 3 | Yes |
| Defendants Waived Withholding | 4 | No |

One might approximate that Plaintiffs prevailed on roughly half of Exemption 2 and 5, and a fifth of Exemption 6 matters.  If so, just over 22 pages out of 61 pages of Plaintiffs' argument in these briefs were devoted to successful issues.  Thus, if one assumes that the number of pages of argument in the briefing is roughly proportional to the time that Plaintiffs' attorneys spent on each claim, 37 percent of Plaintiffs' time for these filings was spent successfully.  This is admittedly a crude calculation, but may be best possible approximation given the state of Plaintiffs' billing records.

---

[5]  This briefing addressed whether Defendants had to disclose names under Exemption 6, an issue on which Plaintiffs did not prevail.  The Court, however, did eventually order Defendants to release several pictures they had withheld under Exemption 6 in the February 2012 Order. The Court also ordered some *de minimis* disclosure under Exemptions 1 and 3, but that disclosure does not appear attributable to the issues raised in this briefing.

15

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

Plaintiffs' Renewed Motion for Summary judgment and its associated reply (Dkt. Nos 69, 74) were even less successful. In these filings, Plaintiffs argued almost exclusively that Defendants were acting in bad faith and had waived their ability to withhold the documents at issue – arguments entirely rejected by the Court. *See* Feb. 2012 Order at 2-4, 21. That said, these filings do devote a page or so to a cursory argument that Defendants had not adequately explained the segregation of their disclosures, Dkt. No. 69 at 11-12, a conclusion endorsed by the Court in the February 2012 Order. February 2012 Order at 20-21. Thus, one might say these filings were roughly ten percent successful on that basis, despite the Court's rejection of the vast majority of the arguments they contain.

In the litigation leading up to the Court's February 2012 Order, then, Plaintiffs enjoyed some success, but that success was limited to a minority of the issues at stake, and any fee award would have to reflect this limited success.

### B. Plaintiffs Cannot Seek Fees for Time Billed after April 28, 2008.

Plaintiffs are not entitled to fees for their attorneys' services after April 28, 2008, as all of Plaintiffs' attorneys' activities since April 28, 2008 have proven unsuccessful and did not result in the disclosure of any additional information to Plaintiffs.[6] They spent a great deal of time preparing their interim fee motion, Dkt. No. 83, which the Court denied. Order, Dkt. No. 105, filed Mar. 27, 2012, at 4 n.10. They drafted a filing attacking Defendants' Response to the Show Cause Order, Dkt. No. 97, but the Court accepted Defendants' Response. *See* Dkt. No. 111. They unsuccessfully opposed Respondents' motions to stay and for leave to file a motion

---

[6] Plaintiffs' attorney billed roughly an hour of time in 2012 to request that the government produce color versions of certain photographs and higher quality versions of several pages that had been disclosed, which the government then did. *See* Flynn Decl., Dkt. No. 116, at 24-25. Defendants do not dispute that this single hour of time was successfully expended.

16

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

for reconsideration.  *Id.*   They spent time reviewing the government's updated 2012 disclosures, but a FOIA plaintiff is "not entitled to recover for time spent reviewing the documents it instituted [the] lawsuit to obtain."  *Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011).  They discussed the possibility of settlement with the government, but never came to any agreement.  Plaintiffs request fees for all of these activities, but are not entitled to fees for any of them.

Likewise, Plaintiffs are not entitled to any fees for drafting the instant Renewed Motion for Attorney Fees.  "Fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."  *Schwarz*, 73 F.3d at 909.  A plaintiff cannot recover for time spent seeking fees higher than those to which they are entitled.  *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 n.10 (1990).  Thus, "a district court does not abuse its discretion by applying the same percentage of merits fees ultimately rewarded to determine the proper amount of the fee-on-fees award."  *Schwarz*, 73 F.3d at 909.  For the reasons discussed throughout this opposition, Plaintiffs are not entitled to any fees for the merits litigation and thus are not entitled to any fees for this fee litigation either.  Moreover, even if the Court were to decide Plaintiffs are entitled to some fees for the merits litigation, they would be entitled to little or no fees for this fee litigation, given that Plaintiffs' efforts have been devoted to seeking an unreasonable amount of fees.

**III. Plaintiffs' Attorneys Bill for a Grossly Unreasonable Number of Hours.**

A FOIA fee award must be based on "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  In determining reasonable hours, the fee applicant bears the burden of justifying the hours the applicant claims to have expended.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  The

17

Court should reduce the number of hours used in calculating any award where "the case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary." *Id*. Here, Plaintiffs billed for a grossly unreasonable number of hours. Much – but not all – of this overbilling is attributable to unnecessary duplication of effort.[7]

### A.   *Plaintiffs Overstaffed the Case, Leading to Unnecessary Duplication of Work.*

This is straight-forward FOIA litigation, requiring attorneys to do no more than conduct legal research, write motions, and attend hearing.  Thus, it could readily be handled by one or two attorneys.  Plaintiffs, however, seek fees for four attorneys – very often billing for the exact same tasks.  "Courts ought to examine with skepticism claims that several lawyers were needed to perform a task and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004).  "The court should not allow more than one attorney to bill for performing a single task unless warranted by the complexity of that task." *Gudenkauf v. Stauffer Commc'ns, Inc.*, 953 F. Supp. 1237, 1243 (D. Kan. 1997).  Thus, given that all of the tasks in this case could have been completed by one or two attorneys, the Court should exclude time charged by the unnecessary attorneys whenever they bill for the same task.

The following chart illustrates the hours billed by Plaintiffs' attorneys for the primary tasks of this litigation, at least to the degree this could be discerned from the sometimes vague billing records.  As can be seen, Plaintiffs' attorneys made a habit of using multiple attorneys for most tasks, resulting in some strikingly excessive billing totals:

---

[7]  The below discussion only directly addresses hours spent through the April 2008 hearing, given that all subsequent efforts were unsuccessful.  Plaintiffs, however, billed for an unnecessary number of hours throughout this litigation.

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

|  | *Flynn* | *Ford* | *Kraupp* | *Kreuscher* | **Total** |
|---|---|---|---|---|---|
| *Pre-Compl. Research* | 6.6 | 4 | 0 | 0 | 10.6 |
| *Complaint* | 14.3 | 22.4 | 13.7 | 0 | 50.4 |
| *Mot. Summ. J. (MSJ)* | 80.2 | 60.7 | 7.4 | 7.2 | 155.5 |
| *2007 Reply* | 36.9 | 50.1 | 8.4 | 18.5 | 113.9 |
| *2007 Hearing Prep.* | 26.9 | 5.2 | 4.8 | 1 | 37.9 |
| *2007 Hearing* | 1.5 | 0 | 1.5 | 0 | 3 |
| *Supplemental MSJ* | 0.7 | 8.7 | 0 | 0 | 9.4 |
| *Renewed MSJ* | 53.2 | 28.9 | 0 | 0 | 82.1 |
| *2008 Reply* | 29.6 | 12.4 | 0 | 0 | 42 |
| *2008 Hearing Prep.* | 14.5 | 12.5 | 0 | 0 | 27 |
| *2008 Hearing* | 3 | 3 | 0 | 0 | 6 |
| *Confer w/ Co-counsel* | 14.3 | 16.6 | 3.7 | 0 | 34.6 |

To eliminate this unnecessary duplication, only the time of the necessary attorneys – at most two for any given task – should be considered for each activity in setting a fee award.

Similarly, when additional attorneys unnecessarily participate in a case, the attorneys in that case inevitably spend a significant amount of time communicating with one another – time that would not have been billed if fewer attorneys were working on the case. *Cf. Los Angeles Gay & Lesbian Cmty. Servs. Ctr. v. IRS*, 559 F. Supp. 2d 1055, 1062 (C.D. Cal. 2008) (reducing hours where large number of attorneys caused duplication and required numerous meetings to coordinate efforts). Such hours are especially likely to be excessive when, as here, each lawyer separately bills for the same unnecessary communication. Thus, because four attorneys were not

19

necessary to litigate this case, the Court should exclude at least half of the 34.6 hours Plaintiffs' attorneys have billed for communicating with one another.

Plaintiffs have agreed to accept a ten percent reduction in their fees to account for duplication of effort, Pls. Renewed Fee Mot. at 24, but this does not suffice given the extensive duplication of effort here.  Rather, in addition to this reduction, the Court should only consider the hours billed by at most two attorneys when determining any fee award.

### B.  *Plaintiffs' Attorneys Bill for Large Amounts of Other Unnecessary Work.*

Plaintiffs bill for a grossly excessive number of hours for many tasks in this case, even after accounting for their duplication of effort.  This excessive billing may be most obvious with their complaint, which is nine pages and consists of boilerplate and a simple summary of alleged facts.  *See* Dkt. No. 1.  For this nine-page complaint, Plaintiffs' attorneys billed for 10.6 hours of pre-complaint research and 50.4 hours for drafting – roughly ten times more than courts have generally found to be reasonable to draft a complaint.  *See, e.g.*, *Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, No. C 07-05278, 2008 WL 2331959, *5 (N.D. Cal. June 4, 2008) (reducing complaint preparation time from 12 to 9.5 hours); *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 238 (D.D.C. 2011) (reducing time to prepare two complaints from 20 to 17 hours); *Sial v. Prof'l Collection Consultants*, No. CV 07-7868, 2008 WL 2415037, at *2 (C.D. Cal. June 12, 2008) (reducing time to prepare complaint from 10 to 5 hours).  Thus, Plaintiffs are entitled to roughly 5 hours for preparing their complaint, not the 61 total hours they request.

Plaintiffs' attorneys also billed excessive hours for their other filings and activities, as made clear by the chart above.  *See supra* Section III.A.  To take but one example, Plaintiffs billed 155.5 hours for their original Motion for Summary Judgment (Dkt. No. 20) and another

20

113.9 for the reply (Dkt. No. 39).  In a FOIA case in this district in 2008, however, the court found that 88.45 hours *combined* for plaintiff's primary motion and reply was unreasonable and reduced the time to 68.5 hours.  *Elec. Frontier Found.*, 2008 WL 2331959, at *5.  Similar reductions are in order here.  Defendants thus suggest that it would be reasonable to bill a total of no more than 70 hours combined for the initial motion for judgment and associated reply and 50 hours combined for the renewed motion for summary judgment and reply.

Plaintiffs argue that, despite the large amounts of time they have billed, the Court must nonetheless defer to their billing records.  Pls. Renewed Fee Mot. at 24.  No deference, however, is necessary in the face of blatantly unreasonable amounts of time.  Indeed, as discussed above in Section I.B, such grossly excessive hours can be evidence bad faith, and thus justify the denial of any fees.  Moreover, even if the unreasonable amounts of time result from inexperience or inefficiency rather than bad faith, they still must be excluded from any fee award.  *Action on Smoking & Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 220 (D.C. Cir. 1984) ("Hour are not reasonably expended . . . if an attorney takes extra time due to inexperience."); *Reynolds v. Goord*, No. 98 Civ. 6722, 2001 WL 118564, at *3 (S.D.N.Y. Feb. 13, 2001) (reducing hours attributed to law students by one half "to compensate for inefficiencies that necessarily exist due to lack of experience.").  Regardless of why Plaintiffs' attorneys billed an inherently unreasonable number of hours, these hours cannot form the basis of a reasonable fee award.

Finally, Plaintiffs also cannot recover for the time (or costs) for their Los Angeles-based counsel to travel to San Francisco.  This time was not reasonably expended given that Plaintiffs likely could have found local counsel to represent them.  Typically, a plaintiff is not entitled to fees for non-local counsel's travel to the forum unless that plaintiff can show that qualified local counsel was unavailable.  *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 311-12 (3d

21

Cir. 2008); *Fair Housing Council of San Diego v. Peñasquitos Casablanca Owner's Ass'n*, 523 F. Supp. 2d 1164, 1179-80 n.10 (S.D. Cal. 2007), *vacated on other grounds*, 381 F. App'x 674 (9th Cir. 2010); *see also Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (holding that a non-local attorney generally may only be reimbursed at an hourly rate higher than that in the forum if qualified local counsel was unavailable); *Marbled Murrelet v. Pac. Lumber Co.*, 163 F.R.D. 308, 327 (N.D. Cal. 1995) (awarding fees for travel because plaintiff had demonstrated that local counsel was unavailable).  Plaintiffs have not given any reason why it was necessary for them to employ Los Angeles rather than San Francisco counsel, and thus the 26.1 hours and $495.89 in costs they billed for travel during the relevant period must be excluded from any fee award.

Accordingly, even after factoring in duplication and putting aside Plaintiffs' lack of success, Plaintiffs' attorneys billed for an unreasonable number of hours and any fee award based on these hours would be unreasonably excessive.

### IV. The Hourly Rates Requested for Plaintiffs' Attorneys Are Unsupported by Any Evidence and Are More than Twice Reasonable Rates.

The hourly rates requested by Plaintiffs are unreasonable.  Without any evidence, Plaintiffs' attorneys seek hourly rates that might perhaps be commanded by veteran attorneys practicing complex federal litigation in San Francisco in 2012.  But the legal work at issue was not performed by veteran attorneys in 2012, but by attorneys who had only recently been licensed to practise in 2006 to early 2008.  Thus, if the Court determines that Plaintiffs are entitled to attorney fees, they must be awarded fees at a rate appropriate given the nature of the work and the attorneys' lack of experience at the time they performed it.  As explained below, a rate of $200 an hour for all attorneys involved would be appropriate.

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As discussed above, the only legal work for which Plaintiffs should be entitled to compensation occurred between January 2006, when attorneys began work on their complaint, and April 2008, when the second summary judgment hearing was held. During this time, all of Plaintiffs' attorneys were early in their legal careers. Flynn graduated in May 2004 and was admitted to practice in November 2004. Flynn Decl., Dkt. 116, Ex. A at 1. Ford graduated a year later and began practice in December 2005. Ford Decl., Dkt. 116-1, Ex. A. at 1. Kaupp had slightly more experience – graduating in May 2002 and beginning practice in July 2003 – but was less involved in the case. Kaupp Decl., Dkt. 116-2, ¶ 2. And Kreuscher had the least experience, not beginning practice until October 2006, after this litigation had already begun. Kreuscher Decl., Dkt. No. 116-3, ¶¶ 3, 7. Thus, during the period that each was involved in the relevant litigation, Flynn was in her second through fourth years of practice; Ford in his first through third; Kaupp in his fourth and fifth; and Kreuscher in his first few months of practice.

The hourly rate used to calculate a fee award must be "reasonable." *Hensley*, 461 U.S. at 433. "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2009) (citation omitted). "[B]illing rates should be established by reference to the fees that . . . attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (citation omitted).

### A. Plaintiffs Have Failed to Provide Reliable Evidence of Hourly Rates.

Plaintiffs bear the burden of establishing that the fee rates they request are reasonable, which Plaintiffs attempt to do here via a series of declarations. "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the

23

requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 980 (citation omitted). Even if otherwise satisfactory, however, "declarations filed by a fee applicant do not conclusively establish the prevailing market rate," and may be rebutted by evidence "challenging the accuracy and reasonableness of the . . . facts asserted" in the declarations. *Id.* at 980 (citation omitted).

Plaintiffs' attorneys' declarations fail to provide any evidence that their requested rates, which range from $425 to $500 an hour, are reasonable. Most notably, their declarations only address what Plaintiffs' attorneys purport to be reasonable *current* rates for their services. The declarations say nothing about what their reasonable rates were from 2006 to early 2008, when they actually performed the work on which their limited success was based. Plaintiffs' attorneys claim that all of their time should be billed using their purported current rates, not their rates when they performed the services, because of the delay in receiving payment for their services. Pls. Renewed Fee Mot. at 25.

Such fee enhancements for delay, however, are foreclosed in FOIA cases. "[I]n the absence of explicit statutory authorization, principles of sovereign immunity prevent awards of interest (which are legally and economically indistinguishable from compensation for delay) against the United States." *Weisberg v. Dep't of Justice*, 848 F.2d 1265, 1272 (D.C. Cir. 1988) (citing *Library of Congress v. Shaw*, 478 U.S. 310 (1986)), *overruled on other grounds*, *King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991) (en banc). Thus, "[b]ecause FOIA's fee-shifting provision does not authorize compensation for delay," no such compensation can be ordered. *Id.*; *see also Elec. Privacy Info. Ctr.*, 811 F. Supp. 2d at 238 (holding that, in a FOIA case, fees "must be based on the prevailing market rates at the time the services were *performed*") (citation

24

omitted; emphasis in original); *Sorenson v. Mink*, 239 F.3d 1140, 1148 (9th Cir. 2001) (holding that historical rates, not current rates, must be used under the Equal Access to Justice Act because the Act does not waive sovereign immunity from prejudgment interest). Because Plaintiffs' declarations do not provide any evidence of prevailing rates from 2006 to early 2008, when the relevant work was performed, Plaintiffs have failed to meet their burden to show that their requested rates are reasonable.

Indeed, Plaintiffs attorneys' declarations provide no reliable guidance whatsoever as to what a reasonably hourly rate would be in this case: even the current rates they claim are not based on what they actually bill private clients or on prevailing market rates but on what they "believe" a reasonable rate would be. *See, e.g.*, Flynn Decl., Dkt. No. 116, ¶ 24 ("I am informed and believe that the rate is reasonable."); Ford Decl., Dkt. No. 116-1, ¶ 9 (same); Sobel Decl., Dkt. No. 117, ¶ 17 ("I am of the opinion that the rates sought by this motion are reasonable.").[8] Such unsupported claims cannot serve as the basis for a fee award. *See Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir. 1982) ("[G]eneralized and conclusory 'information and belief' affidavits from friendly attorneys presenting a wide range of hourly rates will not suffice."). Thus, Plaintiffs' declarations should have no bearing on the Court's determination of a reasonable hourly rate.

### B. A Reasonable Hourly Rate for Plaintiffs' Attorneys Would Be $200.

When a fee applicant "fail[s] to meet their burden of establishing that their proposed hourly rate is appropriate, the Court looks to 'rate determinations in other cases' for satisfactory evidence of the prevailing market rate." *Harper v. Lugbauer*, No. C 11-01306, 2012 WL

---

[8] The one exception is Kaupp, who claims that his hourly rate was $225 in late 2005, less than a year before he started work on the instant case, and is currently $500. Kaupp Decl., Dkt. No 116-2, ¶ 8.

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

1499174, at *2 (N.D. Cal. Apr. 9, 2012) (citing *Welch*, 480 F.3d at 947).  Courts in the Northern

District of California have used a number of methods to determine reasonable hourly rates in the

forum.  Based on these methods, Plaintiffs' attorneys should receive no more than $200 an hour

for any work on this case.

   The most appropriate method of determining the proper rate in this case is the "blended

rate approach" or the *Yahoo!* methodology, so called given its use in *Yahoo!, Inc. v. Net Games,*

*Inc.*, 329 F. Supp. 2d 1179 (N.D. Cal. 2004).  The *Yahoo!* methodology calculates the prevailing

market rate using data from the Bureau of Labor Statistics.  *See id*. at 1189-91; *Winterstein v.*

*Stryker Corp. Grp. Life Ins. Plan*, No. C 02-05746, 2006 WL 1889901, at *2 (N.D. Cal. July 10,

2006) ("*Yahoo!* provides an objective methodology for determining the lodestar amount that is

frequently applied in the Northern District of California."), *vacated in part on other grounds*,

262 F. App'x 841 (9th Cir. 2008).  As the *Yahoo!* methodology does not take an attorney's level

of experience into account, it is usually favored in cases, like this one, that do not require

extensive experience to litigate.  *See Theme Promotions v. News Am. Marketing FSI, Inc.*, 731 F.

Supp. 2d 937, 948 (N.D. Cal. 2010) (noting that the *Yahoo!* methodology was useful in "routine,

relatively low value litigation"); *Willis v. City of Oakland*, 231 F.R.D. 597, 601 (N.D. Cal. 2005)

(holding the *Yahoo!* methodology sufficient where case was not unusually complex).  Based on

the *Yahoo!* methodology, the prevailing market hourly rate for attorneys in the San Francisco

area was $180.74 in 2006, $189.34 in 2007, and $199.64 in 2008.  *Theme Promotions*, 731 F.

Supp. 2d at 947.  Although a lower rate thus could be appropriate, for simplicity's sake,

Defendants suggest that a $200 rate would be a reasonable value for attorney's service during

this litigation.

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

The *Laffey* methodology is also commonly used in the Northern District of California in complex cases. Under the *Laffey* methodology, the appropriate hourly rate for much of the work performed in this case would be $225. The *Laffey* methodology is based on the *Laffey* matrix, a "widely recognized compilation of attorney and paralegal rates based on various levels of experience" that "has been regularly prepared and updated by the Civil Division of the United States Attorney's Office for the District of Columbia and used in fee shifting cases, among others." *Id.* at 948. The *Laffey* methodology is favored in complex litigation and other litigation requiring experienced counsel. *See id.* ("The Laffey matrix is especially useful when the work to be evaluated was performed by a mix of senior, junior and mid-level attorneys, as well as legal assistants, as is typically the case in antitrust and other complex litigation."). For more routine matters – like this one – in which extensive experience is not necessary, the *Laffey* matrix may overestimate the hourly rate. *See Ulin v. ALEA-72, Inc.*, No. 09-3160, 2011 WL 4974282, at *2 (N.D. Cal. Oct. 19, 2011) (remarking that the *Laffey* rate was "not necessarily warranted given the quality of the work performed"); *see also Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010) (questioning whether the *Laffey* matrix was a reliable measure of rates in the Northern District of California).

Under the *Laffey* matrix, as adjusted for San Francisco using the method adopted in previous cases, a reasonable hourly rate for the time period during which the work in question was performed would be as follows[9]:

---

[9]  The *Laffey* matrix rates are $205 (1-3 years) and $245 (4-7 years) for 2006-07, and $215 (1-3 years) and $255 (4-7 years) for 2007-08. *See* Exhibit A, Laffey Matrix, *available at* http://www.justice.gov/usao/dc/divisions/civil.html. Locality adjustments are made based on the locality pay differentials within the federal courts (approximately 9.5% in for 2006-07 and 10% for 2007-08). *See In re Portal Software Inc. Sec. Litig.*, No. C-03-5138, 2007 WL 4171201, at

27

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

| Experience | June 1, 2006 - May 31, 2007 | June 1, 2007 - May 31, 2008 |
|---|---|---|
| 4-7 years | $268.50 | $270.50 |
| 1-3 years | $224.50 | $236.50 |

Thus, if the *Laffey* methodology were applied, rates for Plaintiffs' attorneys would be as follows:

| Attorney | Jan. 2006[10] - May 31, 2007 | June 1, 2007 - May 31, 2008 |
|---|---|---|
| Colleen Flynn | $224.50 | $270.50 |
| Chris Ford | $224.50 | $236.50 |
| Gordon Kaupp | $268.50 | N/A |
| Kenneth Dreuscher | $224.50 | $236.50 |

Additionally, even without employing any particular methodology, the Court can look to other fee awards from the forum involving comparable cases and attorneys to establish a reasonable hourly rate. *See Harper*, 2012 WL 1499174, at *2-*3. A survey of relevant cases confirms that an hourly rate of roughly $200 would be appropriate for attorneys litigating a routine case in their first few years of practice from 2006 to 2008. *See, e.g.*, *Navarro v. General Nutrition Corp.*, No. C 03-0603, 2005 WL 2333803, at *10 (N.D. Cal. Sept. 22, 2005) (awarding $150 an hour to 1997 graduate who failed to provide evidence of reasonableness of rate sought); *Pande v. ChevronTexaco Corp.*, No. C-04-05107, 2008 WL 906507, at *3-*5 (awarding $150 an

---

*15 (N.D. Cal. Nov. 26, 2007); 2006 and 2007 General Schedule Locality Pay Tables, *available at* http://www.opm.gov/oca/12tables/index.asp.

[10]  Rather than adding an additional column with lower rates for work performed from January to May 2006, Defendants are using 2006-07 rates with this period to simplify calculations given how little relevant work was performed in early 2006.

28

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

hour to attorneys who had no provided evidence of qualifications, $200 an hour to 2004 graduate, and $250 an hour to 1996 graduate); *Muniz*, 2011 WL 3740808, at *10 (awarding $230 an hour to 2008 graduate); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1101 (N.D. Cal. 2010) (awarding $245 an hour for 2007 graduate).

Plaintiffs have offered no comparable cases suggesting their rates should be higher. Plaintiffs do identify one case – a complex civil rights class action in the Central District of California in 2009, *Multi-Ethnic Immigrant Workers Organizing Network (MIWON) v. City of Los Angeles* – in which two of their attorneys, Colleen Flynn and Chris Ford, were awarded rates of $350 and $325, respectively. *MIWON*, however, is not comparable. First, these amounts were awarded as part of a common fund settlement in which Flynn and Ford were only two of the less experienced attorneys among many lawyers involved. *See generally* Flynn Decl., Dkt. No. 116, Ex. C. Although the court accepted the attorney fees in the settlement as reasonable, the rates claimed by Flynn and Ford were never challenged or subjected to any individual scrutiny. Second, *MIWON* was a complex civil rights action, including hundreds of plaintiffs and settling for over $12 million, *id.*, whereas the instant case is a comparatively simple FOIA case, which only required Plaintiffs' counsel to file a complaint, write motions, and make arguments based on those motions. *See Prison Legal News*, 608 F.3d at 455 ("[T]he proper scope of comparison [for determining hourly rates] . . . extends to all attorneys in the relevant community engaged in *equally complex* Federal litigation.") (emphasis added; internal quotation marks omitted).

Finally, the *MIWON* award was based on Flynn's and Ford's supposed hourly rates in 2009, *see* Sobel Decl., Dkt. No. 117, ¶ 10, when billing rates were higher and when Flynn and Ford had more experience than when the instant litigation began in 2006. Less experienced

29

counsel – more comparable to Flynn and Ford when they worked on the instant litigation – received lower amounts in the *MIWON* settlement.  *See* Flynn Decl. (Dkt. No. 116), Ex. C at 1. Thus, the rates Flynn and Ford received in *MIWON* do not provide any reliable guidance as to the appropriate rates in this case.

Rather, given Plaintiffs' complete failure to support their requested hourly fee, if the Court decides to award fees, it should look to hourly rates awarded in this district in cases of similar complexity to attorneys of comparable experience and reputation during the time period in which the work was performed.  As discussed above, based on comparable cases in the Northern District of California, a reasonable – even generous – rate in this case would be $200 an hour.

## V.  If the Court Awards a Fee Award, a Reasonable Award Would Be $19,640.

Plaintiffs are not entitled to a fee award.  If, however, the Court determines to award one, a reasonable award would be $19,640.  To calculate this number, the number of hours Plaintiffs claimed must be adjusted for lack of success, duplication, and other unnecessary work, as described above.  Thus, Plaintiffs could reasonably claim 5 hours for the complaint; 38.9 hours for the first motion for summary judgement, reply, and hearing; 8.7 hours for the supplemental summary judgment motion; and 8.3 hours for the renewed motion for summary judgment and hearing.[11]  Allowing another 17.3 hours for communication between counsel and 20 hours for

---

[11]  As discussed above, Plaintiffs can bill no more than 70 hours for the initial summary judgment motion and reply.  Plaintiffs' two primary attorneys also billed 32.1 for hearing preparation and 3 for the actual hearing.  Multiplying this total 105.1 hours by 37 percent, to reflect their degree of success on these matters, yields 38.9 hours.  Similarly, they could claim no more than 50 hours for the renewed summary judgment motion and reply, 27 for hearing preparation, and 6 for the hearing itself.  Multiplying this 83 hours by 10 percent to account for their very limited success on the arguments raised in their renewed summary judgment motion yields 8.3 hours.

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*

necessary communications with their client, communications with Defendants' counsel, and other miscellaneous work, yields a total of 98.2 hours of time that could be reasonably billed in this case. At a rate of $200 an hour, that indicates a reasonable award of no more than $19,640.

If Plaintiffs were actually requesting such an amount, they could make a much better case that they were entitled to it. Here, however, they are illegitimately seeking almost twenty times this amount in hopes of receiving a windfall. Thus, their request should be denied in full.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiff's Renewed Motion for Attorney Fees.

Dated: June 28, 2012                    Respectfully submitted,

                                        STUART F. DELERY
                                        Acting Assistant Attorney General

                                        MELINDA HAAG
                                        United States Attorney

                                        ELIZABETH J. SHAPIRO
                                        Deputy Branch Director

                                        */s/ Timothy A. Johnson*
                                        TIMOTHY A. JOHNSON
                                        U.S. Department of Justice
                                        Civil Division
                                        Federal Programs Branch
                                        20 Massachusetts Ave. NW
                                        Washington, D.C. 20530
                                        Telephone: (202) 514-1359
                                        Facsimile: (202) 616-8470
                                        E-mail: timothy.johnson4@usdoj.gov

                                        *Attorneys for Defendants*

*Defendants' Opposition to Plaintiffs' Renewed Motion for Attorney Fees, C 06-02812 (JW)*