COLLEEN FLYNN, SBN 234281
CHRIS FORD, SBN 239376
3435 Wilshire Blvd., Suite 2900
Los Angeles, CA 90010
Telephone: (213) 487-8000
Facsimile: (213) 487-8001
E-mail: colleen_ucsc@hotmail.com

W. GORDON KAUPP, SBN 226141
115 ½ Bartlett Street
San Francisco, CA 94110
Telephone: (415) 285-8091
Facsimile: (415) 285-8092
E-mail: gordonk@hotmail.com

ATTORNEYS FOR PLAINTIFFS

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| MARGUERITE HIKEN and THE MILITARY LAW TASK FORCE, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF DEFENSE and UNITED STATES CENTRAL COMMAND, <br><br> Defendants. | **Case No. CV-06-2812 (JW)** <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ATTORNEY FEE AWARD PER 5 U.S.C. § 552(a)(4)(E)** <br><br> Hearing Date: vacated <br><br> Judge: Hon. James Ware |

//
//
//
//
//

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................... 1
   I.  **DEFENDANTS FAIL TO SHOW THAT PLAINTIFFS' SUCCESS WAS "LIMITED"** ............................................................................................ 1
   II.  **DEFENDANTS ASSERTION THAT PLAINTIFFS' FEE REQUEST IS UNREASONABLE BASED ON BILLING FOR ALLEGED "UNSUCCESSFUL FILINGS AND CLAIMS" IS UNSUPPORTED BY LAW OR THE R** ......................................................... 5
   III.  **PLAINTIFFS DO NOT BECOME UN-ENTITLED TO FEES IF DEFENDANTS' WITHHOLDINGS HAD A "COLORABLE BASIS" IN LAW** ................................................................................................ 8
   IV.  **THIS IS A COMPLEX CASE REGARDING DOCUMENTS TOUCHING UPON IMPORTANT PUBLIC MATTERS** ............................... 10
   V.  **DEFENDANTS HAVE LITIGATED "TENACIOUSLY" AND NOW HAVE NO GROUNDS TO COMPLAIN ABOUT THE TIME PLAINTIFFS NECESSARILY SPENT IN RESPONSE** ..................... 11
   VI.  **DEFENDANTS FAIL TO SHOW THAT PLAINTIFFS SHOULD NOT RECEIVE THEIR CURRENT MARKET BILLING RATES** ............ 13
**CONCLUSION** ................................................................................................... 15

**TABLE OF AUTHORITIES**

**CASES**

*Benson v. Cont'l Cas. Co.*, 592 F.Supp.2d 1274 (C.D. Cal. 2009)..............................13, 14

*Chemical Bank v. City of Seattle* (*In re Washington Public Power Supply System Securities Litigation*), 19 F.3d 1291 (9th Cir. 1994) ............................................14

*Chesapeake Bay Found. V. U.S. Dep't of Agric.*, 11 F.3d 211 (D.C. Cir. 1993)...........9, 10

*Church of Scientology of California v. U.S. Postal Service*, 700 F.2d 486 (9th Cir. 1983)..................................................................................................................9, 10

*Cuneo v. Rumsfeld*, 533 F.2d 1360 (D.C. Cir. 1977).............................................................10

*Davis v. U.S. DOJ*, 610 F.3d 750 (D.C. Dir. 2010) ..............................................................10

*Davy v. CIA*, 456 F.3d 162 (D.C. Cir. 2006) .........................................................................9

*Elec. Privacy Info. Ctr. v. U.S. Dept. of Homeland Sec.*, 811 F.Supp.2d 216 (D.D.C. 2011) .......................................................................................................................6

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992)............................................................5

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...........................................................................5

*Hiken v. Dept of Defense*, 521 F.Supp.2d 1047 (N.D. Cal. 2007) ..............................6, 7, 13

*Jones v. Metro Life Ins. Co.*, No. C 08-03971, 2012 U.S. Dist. LEXIS 33817 (N.D. Cal., Feb. 24, 2012)..................................................................................................14

*L.A. Gay & Lesbian Cmty. Servs. Ctr. V. IRS*, 559 F.Supp.2d 1055 (C.D. Cal. 2008)        ...............................................................................................................................6, 12

*MIWON v. City of Los Angeles,* 07-3072 (C.D. Cal. 2007)................................................11

*Piper v. U.S. DOJ*, 338 F.Supp.2d 13 (D.D.C. 2004)............................................................5

*Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010)........................14, 15

*Riverside v. Rivera*, 477 U.S. 561 (1986) ............................................................................12

*Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235 (4th Cir. 2009) ..............................15

*Shwartz v. Sec'y of Health & Human Servs.*, 73 F.3d 895 (9th Cir. 1995).........................5

*United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) ................................................................................................................13

*USW v. Ret. Income Plan for Hourly-Rated Emples*. of ASARCO, Inc., 512 F.3d 555 (9th Cir. 2008) ...............................................................................................14

*Welch v. Metro. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007) .............................................14

*Weisberg v. U.S. DOJ*, 745 F.2d 1476 (D.C. Cir. 1984)........................................................5

*Wheeler v. IRS*, 37 F.Supp.2d 407 (W.D. Pa. 1998)............................................................10

*Williams v. Department of Army*, C 92-20088, 1993 U.S. Dist. LEXIS 15336 (N.D. Cal. 1993)..............................................................................................5, 11, 12, 15

*Yahoo!, Inc. v. Net Games, Inc.*, 329 F.Supp.2d 1179 (N.D. Cal. 2004)............................15

**STATUTE**

5 U.S.C. § 552(a)(4)(E)........................................................................................................10

# ARGUMENT

## I. DEFENDANTS FAIL TO SHOW THAT PLAINTIFFS' SUCCESS WAS "LIMITED".

Defendants, in opposing Plaintiffs' Motion for an Award of Attorney Fees ("Motion"), claim that plaintiffs should be awarded no fees, or, in the alternative, *de minimus* fees. Opposition to Plaintiffs' Renewed Motion for Attorney Fees, ("Defendants' Opp."), Dkt. No. 121, at 2:12-14, 3:25, 4:7-24, 30:13-31:7. To support this claim, defendants argue that plaintiffs achieved "limited success" in this matter. Defendants' position, as well as their curious "pages of success" table, Defendants' Opp. at 12:19-17:21, are factually flawed and without merit. As noted in plaintiffs' Motion, plaintiffs Marguerite Hiken and the Military Law Task Force of the National Lawyers Guild, have substantially prevailed. Through this litigation, they have obtained the release of documents the defendants, Department of Defense and United States Central Command, sought to withhold from the public.

In March of 2005, plaintiffs sought the release of the following documents:

(1) Any and all Rules of Engagement (whether called so, or by any other name) in effect for military personnel who, on March 4, 2005, fired upon, or ordered the firing upon, the car carrying Italian journalist Giuliana Sgrena while she was en route to the Baghdad, Iraq airport;

(2) Any other documents bearing on any purported justification for the actions taken by the military, or any personnel, in firing on Ms. Sgrena's car on March 4, 2005;

(3) Any and all Rules of Engagement (whether called so, or by any other name) in effect for military personnel engaged in Fallujah, Iraq from March through December, 2004; and,

(4) Any and all documents (guidelines, directives, trainings, rules, orders, etc.) which relate to, touch upon, or concern the judgments of U.S. military personnel in Iraq in distinguishing between civilians and combatants, including without limitation such decision-making in Fallujah and along the road to the Baghdad Airport in Iraq.

As a result of plaintiffs' efforts in this litigation, they have obtained the release of the following documents:

| Doc. No. | Doc. Name | No. of Pages & Redactions | Content |
|---|---|---|---|
| 1.<br><br>Doc. 1: Dkt. No. 98-4 | Document 1[1] – Annex E (Rules of Engagement) to FRAGO 313 Transition of Authority, Multi-National Corps Iraq | 17 pages, 8 pages partially or totally redacted | Provides ROE re: detaining civilians; when force, including deadly force, is authorized; cordoning and searching of residences; rules of graduated force; force allowed to protect civilian property; and which groups, including Muqtada Al Sadr, his lietenants and key associates, remain a "declared hostile force." |
| 2.<br><br>Doc. 2: Dkt. No. 98-5 | Document 2 – Appendix 20 to Annex C, MNC-I Standard Operating Procedures | 4 pages (no redactions) | Provides instructions re: use of warning shots, including using tracers; driving directives to contractors and civilian employees; reduction of escalation of force incidents; training; vehicle markings; checkpoint procedures; reductions of EOF incidents at roadblocks and checkpoints. |
| 3.<br><br>Doc. 2: Dkt. No. 98-5 | Document 2 – MNC-I Escalation of Force Training | 33 pages, 8 pages partially or totally redacted | Training materials to "improve leaders' and Soldiers' awareness dealing with EOF… to prevent unnecessary deaths of Coalition Soldiers and the citizens of Iraq." Includes information on non-lethal munitions and tools, flowcharts, checkpoint procedures, convoy procedures, potential scenarios and EOF vignettes. |
| 4.<br><br>Doc. 2: Dkt. No. 98-5 | Document 2 – EOF SmartCard | 2 pages, slight redaction on 1 page | Flowchart dealing with EOF or "escalation of force" incidents and an "Iraqi Claims Pocket Card" which officers involved in EOF incidents should fill out and informs them that the US government pays claims to Iraqi civilians for property damage, injury and death caused by U.S. Forces. |
| 5.<br><br>Doc. 2: Dkt. No. 98-5 | Document 2 – Vehicle Marking | 5 pages, 1 full page redacted, 2 pages with slight redactions | Vehicle marking standards for fratricide prevention through vehicle identification, including identifying vehicles at night, appropriate markings, flags, and lights, and identification procedures. Also includes vehicle drawings. |
| 6.<br><br>Doc. 2: | Document 2 – MNC-I Policy Letter #15 – Reducing Escalation of | 5 pages, very minor redactions on | Provides 11 rules "in an attempt to drastically diminish the number and severity of EOF incidents." Attached to |

---

[1] Documents are numbered in accordance with the numbers given to them by defendants.

| | | | |
|---|---|---|---|
| Dkt. No. 98-5 | Force Incidents, with attachments | one page | the letter is EOF SmartCard flowchart and "Iraqi Claims Pocket Card". |
| 7. Doc. 2: Dkt. No. 98-5 | Document 2 – MNC-I Convoy Commander Convoy Commander Responsibilities and Requirements. | 3 pages, some redactions on one page | Provides measures to be taken before a convoy to provide security and safety to convoy and its members. Includes information which must be included in pre-convoy briefings such as ROE, weapons status, travel route, convoy speed and pacing, degrees of graduated force, gunners in turrets, etc. |
| 8. Doc. 3: Dkt. No. 98-6 | Document 3 – Annex E (Rules of Engagement) | 17 pages, 15 pages partially or totally redacted | Consolidation of all ROE, FRAGOs, and directives pertinent to Operation Iraqi Freedom. Includes general guidance, national policy, military policy, targeting, detentions, seizure and destruction of contraband, authorization to cordon and search residences, graduated use of force, and permissible uses of deadly force. |
| 9. Doc. 3a: Dkt. No. 98-6 | Document 3a – ROE card | 2 pages, unredacted | Instructions on use of force, including use of deadly force. |
| 10. Doc. 3b: Dkt. No. 98-6 | Document 3b – Four Categories of Kinetic Strikes | 1 page, with redactions | Categories of collateral damage, categories of munition delivery, and information re: time-sensitive targets. |
| 11. Doc. 3c: Dkt. No. 98-6 | Document 3c – 4ID MND-B Kinetic Strike Authorization Matrix | 1 page, with redactions | Only categories provided re: munitions, targets, and self-defense. |
| 12. Doc. 3d: Dkt. No. 98-6 | Document 3d – Additional Approval Authority Matrix to ANNEX E (Rules of Engagment) | 2 pages, with redactions | List of weapons/methods. However, approval "authority" and "remarks" are mostly redacted. |
| 13. Doc. 3e: Dkt. No. 98-6 | Document 3e – General Order Number 1, dated 12 Feb. 2005 | 4 pages, no redactions | Provides prohibited activities for U.S. Dept. of Defense personnel in Iraq re: privately owned firearms, entrances into mosques, alcohol, porn, gambling, pets, proselytizing, sexual conduct, etc. |
| 14. Doc. 4: Dkt. No. | Document 4 – Appendix 7 to Annex C, Rules of Engagement | 24 pages, 21 pages partially or totally | ROE re: U.S. national policy, Military policy including requirements of positive identification of targets, distinguishing civilians from military targets, strikes on |

3
Plaintiffs' Motion for Attorney Fees Per 5 U.S.C.§552(a)(4)(E)

| | | | |
|---|---|---|---|
| 98-7 | | redacted | infrastructure, including cultural and historic buildings, proportionality, flexibility of the ROE, hostile forces, applicability of the ROE, "collateral damage," etc. |
| 15. Doc. 4: Dkt. No. 98-7 | Document 4 – MNC-I ROE Card | 1 page, unredacted | Instructions on use of force, including use of deadly force. |
| 16. Doc. 4: Dkt. No. 98-7 | Document 4 – MNC-I Mitt/SPiTT ROE Card | 1 page, unredacted | Instructions on use of force, including use of deadly force and response to detainee abuse or law of war violations. |
| 17. Doc. 5: | Army Regulation "AR" 15-6 Report of Sgnrena/Calipari incident | 53 pages, 27 pages with partial redactions, mainly names of individuals | Report, including background information, details of the Sgrena/Calipari incident, rules of engagement, and findings. |
| 18. | Annexes A-M to AR 15-6 Report | 1,047 pages, with redactions | Scene analysis, photos, Field Standard Operating Procedures, forensics, unit logs, communications with Italian government, etc. |

In sum, these documents include information about limitations on the use of force, escalation of force procedures, and other Rules of Engagement in effect during the war in Iraq. The released documents also include a voluminous after-action report on the Sgrena incident containing investigative analysis and findings, photographs, and communications between the U.S. and Italian governments. While plaintiffs obtained no Fallujah-specific Rules of Engagement, the government's position on that matter is nevertheless illuminating: the U.S. Military waged a long, violent siege on an Iraqi city with either no operation-specific rules on the use of force or, if they did have such documents at one time, *they now have no idea where they are*. Defendants' argument that plaintiffs have had a limited success in this litigation is baseless. Plaintiffs have substantially prevailed both qualitatively and quantitatively.

## II. DEFENDANTS ASSERTION THAT PLAINTIFFS' FEE REQUEST IS UNREASONABLE BASED ON BILLING FOR ALLEGED "UNSUCCESSFUL FILINGS AND CLAIMS" IS UNSUPPORTED BY LAW OR THE RECORD.

Defendants assert that plaintiffs' attorney fees should be reduced because their attorneys spent time on "unsuccessful filings and claims." Defendants' Opp. at 10:15-16:14. However, defendants fail to show how FOIA litigation involves "claims," and the principal authorities on which they rely derive from non-FOIA cases. For example, *Hensley v. Eckerhart*, 461 U.S. 424 (1983) entails claims made in connection with a lawsuit on behalf of persons involuntarily confined to a Missouri state hospital. 461 U.S. at 426. *Shwartz v. Sec'y of Health & Human Servs.*, 73 F.3d 895 (9th Cir. 1995), has to do with sex and race discrimination claims.

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992), involves fees related to a complex class action lawsuit brought by prisoners at the California Medical Facility. 987 F.2d at 1394. The *Gates* Court, notably, offers an analysis of cases modifying the *Hensley* ruling, pointing out that the Supreme Court held that "'the "results obtained" generally will be subsumed within other factors used to calculate a reasonable fee.'" *Id*. at 1404. Indeed, the *Hensley* Court rejected "'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon' to the determination of whether fees should be reduced to account for limited or partial success." *Id*. (quoting *Hensley*, 461 U.S. at 435).

The *Gates* Court concluded, "It is clear that a litigant need not prevail on every claim in order to receive a full fee." *Id*. This Court, in a 1993 FOIA case, came to the a similar conclusion: "[C]omplete success is not required for a plaintiff to substantially prevail, so long as the plaintiff prevails on his central claim or the basic objective of his suit." *Williams v. Department of Army*, C 92-20088, 1993 U.S. Dist. LEXIS 15336, *11 n.6 (N.D. Cal. 1993) ("*Williams*").

Defendants attempt to apply their "claim" theory to FOIA, but the case they cite is distinguishable and the court there based its reduction in the plaintiff's attorney fees in part on the plaintiff's "manifest private interest" in the case. *Piper v. U.S. DOJ*, 338 F.Supp.2d 13, 25 (D.D.C. 2004). Moreover, unlike in the instant matter, in *Piper* the agency defendant won a summary judgment motion related to its search for documents. *Id*. at 24. Also distinguishable is *Weisberg v. U.S. DOJ*, 745 F.2d 1476 (D.C. Cir. 1984). There, the plaintiff filed "numerous nonproductive and

repetitive motions on issues on which he ultimately did not prevail." In contrast, plaintiffs herein filed only motions that were necessary to contend with defendants' aggressive litigation tactics and, as noted more than once by Judge Patel, their failure to follow FOIA law. Thus, defendants' "claims" theory is based largely on civil rights lawsuits in which plaintiffs actually do make claims, and the cases on which they base that theory do not apply here.

      Moreover, more recent *FOIA* authority undermines defendants' "claims" theory. Courts may reduce attorney fees for "nonproductive" time spent on claims on which the plaintiff did not prevail only where such claims are "distinct in all respects" – i.e., "truly fractionable." *Elec. Privacy Info. Ctr. v. U.S. Dept. of Homeland Sec.*, 811 F.Supp.2d 216, 237-238 (D.D.C. 2011). Where a lawsuit consists of related claims, such that they were "part and parcel of one matter, a plaintiff who has won substantial relief should not have is attorney fees reduced simply because the district court does not adopt each contention raised." *Id*. at 238 (citation, internal quotation marks omitted). In such a situation, "the court must focus on the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Id*.

      Here, as explained *supra*, part I, plaintiffs obtained significant overall relief, this Court having ordered defendants to release well in excess of 1,000 pages of documents. In *L.A. Gay & Lesbian Cmty. Servs. Ctr. V. IRS*, 559 F.Supp.2d 1055 (C.D. Cal. 2008) ("*LAGLCS*"), FOIA plaintiffs obtained only 29 pages, but the court nonetheless awarded 80 percent of the attorney fee request because the pages produced "contained valuable information" and because plaintiff "prevailed in full by forcing Defendant to perform a search that complied with the requirements of FOIA." *LAGLCS*, 559 F.Supp.2d at 1061, 1062. As in *LAGLCS*, this Court noted that the public interest in the information sought by plaintiffs' FOIA request, "full disclosure of activities in Iraq[,] is undoubtedly very strong." *Hiken v. DOD,* 521 F. Supp. 2d 1047, 1056 (N.D. Cal. 2007) ("*Hiken*"). Further, this Court found that defendants' initial document search was inadequate, *see id*. at 1054-55 (a fact to which defendants admit, Defendants' Opp. at 15:9-11), prompting defendants, as in *LAGLCS*, to perform a new search that complied with FOIA. Feb. 2012 Order (Dkt. No. 94) at 4:5-10.

Further, defendants admit that they failed to provide an adequate *Vaughn* Index – *twice*, Dkt. Nos. 18, 66-2, 98-3, which, combined with their inadequate document search, resulted in Judge Patel's ordering the documents produced *in camera* for her review. Defendants' Opp. at 15:12. Such circumstances, however, handicapped plaintiffs who were arguing for the release of documents they had not seen and for which they had not been provided adequate information regarding content or exemptions claimed. Because all exemptions were being litigated in this context, plaintiffs had to address each exemption with the same effort, making them not truly fractionable from each other.

Not only is defendants' "claims" analysis not supported by law, it grossly misstates the record. Although defendants were allowed to withhold some materials under most of the exemptions they claimed, they were far from "ultimately successful" on the majority of their withholdings. *See* Defendants' Opp. at 15:1. For example, as to Exemption 1, defendants initially withheld all of the ROE-related documents pursuant thereto in their *entirety*. *Vaughn* Index, Exhibit A to Defendants' Motion for Summary Judgement, (Dkt. No. 18). While in her October 2007 Order, Judge Patel held defendants could withhold information pursuant to Exemption 1, she agreed with plaintiffs that defendants nevertheless had a duty to review Documents 1-4 and "produce the segregable information of the first four documents." *Hiken,* 521 F. Supp. 2d at 1060.

Judge Patel also found a lack of evidence of a sufficient search for responsive records so defendants conducted a subsequent search. As a result, defendants produced redacted versions of Documents 1, 3, and 4 but released Document 2, Appendix 20 to Annex C, MNC-I Standard Operating Procedures, in its entirety, without a single redaction. After Judge Patel reviewed the documents in camera she found that the government had still not properly released segregable materials for which classification was not justified. Feb. 2012 Order at 13:1-4. Furthermore, "[t]he court determines from its review that much of the material contained in Document No. 5 with all its Annexes can be segregated and disclosed." Feb. 2012 Order at 11:22-24. In response, the government produced much more previously withheld information. In fact, after each stage of the litigation, including responses to the Order to Show Cause, defendants have produced more materials that had been previously withheld pursuant to Exemption 1 both in Documents 1-4 and in

Document 5, the AR 15-6 Report. Notably, the AR 15-6 Report has *substantially* fewer redactions – *from each exemption claimed* – than the first version produced to plaintiffs in 2006.

In summary, the relevant authorities compel the Court to focus on the significance of the overall relief in relation to the hours reasonable expended on the litigation and to reject defendants' "claims" theory. In so doing, the Court should find that the hours expended by plaintiffs' attorneys were reasonable given the results they obtained in this case. Specifically, the Court should reject defendant's assertion that the time spent on the complaint was unreasonable. While the complaint itself may be nine pages long, its preparation required research into complex FOIA law and strategies for obtaining sensitive, if public, documents from the U.S. military. Moreover, the Court should reject defendants' claims of overstaffing and duplication, the former claim undermined by their own table, Defendants' Opp. at 19:1-16, which shows that attorneys Kraupp and Kreuscher were not involved with the majority of the work, and the conferences between co-counsel – necessary to any litigation – was kept to a minimum relative to the overall hours billed.

To address potential duplication, plaintiffs' fee request includes a 10 percent "haircut" supported by caselaw. Work done after April 28, 2008 includes work on plaintiffs' interim fee motion, herein renewed, and replying to defendants' response to the Court's Order to Show Cause, in which plaintiffs were successful because it resulted in further disclosures. This work, contrary to defendants' assertions, is properly the subject of a order granting attorney fees. Finally, it was necessary for attorney Flynn to travel to San Francisco for hearings, rather than use local counsel, because she was well versed in the issues, and the travel costs were low as a proportion to the overall fee request. Moreover, attorney Flynn was located in San Francisco when this dispute started. (Plaintiffs' FOIA request letter, March 17, 2005, Dkt. No. 18-1.)

### III. PLAINTIFFS DO NOT BECOME UN-ENTITLED TO FEES IF DEFENDANTS' WITHHOLDINGS HAD A "COLORABLE BASIS" IN LAW.

Defendants concede that plaintiffs are eligible for attorney fees, Defendants' Opp. at 4:11-12, but they contend, incorrectly, that because they supposedly had a reasonable basis for

1  withholding documents plaintiffs requested, plaintiffs are not entitled to fees.[2] Defendants' Opp. at
2  4:23-24. Defendants recite the four factors enunciated in *Church of Scientology of California v.*
3  *U.S. Postal Service*, 700 F.2d 486, 492 (9th Cir 1983) ("*Church*"), by which a court evaluates
4  entitlement to fees, *see* Defendants' Opp. at 4:26-5:4; Motion at 16:13-20, but they do not
5  challenge plaintiffs' entitlement to fees under the first three factors: "(1) the benefit to the public, if
6  any, deriving from the case; (2) the commercial benefit to the complainant; [and] (3) the nature of
7  the complainant's interest in the records sought." *Church*, 700 F.2d at 492. Instead, defendants
8  focus on the fourth factor, "whether the government's withholding of the records sought had a
9  reasonable basis in law," *Id*., and advance the anomalous theory that "[w]here the government's
10 basis for withholding is actually correct, this factor is dispositive." Defendants' Opp. at 5:14-15
11 (citing *Chesapeake Bay Found. V. U.S. Dep't of Agric*., 11 F.3d 211, 216 (D.C. Cir. 1993) (*rev'd*
12 *on other grounds* in *Davy v. CIA*, 456 F.3d 162, 164 (D.C. Cir. 2006))).

13       Defendants' position is not supported by law. First, the case on which the government relies
14 is distinguishable. In *Chesapeake*, the requestor sought data pertaining to pesticide use in Maryland
15 from the U.S. Department of Agriculture ("USDA"). *Chesapeake*, 11 F.3d at 212-13. The USDA
16 denied the FOIA request because it would have been able to provide the information without
17 litigation had the requestor merely agreed to pay postage for the USDA to mail requests to
18 appropriate state officials for confidentiality waivers required by federal statute for the USDA to
19 release the requested data, but the requestor refused. *Id*. at 213. Prompted by the trial court, all the
20 state agencies waived confidentiality, clearing the way for the data to be released. *Id*. The case was
21 dismissed, but the trial court awarded attorney fees to the requestor. *Id*.

22       The Court of Appeals remanded for further proceedings on the requestor's fee motion
23 "[b]ecause the District Court failed properly to weigh [the fourth factor] before deciding whether
24 [the requestor] was entitled to attorney fees," and it found that the USDA had a reasonable basis for
25 withholding when confidentiality waivers had not been obtained and that the agency "cooperated in

---

[2] Defendants also assert that plaintiffs are not entitled to attorney fees because their fee request "was grossly unreasonable." Defendants' Opp. at 4:23-24. This contention also is without merit, as explained *infra*, parts V.-VI.

1 devising a means whereby [the requestor] got what it wanted." 11 F.3d at 213. Here, far from
2 devising means by which plaintiffs could have obtained the documents they requested, defendants
3 vigorously resisted disclosure without a court order; in fact the Court was required to go through
4 the effort of viewing defendants' documents *in camera* and issuing multiple disclosure orders,
5 because of defendants' failure to provide adequate *Vaughn* indices and adequate information
6 regarding their initial document search. The holding in *Chesapeake* is inapt here because the trial
7 court has yet to rule on the fourth *Church* element; when it does so, the Court should find that
8 defendants lacked a lawful basis for withholding much of the requested materials. Motion at 22:4-
9 25; part I, *supra*.

10       Moreover, defendants' position that the "colorable basis" factor is dispositive contradicts
11 authority, cited in plaintiffs' Motion, that even if an agency's argument is founded on a colorable
12 basis in law, that fact "is merely weighed among all the other factors." *Wheeler v. IRS*, 37
13 F.Supp.2d 407, 414 (W.D. Pa. 1998). The *Wheeler* Court's position is consistent with that in *Cuneo*
14 *v. Rumsfeld*, 533 F.2d 1360, 1365 (D.C. Cir. 1977) (*rev'd on other grounds* in *Davis v. U.S. DOJ*,
15 610 F.3d 750, 752 (D.C. Dir. 2010), which found that the "reasonable basis in law" requirement is
16 a "factor in the court's exercise of its discretion under [5 U.S.C.] section 552(a)(4)(E)."

17       In *Cuneo*, a FOIA case involving a Department of Defense Contract Audit Manual, the
18 Court found that the agency "had at least a reasonable basis for concluding the withholding was
19 proper." 533 F.2d at 1362, 1366. Yet the court remanded the case for analysis of other issues,
20 including "whether the action was brought to advance the private commercial interest of the
21 complainant." *Id*. at 1367-68. Because the *Cuneo* Court found that defendants there had "at least" a
22 reasonable basis for withholding, if the "reasonable basis" prong were truly dispositive, there
23 would have been no remand. *Cuneo* decision thus demonstrates that defendants' position is
24 incorrect because the "reasonable basis" prong is not dispositive, but merely one among other
25 *Church* factors to be considered. Significantly, defendants did not dispute plaintiffs' entitlement to
26 fees under the first three *Church* factors. Under the fourth, plaintiffs have amply demonstrated
27 herein and in their Motion that defendants' basis for withholding was in large part not reasonable
28 and that defendants have been recalcitrant and acted with obduracy throughout the litigation.

Therefore, plaintiffs are entitled to attorney fees in this matter.

## IV. THIS IS A COMPLEX CASE REGARDING DOCUMENTS TOUCHING UPON IMPORTANT PUBLIC MATTERS.

In an attempt to persuade the Court to substantially lower plaintiffs' counsel hourly rate, defendants claim, incorrectly, that this has been a "routine" and "simple" case. Defendants' Opp. at 27:11, 29:18. Such a claim is unsupported by the record. This case has been litigated for more than six years; three summary judgment motions, a motion for reconsideration, and responses to an order to show cause have been litigated; and defendants have claimed almost every FOIA exemption allowed. Furthermore, defendants have vigorously litigated against the release of the requested documents, documents whose release sheds light on the killing of civilians and an attack on an international journalist by the U.S. Military in Iraq. This is not a routine, simple case, but a case dealing with the utmost public interest. In contrast, in this Court's decision in *Williams,* a veteran sought his medical records to which he was clearly entitled. "The questions presented were not particularly novel or difficult." 1993 U.S. Dist. LEXIS 15336 at *18. The defendant in *Williams* admitted that "Plaintiff was and is entitled to a copy of his entire medical records at any time." *Id.* at *13. The instant matter is no such simple and routine FOIA case.

Defendants further claim that hourly rates here should be lower than those awarded in *MIWON* because that was a more complicated case. However, *MIWON* was much less complex than the present matter. There, defendants had admitted liability and the case entailed limited motion and discovery work. The case was filed in May 2007, and final settlement was approved on June 22, 2009. *MIWON v. City of Los Angeles,* 07-3072 (C.D. Cal. 2007), Dkt. No. 114.

The *MIWON* Court, in 2009, awarded Ms. Flynn and Mr. Ford $350 and $325 per hour, respectively. Defendants admit that the *MIWON* Court found those rates to be reasonable but they claim those rates were "never challenged or subjected to individual scrutiny." Defendants' Opp. at 29:14-16. This claim is frivolous. Not only were Ms. Flynn and Mr. Ford's rates subject to scrutiny by the Court, they were also subjected to the scrutiny of co-counsel. Many experienced civil rights attorneys worked on the *MIWON* litigation and they would not have allowed Ms. Flynn and Mr. Ford to submit unfair or inflated rates which not only could be rejected by the court but which would also negatively impact their share of fees.

## V. DEFENDANTS HAVE LITIGATED "TENACIOUSLY" AND NOW HAVE NO GROUNDS TO COMPLAIN ABOUT THE TIME PLAINTIFFS NECESSARILY SPENT IN RESPONSE.

Defendants complain at length over the billings by plaintiffs' attorneys. They make conclusory statements that plaintiffs' attorney billings are "inflated" and that the attorneys spent "ridiculous" amounts of time on various tasks, and they assert that plaintiffs' fees should be reduced for time spent on "unsuccessful filings and claims*." See generally* Defendants' Opp. at 9:1-22:14. As explained herein, defendants' assertions regarding plaintiffs' attorney fees benefit from neither factual nor legal grounding and should be disregarded.

As a preliminary matter, the U.S. Supreme Court has pointed out that "'[t]he government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986). Relevant here, one court in this Circuit ruled that a defendant

> cannot put Plaintiff through the time and expense of enforcing compliance with FOIA and then complain that the resources expended were out of proportion to the good obtained. *Reminding the Court of the waste of resources engendered by Defendant's failure to comply with its obligations hardly persuades the Court to reduce the fee award*.

*LAGLCS*, 559 F.Supp.2d at 1061 (emphasis added). Furthermore, this Court, in *Williams*, found that neither the plaintiff, "nor any other member of the public for that matter, should be required to bear the cost of a defendant's unexcused carelessness or unwillingness to respond absent resort to litigation." *Williams*, 1993 U.S. Dist. LEXIS 15336 at *13.

Here, defendants are themselves responsible for the prolonged and heavily litigated nature of this case. They dragged their heels during the administrative phase for more than a year and a half. Their failure to perform an adequate search and provide an adequate *Vaughn* index during the first round of litigation led to a second round of motions for summary judgment plus supplemental cross-motions for summary judgment regarding documents defendants forwarded to the State Department and that the court nonetheless ordered disclosed.

This Court noted that defendants' first *Vaughn* index, "as currently presented, does not

1  afford either the court itself or plaintiffs the opportunity to challenge the withholding of certain
2  documents. The government has failed to state the specific harms which may result from the
3  release of the document." *Hiken*, 521 F. Supp. 2d at 1056. Yet defendants failed to heed the Court's
4  admonition, as demonstrated by the inadequacy of their revised *Vaughn* index, *e.g.* Feb. 2012
5  Order at 9:18-20, 11:2-10, 11:26-12:1, 16:5-6, 17:10-12, leading to the submission of a third (or
6  second revised) *Vaughn* index.

7  Thus, defendants' litigation tactics and failure to comply with FOIA law forced plaintiffs to
8  endure three rounds of motions for summary judgment. Accordingly, defendants, whose adamant
9  opposition from Day One to disclosing the requested public documents and their vigorous litigation
10 of this case, are in no position to complain about the time plaintiffs' counsel were compelled to
11 spend on this matter.

## VI. DEFENDANTS FAIL TO SHOW THAT PLAINTIFFS SHOULD NOT RECEIVE THEIR CURRENT MARKET BILLING RATES.

13 Defendants claim that plaintiffs' attorneys failed to provide "any evidence" of their current
14 market billing rates, should not receive their current market rates, and instead be awarded fees at
15 $200 per hour. Defendants' Opp. at 22:15-30:11. Defendants' first assertion is perplexing,
16 considering plaintiffs filed with the instant motion declarations from not only their own attorneys
17 regarding their customary rates, but also other attorneys highly experienced in federal fee litigation
18 containing ample evidence that plaintiffs' counsel's rates are reasonable. Declaration of Carol
19 Sobel, Dkt. No. 117 ("Sobel Dec."); exhibits thereto, Dkt. No. 117-1; Declaration of Thomas R.
20 Burke, Dkt. No. 118. The submission of evidence of this nature is sufficient to "support a finding
21 that [the] rates are reasonable." *Benson v. Cont'l Cas. Co.*, 592 F.Supp.2d 1274, 1279 (C.D. Cal.
22 2009) ("*Benson*"); *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th
23 Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in
24 the community, and rate determinations in other cases . . . are satisfactory evidence of the
25 prevailing market rate").

26 In particular, Ms. Sobel's declaration and exhibits thereto very thoroughly review market
27 billing rates for Los Angeles and San Francisco, noting that billing rates now are the same in both
28 markets. Sobel Dec., ¶ 11. Ms. Sobel's declaration underlines the reasonableness of the billing rates

herein, including specific examples of attorneys with similar years of graduation from law school as plaintiffs' counsel, who were awarded rates set in 2010 that are equal to or above those requested here. Sobel Dec. ¶ 16; *see also* Exhibit 2 to Sobel Dec., at 6 (2008 billing rate for 2005 graduate of $380 per hour).

Defendants next aver that plaintiffs' counsel should not receive their current hourly billing rates, a position that contradicts case authority cited in plaintiffs' Motion, including this Court's recent decision in *Jones v. Metro Life Ins. Co.*, No. C 08-03971, 2012 U.S. Dist. LEXIS 33817, at *15 (N.D. Cal., Feb. 24, 2012) and in *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (delay in payment "is a factor properly considered in arriving at a reasonable hourly rate"). In short, a district court "does not abuse its discretion" by applying current billing rates. *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). The Ninth Circuit has upheld a district court's adjusting "upwards" an hourly attorney billing rate "to account for inflation." *USW v. Ret. Income Plan for Hourly-Rated Emples. of ASARCO, Inc.*, 512 F.3d 555, 564 (9th Cir. 2008); *see also Benson*, 592 F.Supp.2d at 1279 ("Because attorneys are entitled to compensation for the delay in receiving funds, the Court also finds that applying the current rate charged to all hours submitted since 2005 is reasonable"); *Chemical Bank v. City of Seattle* (*In re Washington Public Power Supply System Securities Litigation*), 19 F.3d 1291, 1305 (9th Cir. 1994) (district court's use of current rates where attorney fee payments were delayed seven years was "not improper"). The authorities support recovery by plaintiffs' counsel of fees at current rates.

Finally, defendants attempt to persuade the Court that plaintiffs' attorneys should be awarded fees at a rate of only $200 per hour, *e.g.* Defendants' Opp. at 25:21 – a position that is grossly out of touch with reality, as demonstrated in the evidence submitted with plaintiffs' Motion. Furthermore, caselaw supports the hourly rates requested by plaintiffs' counsel. For example, a California district court found an hourly rate of $400 for an associate in 2009 to be reasonable based on declarations from that plaintiff's counsel and other attorneys setting forth their customary rates and on "orders by sister federal courts finding the $400 rate charged for associate attorneys reasonable." *Benson*, 592 F.Supp.2d at 1279. For perspective on the inappropriateness of a billing rate of $200 per hour here, this Court reduced an attorney's hourly billing rate from $250 to $200

*in 1993* only because the attorney failed to produce evidence that his rate was above the lower figure. *Williams*, 1993 U.S. Dist. LEXIS 15336 at *19.

Defendants based their proposed depressed hourly rate on *Yahoo!, Inc. v. Net Games, Inc.*, 329 F.Supp.2d 1179 (N.D. Cal. 2004) and on the so-called *Laffey* matrix. Defendants' Opp. at 25:21-30:11. The former case is inapplicable here because it primarily discusses lawyers' hourly wage data, not their market billing rates. *Yahoo!*, 329 F.Supp.2d at 1189-91. Firms generally pay their lawyer-employees far less per hour than they charge clients for those attorney's services. Moreover, the *Yahoo!* Court used the wage data "because the parties have provided nothing better." *Id*. at 1191. Here, in contrast, plaintiffs have provided appropriate evidence of their lawyers' market billing rates.

The Laffey index is equally inapplicable here. A Ninth Circuit panel recently found that "just because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away. *It is questionable whether the matrix is a reliable measure of rates even in Alexandria, Virginia, just across the river from the nation's capital.*" *Schwarzenegger*, 608 F.3d at 454 (emphasis added); *accord*, *Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 245 (4th Cir. 2009) (*Laffey* matrix inapplicable because it is not binding on the district court and where no evidence was adduced that the matrix, "which pertains to hourly rates of litigation attorneys in Washington, D.C., is a reliable indicator of the hourly rates of litigation attorneys in [Alexandria], Virginia, a suburb of Washington, D.C.").

Here, defendants have offered no specific evidence that either the *Yahoo!* or *Laffey* methods should apply in the present FOIA case – a failure that dooms both methods in light of the ample, legally sufficient evidence plaintiffs have provided demonstrating that their hourly rates are reasonable. The Court should disregard defendants' request that plaintiffs' counsel be awarded fees at $200 per hour – a rate that this Court considered sufficient nearly two decades ago only in the absence of evidence the an attorney's higher claimed rate. Plaintiffs have shown with appropriate evidence that their rates are reasonable, and the Court should award fees based on those rates.

## CONCLUSION

Based on the foregoing, the Court should issue an order that defendants pay plaintiffs' attorney fees and costs as set forth in their Motion.

DATED: July 5, 2012          Respectfully submitted,


                                        BY:_____/s/ Colleen Flynn_
                                             COLLEEN FLYNN
                                             CHRIS FORD
                                             W. GORDON KAUPP
                                             Attorneys for Plaintiffs