United States District Court
Northern District of California

MARGUERITE HIKEN, et al.,

    Plaintiffs,

    v.

DEPARTMENT OF DEFENSE, et al.,

    Defendants.

Case No.: 4:06-cv-2812 YGR (KAW)

**REPORT AND RECOMMENDATION THAT PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT BE GRANTED**

Plaintiffs' motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) was referred to the undersigned for a report and recommendation on November 27, 2012. The undersigned held a hearing on the motion on December 20, 2012. Colleen Flynn appeared on behalf of Plaintiffs, and Tim Johnson appeared on behalf of Defendants. For the following reasons, it is recommended that the motion to alter or amend the judgment be granted, and that Defendants be ordered to pay Plaintiffs a total of $257,776.50.

**I.   Factual Background**

This Freedom of Information Act case was filed on April 25, 2006. Judge Ware granted Plaintiffs' motion for attorney fees in part on August 21, 2012, after finding that it was appropriate to take the motion under submission without oral argument. Judge Ware ordered the case closed on August 29, 2012.

The order on Plaintiffs' motion for attorney fees found, in relevant part, that in FOIA cases, attorney fees awarded against the federal government should be based on historical rates rather current rates; that "Plaintiffs fail to provide evidence of prevailing market rates in this forum during the time period at issue"; and that a rate of $200 per hour for each of the attorneys in

the case was reasonable.  Judge Ware declined to reduce the number of hours Plaintiffs' attorneys had spent on the lawsuit for the purpose of awarding fees.

Plaintiffs argue that Judge Ware's conclusion that Plaintiffs' attorneys were entitled to $200 per hour that they worked on the case is manifestly unjust and clear error.  Specifically, Plaintiffs argue that 1) awarding fees at historical rates, rather than current rates, is manifestly unjust, given that plaintiffs' attorneys worked for six years on this case without compensation, and Defendants engaged in "litigation tactics and dilatory behavior"; and 2) it was clear error to set Plaintiffs' counsel's rates at $200 an hour for all of the years that they worked on the case.  Defendants oppose the motion and argue that Judge Ware's total fee award was clearly erroneous because Plaintiffs had limited success in the case, and he allowed them to bill for an "exceptionally generous number of hours."

## II.     Legal Standards

Rule 59(e) states that a motion to alter or amend the judgment must be filed no later than 28 days after the entry of the judgment.  A motion under the rule is treated as a motion for reconsideration, and may be granted if: 1) the motion is "necessary to correct manifest errors of law or fact upon which the judgment is based;" 2) the moving party presents "newly discovered or previously unavailable evidence;" 3) the motion is necessary to "prevent manifest injustice;" or 4) there is an "intervening change in controlling law." *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003).  *See also Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law").

While "Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

The "clear error" standard is met if, on reconsideration, the Court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001).

### III. Analysis

#### A. Awarding fees at historical rates is not manifestly unjust.

Plaintiffs argue that the decision to award fees at historical rates, rather than current rates, is manifestly unjust.

The parties agree that historic hourly rates are usually used in calculating fee awards in FOIA cases. *See Elec. Privacy Info. Ctr. v. U.S. Dept. of Homeland Sec.*, 811 F. Supp. 2d 216, 237 (D.D.C. 2011) ("An appropriate award of attorney's fees against the government is generally calculated based on billing rates at the time that work was performed, as opposed to the time of the fee award"). However, Plaintiffs argue that this is an exceptional FOIA case, because the defense unjustifiably caused delay in the litigation through its dilatory tactics, and Plaintiffs' counsel had to wait six years before receiving any compensation. Plaintiffs argue that the Court should have exercised its discretion to adjust Plaintiffs' counsel's fees upwards. *See Elec. Privacy*, 811 F. Supp. 2d at 240-41 ("cases in which upward enhancements may be appropriate include cases in which 'the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted,' or in 'extraordinary circumstances in which an attorney's performance involves an exceptional delay in the payment of fees.' *Perdue v. Kenny A.*, _ U.S. _, 130 S.Ct. 1662, 1673–75 . . . (2010).").

Defendant counters that the Court was legally required to use historic rates rather than current rates, and that fee enhancements for delays are prohibited in FOIA cases. *See Weisberg v. U.S. Dep't of Justice*, 848 F.2d 1265, 1268 (D.C. Cir. 1988), *overruled on other grounds*, *King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991) (fee enhancements not allowed on the basis of delay in FOIA cases, because such an award would be indistinguishable from an award of interest).

Judge Ware's order stated that in FOIA cases, any attorney fees against the federal government must be based on historical rates. Plaintiff does not claim that this finding was legally erroneous. Judge Ware did not grant a fee enhancement. Regardless of whether a fee

3

enhancement *could have* been granted, it was not. Plaintiffs have not argued that Judge Ware did not have the discretion not to award a fee enhancement. The cases that Plaintiffs rely on hold that such a fee award is discretionary. *See Elec. Privacy*, 811 F. Supp. 2d at 240-41 (noting that upward enhancements "may" be appropriate in certain circumstances, but holding that such an enhancement was not appropriate in that case); *Perdue*, 130 S. Ct. at 1673 (2010) ("we have never sustained an enhancement of a lodestar amount for performance . . . we have repeatedly said that enhancements *may* be awarded in 'rare' and 'exceptional' circumstances") (emphasis added).

Plaintiffs do not argue that Judge Ware lacked discretion to find that a fee enhancement was not warranted under the circumstances of this case. Relief under Rule 59(e) is foreclosed except as an "extraordinary remedy." *See Kona Enterprises, Inc.*, 229 F.3d at 890. As such, the Court finds that Judge Ware's decision to award fees at historical rates, without an enhancement, was not manifestly unjust.

### B. The decision to award fees at a rate of $200 an hour for all attorneys and for all years of the litigation was based on clear error.

Plaintiffs also argue that Judge Ware clearly erred in finding that $200 an hour for all attorneys, for all years of the litigation, was a reasonable hourly rate.

Courts determining a reasonable hourly rate for an attorney should look to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The moving party has the burden "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with" prevailing rates. *Id.* "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "The defendant may introduce rebuttal evidence in support of a lower hourly rate." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001).

4

As noted above, Judge Ware decided Plaintiffs' motion for attorney fees on the papers. His order noted that Plaintiffs' attorneys' declarations only provided their current billing rates, rather than their historical billing rates for the years in which the litigation was conducted. The order stated that the Court must look at prevailing market rates for the years during which most of the work on the case was conducted—that is, 2007 and 2008—to determine reasonable rates. The Judge wrote: "Because Plaintiffs fail to provide evidence of the prevailing market rates in this forum during the time period at issue, the Court looks to rate determinations in other cases for guidance." Dkt #125 at 10. The rate determinations were from two Northern District of California cases that approved hourly rates of $225 and $200 for Boalt Hall 2002 and 2004 graduates in 2007 and 2008. Judge Ware considered Plaintiffs' counsel's "skill, experience and reputation" by noting that each of them had graduated from law school between 2002 and 2006, and that they had graduated from Southwestern Law School, Lewis and Clark Law School, and Queens College School of Law. *See* Dkt #125 at 10, n.20. Finally, Judge Ware found that "a reasonable hourly rate for each of Plaintiffs' counsel is $200." *Id.* at 10.

The Court clearly erred by not considering the evidence of prevailing market rates Plaintiffs submitted in support of their motion for fees. As noted above, Judge Ware wrote: "Plaintiffs fail to provide evidence of the prevailing market rates in this forum during the time period at issue." But plaintiffs had submitted declarations and other documents in support of their motion for attorney fees. *See* Dkt # 116, 117, 118. Docket entry 116 contains Plaintiffs' counsel's declarations, which Judge Ware referred to in his order. Docket entries 117 and 118 contain declarations by other practitioners, Carol Sobel and Thomas Burke, attesting to prevailing market rates, which Judge Ware did not mention in his order.

Carol Sobel's declaration states that she is an attorney who was admitted to the California bar in 1978. It establishes her qualifications, legal work and awards. She attests that her declarations in support of fees have been cited favorably by a number of federal courts, and that she has presented at CLEs on attorney fees. She attests that she has known most of Plaintiffs' lawyers since they were in law school, and believes that they are extremely competent attorneys whose skills are well-developed, and that the rates that they are seeking in their declarations are

reasonable. She attests that two of Plaintiffs' attorneys, Flynn and Ford, were awarded fees at $350 and $325 an hour in a 2007 federal case in the Central District of California. She attests that there is no longer a distinction between San Francisco and Los Angeles rates, and discusses cases supporting that conclusion. Finally, she discusses several federal cases awarding fees during the relevant time period for this case.

Attached to Sobel's declaration are declarations submitted by a partner at Girard Gibbs, a San Francisco law firm, in 2010 in a case in the Central District of California. These declarations contain a list of fee rates attorneys from the firm obtained in federal courts from 2007 through 2010, which range from $300 to $675 an hour. The declaration contains a chart showing the billing ranges of attorneys working at certain big law firms from the 2006 through 2009 National Law Journal Surveys. Sobel's declaration also attaches a declaration of a partner at Jones Day in Los Angeles; a state court ruling awarding Sobel fees at $750 an hour; and a declaration of a partner at Bingham McCutchen in San Francisco attesting that billing rates for associates at the firm in 2008 were between $325 and $580 an hour.

Thomas Burke's declaration states that he is a partner at Davis Wright Tremaine LLP, and that he believes that the billing rates charged by Plaintiffs' attorneys in this case are well within the hourly rate of other attorneys in the Bay Area with similar experiences and practices.

Judge Ware's order does not mention Sobel's declaration and supporting documents or Burke's declaration. His finding that Plaintiffs did not provide evidence of billing rates during 2007 and 2008 is contradicted by the evidence described above. *See United Steelworkers of Am.*, 896 F.2d at 407 (listing as "satisfactory evidence of the prevailing market rate" affidavits of other attorneys regarding prevailing fees in the community, and rate determinations in other cases).

Defendant argues that the cases referred to in the Sobel declaration are "clearly distinguishable" from this case, and that therefore the Court did not clearly err. But Judge Ware did not find that the evidence in those docket entries was insufficient to establish historical billing rates; rather, he did not acknowledge the evidence at all. It appears that Judge Ware overlooked docket entries 117 and 118 and relied solely on docket entry 116.

It seems, then, that Judge Ware's finding to find that $200 was a reasonable billing rate for all of the attorneys is based on a clear error of fact, because he did not see the evidence submitted with the motion that was filed in separate docket entries. This Court is "left with the definite and firm conviction that a mistake has been committed." *Easley*, 532 U.S. at 242. Accordingly, Plaintiffs' motion to alter or amend the judgment should be granted.

### C. Defendants' argument that Judge Ware's fee award was already remarkable generous is of no legal consequence.

Defendants argue in its opposition to the motion to alter or amend the judgment that the total fee award is remarkably generous and includes fees for hundreds of hours spent on unnecessary tasks. Even if the hourly rate was improperly low, Defendants argue, this would be harmless error, as the total award is still reasonable under the circumstance.

Because Defendants did not timely bring their own motion to alter or amend the judgment, this Court has no basis for altering Judge Ware's order regarding any finding that is not contested in Plaintiffs' motion to alter or amend. This Court may not modify Judge Ware's findings regarding the reasonableness of the number of hours billed by Plaintiffs' attorneys.

### D. The Court should set reasonable rates for Plaintiffs' attorneys.

Because Judge Ware's finding that $200 an hour is a reasonable rate is based on a clear error, reasonable rates should be set.

As explained above, the moving party has the burden to produce evidence of the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979. Attorney affidavits and rate determinations in other cases are satisfactory evidence of these rates. *United Steelworkers of Am.*, 896 F.2d at 407. The defense may introduce rebuttal evidence to support a lower rate. *Sorenson v. Mink*, 239 F.3d at 1145.

As detailed above, Plaintiffs submitted the evidence in support of their motion for fees, including their own declarations, declarations of Carol Sobel and Thomas Burke, and fee declarations and orders in other cases. The Court considers this evidence, but does not accept it

as dispositive of reasonable rates. Some of the evidence is not persuasive in this case. For example, the National Law Journal's surveys of a few big law firms' rates in the bay area and Los Angeles is not determinative of reasonable rates for Plaintiff-side small firm lawyers or solo practitioners.

As for Defendants' rebuttal evidence, they submitted a "Laffey Matrix" setting out hourly rates for attorneys of varying experience levels in the District of Columbia, together with arguments regarding its application in this district. Dkt 121-1 at 2. The matrix provides for billing rates above $200 an hour for attorneys of all levels of experience since 2006. In *Prison Legal News v. Schwarzenegger*, the Ninth Circuit rejected the argument that a district court should have applied the Laffey matrix in fixing an attorney fee award. 608 F.3d 446, 454 (9th Cir. 2010). The Court wrote, "state officials argue that the district court should have increased the rates in the matrix by nine percent to account for the higher cost of living in San Francisco, and then based its fee award on the resulting rates. But just because the Laffey matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away." *Id.* Following this authority, the Court finds that the Laffey matrix does not rebut the evidence presented by Plaintiffs. *See Rosenfeld v. U.S. Dept. of Justice*, C-07-3240 EMC, 2012 WL 4936047 at *12 (N.D. Cal. Oct. 17, 2012).

Defendants also urged the Court to use a blended rate approach in determining the proper rate for this case. *See Yahoo! Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179 (N.D. Cal. 2004). Defendants have not cited any FOIA cases applying a blended rate. Blended rates are appropriate when there has been "substantial time expended in discovery by junior attorneys with relatively low billings rates." *See In re HPL Technologies, Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005). *See also Willis v. City of Oakland*, 231 F.R.D. 597, 601 (N.D. Cal. 2005) (applying blended rate for attorney fees required to respond to a frivolous complaint that was "far from complex"). *Cf. Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc*, 731 F. Supp. 2d 937, 945-46 (N.D. Cal. 2010) (declining to apply blended rate because the case involved lengthy litigation and attorneys with various levels of experience, including specialized knowledge).

1    Here, the Court finds that a blended rate is not appropriate. All of the attorneys who
2 worked on the case were in their first ten years of practice, so there is not a great range of billing
3 rates to take into account. No paralegals worked on the case. There was no substantial
4 expenditure of time on reviewing discovery. The case was protracted, lasting six years, and Judge
5 Ware found that it was "complex" in nature and involved extensive litigation. Dkt # 125 at 8.
6 Contrary to Defendants' argument, this case was not "routine, relatively low-value litigation." *See*
7 Dkt # 121 at 32.

8    Defendants also cite several cases from the Northern District setting attorney fees. In one
9 of those cases, a 1997 graduate was awarded fees of $150 an hour where the Court found that the
10 attorney's "overall performance in the underlying litigation was not commensurate with other
11 attorneys of his experience or length of practice." *Navarro v. Gen. Nutrition Corp.*, C 03-0603
12 SBA, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005). In another case, attorneys who were
13 awarded $150 or $200 an hour did not offer any evidence in support of their rates other than their
14 own declarations. *Pande v. ChevronTexaco Corp.*, C-04-05107 JCS, 2008 WL 906507 (N.D. Cal.
15 Apr. 1, 2008). These cases are not persuasive in the instant case, where Plaintiffs have provided
16 evidence of billing rates, and there is no accusation that their performance was substandard.

17    The Court takes two other Northern District cases cited by Defendants into consideration
18 in determining reasonable rates. *See Muniz v. United Parcel Serv., Inc.*, C 09-01987 CW, 2011
19 WL 3740808 (N.D. Cal. Aug. 23, 2011) (awarding $230 an hour to an attorney with 1.5 years of
20 experience); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1101 (N.D. Cal.
21 2010) (awarding $245 an hour to an attorney who graduated from law school during the pendency
22 of the litigation and had second-chaired the trial when he had one and a half years of experience).

23    Based on the evidence that was before Judge Ware, the Court finds that the rates set out in
24 the chart below are reasonable for each of the attorneys in each of the relevant years. The number
25 of hours each attorney billed in each year is attested to by Chris Ford's declaration. *See* Dkt #129-
26 1 at 2.

27 ///
28 ///

| Flynn (2004 graduate) | Hours | Rate | Lodestar/ year |
|---|---:|---:|---:|
| 2006 | 132.6 | 240[1] | 31,824 |
| 2007 | 113.4 | 275 | 31,185 |
| 2008 | 126.0 | 310[2] | 39,060 |
| 2009 | 33.4 | 350[3] | 11,690 |
| 2010 | 5.6 | 400[4] | 2,240 |
| 2011 | 2.8 | 435[5] | 1,218 |
| 2012 | 31.8 | 470 | 14,946 |

| Ford (2005 graduate) | Hours | Rate | Lodestar/ year |
|---|---:|---:|---:|
| 2006 | 107.9 | 210 | 22,659 |
| 2007 | 75.2 | 240[6] | 18,048 |
| 2008 | 73.1 | 280[7] | 20,468 |
| 2009 | 61.6 | 325[8] | 20,020 |
| 2010 | 21.9 | 360[9] | 7,884 |
| 2011 | 0 |  | 0 |
| 2012 | 30.3 | 420 | 12,726 |

---

[1] *See* Sobel declaration; Burke declaration; *Muniz v. United Parcel Serv., Inc.*, C 09-01987 CW, 2011 WL 3740808 (N.D. Cal. Aug. 23, 2011); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1101 (N.D. Cal. 2010).
[2] *See* Sobel declaration at 8 (Bingham McCutchen rate in 2008 for a 2004 graduate); Burke declaration.
[3] Flynn declaration at 6 (Flynn was actually awarded $350 an hour in 2009).
[4] *See* Sobel declaration at 8 (award to a 2004 graduate in 2010); Burke declaration.
[5] *See* Sobel declaration at 7 ($445 rate awarded to 2003 graduate in 2010); Burke declaration.
[6] *See* Sobel declaration; Burke declaration; *Muniz*, 2011 WL 3740808; *Campbell*, 718 F. Supp. 2d 1093.
[7] *See* Sobel declaration at 8 (Bingham McCutchen rate in 2008 for a 2005 graduate); Burke declaration.
[8] *See* Flynn declaration at 46 (actual award in *MIWON* case).
[9] *See* Sobel declaration at 8 (award to a 2005 graduate in 2010); Burke declaration.

| Kaupp (2002 graduate) | Hours | Rate | Lodestar/ year |
|---|---|---|---|
| 2006 | 29.3 | 260[10] | 7,618 |
| 2007 | 24.4 | 295 | 7,198 |
| 2008 | 0 | | 0 |
| 2009 | 8.9 | 365[11] | 32,48.50 |
| 2010 | 0 | | 0 |
| 2011 | 0 | | 0 |
| 2012 | 0 | | 7,618 |
| **Kreuscher (2006 graduate)** | **Hours** | **Rate** | **Lodestar/ year** |
| 2006 | 25.7 | 200 | 5,140 |
| 2007 | 1 | 210[12] | 210 |
| 2008 | 0 | | 0 |
| 2009 | 1 | 280[13] | 280 |
| 2010 | 0 | | 0 |
| 2011 | 0 | | 0 |
| 2012 | .3 | 380 | 114 |
| **Total** | | | **$257,776.5** |

### IV.   Request for Judicial Notice

On December 18, 2012, two days before the hearing on the motion to alter or amend the judgment, Plaintiffs filed a request for judicial notice. Dkt #137. Judicial notice can be taken of facts that are not subject to reasonable dispute that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The document

---

[10] *See* Sobel declaration; Burke declaration; Kaupp declaration at 3 (was actually awarded $225 rate in 2005).
[11] *See* Sobel declaration at 6.
[12] *See* Sobel declaration; Burke declaration; *Muniz*, 2011 WL 3740808.
[13] Sobel declaration at 8(award to 2005 and 2007 graduates in 2010), 9 (billing rate for Skadden Arps 2008 graduate); Burke declaration.

11

Plaintiffs filed purports to be a report from the "Public Interest Declassification Board" to the President of the United States. Plaintiffs claim that the document should be judicially noticed pursuant to Federal Rule of Evidence 803(8), which provides an exception to the hearsay rule for "A record or statement of a public office" if certain other conditions are met. But at the hearing, Plaintiffs' counsel stated that she did know whether the Public Interest Declassification Board was a public office, and conceded that the report might not be a proper subject for judicial notice. As the accuracy of the report could reasonably be questioned, the Court recommends that Plaintiffs' request for judicial notice be denied.

### V. Conclusion

It is hereby RECOMMENDED that Plaintiffs' request for judicial notice be denied, that Plaintiffs' motion to alter or amend the judgment be granted, and that Defendants be ordered to pay to Plaintiffs $257,776.50, less payment already made.

Within fourteen days after being served with a copy of this report and recommendation, Plaintiffs may file written objections to this report and recommendation. *See* 28 U.S.C. § 636(b)(1). Failing to do so may constitute a waiver of those objections. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**DATE: January 14, 2013**

*(signature)*
**KANDIS A. WESTMORE**
**UNITED STATES MAGISTRATE JUDGE**